Matthew L. Lalli (6105)
Jeremy J. Stewart (12247)
Sarah A. Hafen (16466)
**SNELL & WILMER L.L.P.**
15 West South Temple, Suite 1200
Salt Lake City, Utah 84101-1004
Telephone: (801) 257-1900
Facsimile: (801) 257-1800
mlalli@swlaw.com
jjstewart@swlaw.com
sahafen@swlaw.com

Paul. J. Reilly (pro hac vice pending)
David Tobin (pro hac vice pending)
Susan Kennedy (pro hac vice pending)
**BAKER BOTTS L.L.P.**
2001 Ross Avenue, Suite 900
Dallas, Texas 75201-2980
Telephone: (214) 953-6869
Facsimile: (214) 661-4869
Paul.Reilly@BakerBotts.com
David.Tobin@BakerBotts.com
Susan.Kennedy@BakerBotts.com

*Attorneys for Plaintiff Cricut, Inc.*

### UNITED STATES DISTRICT COURT
### DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| CRICUT, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>ENOUGH FOR EVERYONE, INC., a Nevada corporation, and DESIRÉE TANNER, an individual,<br><br>Defendants. | **COMPLAINT**<br><br>Case No. 2:21-cv-00601-DBB<br><br>Judge David Barlow |

Plaintiff Cricut, Inc. ("Cricut"), by and through the undersigned counsel, hereby complains against Defendants Enough for Everyone, Inc. ("E for E") and Desirée Tanner ("Tanner," and collectively with E for E, "Defendants") and for causes of action alleges as follows:

## PARTIES

1. Plaintiff Cricut is a Delaware corporation, formed and existing under the laws of the State of Delaware, with its principal place of business in Salt Lake County, Utah.

2. Plaintiff Cricut originally was incorporated in Utah as Provo Craft & Novelty, Inc. ("Provo Craft"). In March 2018, it changed its name to Cricut, Inc., and subsequently changed its state of incorporation to Delaware. Except as expressly specified, references in this Complaint to "Plaintiff" shall include Plaintiff Cricut and its predecessor, Provo Craft.

3. Defendant E for E is a Nevada corporation, formed and existing under the laws of the State of Nevada, with its principal place of business in Douglas County, Nevada.

4. Defendant E for E is a successor to Enough for Everyone, Inc., a California corporation. Except as expressly specified, references in this Complaint to "E for E" shall include Defendant E for E, the current Nevada corporation, and its predecessor, the California corporation.

5. Defendant Tanner is an individual currently residing in Douglas County, Nevada.

6. Tanner is the founder, sole shareholder, president, secretary, treasurer, and sole director of E for E.

## JURISDITION AND VENUE

7. This Court has personal jurisdiction over E for E because E for E agreed and consented to be subject to personal jurisdiction in Utah in a contract out of which this lawsuit arises. *See* Consulting Services and Royalty Agreement, attached hereto as **Exhibit B** ("2007

Agreement") (Filed Under Seal pursuant to the Court's Standard Protective Order), § 9.6. E for E also agreed that Utah law would govern any disputes under the 2007 Agreement. *Id.*

8. In addition to E for E consenting to personal jurisdiction, the Court also has personal jurisdiction over E for E because E for E regularly conducted business in Utah and has purposefully availed itself of the privilege of conducting activities within Utah, invoking the benefits and protection of Utah laws. Utah Code Ann. § 78B-3-205.

9. This Court has personal jurisdiction over Tanner because Tanner, in her personal capacity, agreed and consented to personal jurisdiction in Utah in a contract out of which this lawsuit arises. *See* Consulting Agreement, attached hereto as **Exhibit A** ("2005 Agreement") (Filed Under Seal pursuant to the Court's Standard Protective Order), § 9.2.

10. In addition to Tanner consenting to personal jurisdiction, the Court also has personal jurisdiction over Tanner because Tanner regularly conducted business in Utah and has purposefully availed herself of the privilege of conducting activities within Utah, invoking the benefits and protection of Utah laws. Utah Code Ann. § 78B-3-205.

11. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, as this is a civil action between citizens of different states in which the amount-in-controversy exceeds the sum of $75,000, exclusive of interests and costs.

12. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district, including the negotiation, formation, execution and performance of the 2005 and 2007 Agreements, which contain Utah choice-of-law and choice-of-forum provisions.

## GENERAL ALLEGATIONS

13. Plaintiff has been in the "crafting" business for many years. Plaintiff's crafting business has included selling machines used to cut out various patterns ("cutting machines") in

paper and other materials, as well as the patterns themselves ("patterns"). In addition, Plaintiff has sold ancillary products such as special vinyl and paper from which patterns can be cut.

14. Beginning before 2005, Tanner, as an independent contractor, designed patterns for Plaintiff to market, and also helped Plaintiff recruit, select, and oversee other artists and designers to develop patterns.

15. Prior to 2005, Plaintiff initiated a project to develop an electronic cutting machine, which it intended to be produced and then sold to customers as a new and better type of cutting machine.

16. By the beginning of 2005, Plaintiff's employees and independent contractors (including Tanner) had invented and developed various aspects of the novel electronic cutting machine and related accessories for consumer use.

17. Specifically, Tanner, as an independent contractor and not as an employee, was a co-inventor (along with seven other named inventors) of the ornamental design for an electronic cutting machine and its related cartridges (the "Design Inventions").

18. The novel electronic cutting machine could cut many different patterns. The electronic instructions for the patterns were contained on cartridges that were designed to plug into a slot located on the front of the electronic cutting machine. Such cartridges were sold separately. The electronic cutting machines were sold under the brand name "Cricut" and marketed as "Personal Electronic Cutter."

**In 2005, Tanner and Plaintiff entered into a royalty agreement (the 2005 Agreement).**

19. Plaintiff wanted to apply for patents on the Design Inventions of which Tanner was a co-inventor. In order for Plaintiff to acquire Tanner's patent rights as a co-inventor, Plaintiff and Tanner negotiated and ultimately signed the 2005 Agreement, effective February 21, 2005. *See* Exhibit A.

20. Under the 2005 Agreement, Plaintiff agreed to pay royalties to Tanner, with the consideration from Tanner including Tanner assigning to Plaintiff her rights to patents on the Design Inventions.

21. For example, Section 1.8 of the 2005 Agreement defines "Intellectual Property Right" to include, *inter alia*:

> Patent Rights and Other Rights, and specifically including, but not limited to, the right to . . . ii) seek and obtain protection therefor (including without limitation the right to seek and obtain copyright registrations, Letters Patent and Trademark Registrations) in the United States and all other countries in Provo Craft's name (or otherwise as Provo Craft may desire), and iii) claim all rights and priority thereunder to the extent, if any, that Tanner may be entitled to claim any such rights.

22. Article 6 of the 2005 Agreement is entitled "Intellectual Property Rights and Enforcement." Within that Article, Section 6.1 of the 2005 Agreement states:

> …<u>Tanner acknowledges and agrees to and hereby irrevocably assigns</u>, sells, transfers, grants and conveys all of her worldwide right, title and interest in and to any improvements or contributions to the Royalty-Based Products and Ancillary Products from the moment of creation to Provo Craft, its successors and assigns (without the necessity of any further consideration or action on the part of Provo Craft or Tanner), including, but not limited to, all Intellectual Property Rights therein, for perpetuity (or for the longest period of time otherwise permitted by law) . . . the same to be held and enjoyed by Provo Craft to the same extent that such right, title and interest would have been held and enjoyed by Tanner if this assignment had not been made.

*See* 2005 Agreement § 6.1 (emphasis added).

23. Tanner also specifically agreed in Section 6.2 of the 2005 Agreement to help Plaintiff acquire and perfect title to the Intellectual Property Rights, agreeing to: "cooperate fully and promptly with Provo Craft and to do all acts necessary or required to be done or requested by

Provo Craft in order to perfect title to all Intellectual Property Rights in the newly developed Royalty-Based Products…before the United States Patent and Trademark Office….”

24. The "Royalty-Based Products" referenced in Sections 6.1 and 6.2 of the 2005 Agreement as quoted above include the novel electronic cutting machine and related cartridges described above for which Tanner agreed to assign her design patent rights to Plaintiff in the 2005 Agreement. For example, Schedule B of the 2005 Agreement is subtitled "Royalty-Based Products and Royalty Rates," it identifies the novel electronic cutting machine and related cartridges among the "Royalty-Based Products," and it specifies a royalty rate of "1/2%" of the revenue on each sale of the covered electronic cutting machines—at the time referred to as "Kuttr branded electronic cutting machines or its replacement"—and related cartridges.

25. In addition to that royalty on the revenues earned on the electronic cutting machines and related cartridges, Plaintiff also agreed in the 2005 Agreement to pay Tanner separate consulting fees for her future consulting services (e.g., recruiting artists).

26. The provisions of the 2005 Agreement relating to assignment of intellectual property, set forth in Article 6, were material terms of the agreement. For example, the agreement provided either party the right to terminate the agreement for a material breach, but "[w]ith respect to Tanner, a material breach of this Agreement shall be limited to a breach of the terms and conditions of Article 6 and Article 7 herein and shall not include Tanner's ability to satisfactorily perform or inability to perform the Consulting Services." 2005 Agreement § 8.3. Also, even if the agreement would be terminated, the "provisions of this Agreement with respect to Confidential Information and Intellectual Property shall survive expiration or termination of this Agreement." 2005 Agreement § 8.6.

27. Defendants contend that the royalties on electronic cutting machines and related cartridges are perpetual.

**Pursuant to the 2005 Agreement, Tanner assigned to Plaintiff several design patents.**

28. Within months of execution of the 2005 Agreement, and with the cooperation as agreed by Tanner, Plaintiff filed seven design patent applications on the novel electronic cutting machine and related cartridges.

29. Those applications ultimately matured into the following seven United States design patents: D533,582; D533,897; D534,204; D534,205; D541,843; D541,844; D543,583 (collectively, the "Design Patents"). True and correct copies of each of the Design Patents are attached hereto as **Exhibits C-I**, respectively.

30. Each of the Design Patents includes the term "Electronic Cutter" within its title.

31. Provo Craft and Novelty, Inc. is listed as the assignee on each of the Design Patents.

32. Each of the applications that ultimately matured as the Design Patents was filed July 14, 2005.

33. Tanner is listed as an inventor on each of the Design Patents, along with seven other co-inventors.

34. Tanner assigned her interests in each of the Design Patents to Plaintiff, as required by the 2005 Agreement.

35. United States Design Patent No. D533,582 is entitled "Control Panel for an Electronic Cutter." D533,582 expired December 12, 2020.

36. United States Design Patent No. D533,897 is entitled "Electronic Cutter." D533,897 expired December 19, 2020.

37. United States Design Patent No. D534,204 is entitled "Electronic Cutter." D534,204 expired December 26, 2020.

38.     United States Design Patent No. D534,205 is entitled "Electronic Cutter." D534,205 expired December 26, 2020.

39.     United States Design Patent No. D541,843 is entitled "Cartridge for Electronic Cutter."  D541,843 expired May 1, 2021.

40.     United States Design Patent No. D541,844 is entitled "Cartridge for Electronic Cutter."  D541,844 expired May 1, 2021.

41.     United States Design Patent No. D543,583 is entitled "Electronic Cutter." D543,583 expired May 29, 2021.

42.     Other than the seven Design Patents, Tanner was not named as an inventor on any other patent applied for or held by Plaintiff.  Tanner has not assigned any other patent rights to Plaintiff.

**In 2007, Plaintiff and Tanner amended and replaced the 2005 Agreement (the 2007 Agreement).**

43.     In 2007, Plaintiff, E for E, and Tanner executed the 2007 Agreement.

44.     Certain provisions of the 2005 Agreement were carried over to the 2007 Agreement, and others were modified for the 2007 Agreement.  For example, the term, scope (including the products on which royalties were owed), and rates of the royalties carried over from the 2005 Agreement into the 2007 Agreement.

45.     A key reason for amending the 2005 Agreement was that Tanner had formed Enough for Everyone, Inc., a California corporation, to collect her patent royalties.  Accordingly, E for E also became a party to the 2007 Agreement.

46.     Another reason for amending the 2005 Agreement was so that the "Kuttr" brand name originally proposed for the electronic cutting machine and related cartridges conformed to the "Cricut" brand name that actually was used.  *See* Schedule B of the 2005 Agreement and Section 3.3. of the 2007 Agreement.

47. Accordingly, under the 2007 Agreement the royalties on the electronic cutting machines and related cartridges—now branded as "Cricut"—became payable to Enough for Everyone, Inc., the California corporation, and subsequently to E for E, the Nevada corporation.

48. With the name change from Kuttr to Cricut, the 2007 Agreement maintained the same royalty rate as the 2005 Agreement for the same products. For example, Section 3.3 of the 2007 Agreement stated that E for E would receive "one half percent (1/2 %) of any CRICUT-branded electronic cutting machines, one half percent (1/2 %) of any CRICUT-branded cutting cartridges, or other cartridges that have the same fit, form or function, as the CRICUT-branded cutting cartridges, for use with CRICUT-branded electronic cutting machines." In other words, the patent-based royalty rate carried forward unchanged from the 2005 Agreement to the 2007 Agreement.

49. The original "CRICUT-branded electronic cutting machines" and the "CRICUT-branded cutting cartridges" for which royalties were due under Section 3.3 of the 2007 Agreement correspond to the products made and sold under the Design Patents. Representative comparisons of photographs of the Cricut-branded electronic cutting machines and the Cricut-branded cutting cartridges, as originally sold, with figures from the Design Patents, are shown below:





**Plaintiff has paid all amounts owed to Defendants under the Agreements through June 30, 2021.**

50. Plaintiff made payments to Tanner (under the 2005 Agreement) and to E for E (under the 2007 Agreement).

51. Those payments included consulting fees (as governed by Section 3.1 of the 2005 Agreement and Section 2.7 of the 2007 Agreement), as well as royalties (under Section 3.2 of the 2005 Agreement and Section 3.3 of the 2007 Agreement).

52. On March 12, 2009, Plaintiff notified Defendants that their consulting work was no longer needed, and Plaintiff subsequently ceased making payments for consulting services under the 2007 Agreement, as provided in Article 2 of the 2007 Agreement.

53. Because the royalty payment obligation was not tied to Defendants' consulting services, and because Plaintiff continued making sales of the covered electronic cutting machines and related cartridges, Plaintiff continued to pay E for E royalties pursuant to Section 3.3 of the 2007 Agreement.

54. In particular, Plaintiff has continued to make payments pursuant to Section 3.3 of the 2007 Agreement, which provides, *inter alia*:

> …Provo Craft shall pay to E for E a Royalty as follows, based upon the Net Sales Price…: one half percent (1/2 %) of any CRICUT-branded electronic cutting machines, [and] one half percent (1/2 %) of any CRICUT-branded cutting cartridges, or other cartridges that have the same fit, form or function as the Cricut-Branded cutting cartridges, for use with CRICUT-branded electronic cutting machines….

55. Plaintiff paid increasing royalties to E for E during 2007 through 2010 due to increasing sales of electronic cutting machines and related cartridges. The one-half percent royalty rate remained constant.

56. In 2010, however, Plaintiff's business began to decline, and, by 2011, Plaintiff verged on insolvency and was in default on its secured bank loans.

57. In deep financial distress, Plaintiff ceased paying E for E under the 2007 Agreement.

58. In 2011, E for E sued Provo Craft. In paragraph 9 of its First Amended Complaint, E for E alleged that Tanner is "…the inventor of the products for which royalties are due to EFE under the agreement described therein." E for E further alleged in paragraph 1 that the "inventions of Desiree Tanner" included the "Cricut family of electronic cutting machines,

also known as 'e-cutters,' and related design cartridges and consumables." E for E obtained a judgment and ultimately collected the full judgment amount with interest.

59. Plaintiff was able to pay the judgment in full due to an out of court restructuring of Plaintiff, in which the former lenders took control of the company and brought in a new CEO who engineered a successful turn-around of Plaintiff's business.

60. Under its new ownership and new CEO, Plaintiff redesigned its electronic cutting machines so that users would not need to insert cartridges to load the instructions for patterns. Instead, Plaintiff began offering digital patterns by download over the Internet, including by subscription service, so crafters could download online patterns and then electronically transfer those patterns to the electronic cutting machines, with no need for a cartridge.

61. Since the full payment of the judgment obtained by E for E, Plaintiff has paid all amounts due under the 2007 Agreement including the payment due with respect to the calendar quarter ending June 30, 2021, aggregating millions of dollars.

**Plaintiff has overpaid E for E for online subscriptions and downloads.**

62. In error, Plaintiff has, over the years, paid E for E more than actually owed under the 2007 Agreement.

63. Under Section 3.3 of the 2007 Agreement, copied below in its entirety, royalties were due only on certain branded cutting machines and their related cartridges:

> 3.3 Covered Products. Except for the Royalty-Based Products specifically listed as having a Royalty Rate in Schedule B, no Royalty hereunder shall be due or owing for any sales of any other products. Notwithstanding the foregoing, Provo Craft shall pay to E for E a Royalty as follows, based upon the Net Sales Price, for the specified products for which E for E is not otherwise receiving or eligible to receive a Royalty or Consulting Fee hereunder: one half percent (1/2 %) of any CRICUT-branded electronic cutting machines, one half percent (1/2 %) of any CRICUT-branded cutting cartridges, or other cartridges that have the same fit, form or function, as the Cricut-Branded cutting cartridges, for use with CRICUT-branded electronic cutting machines, one half percent

> (1/2 %) of any CUTTLEBUG branded machines, three quarter percent (3/4%) of any CUTTLEBUG-branded die cast dies, and three quarter percent (3/4%) of any CUTTLEBUG-branded plastic embossing folders. For avoidance of doubt, this provision prevails over Section 3.1 Royalty Generally.

Online subscriptions and downloads are not specifically listed as having a Royalty Rate in Schedule B. Under the plain language of Section 3.3, no royalties are owed for online subscriptions and downloads.

64. Plaintiff, however, erroneously included in its royalty calculation revenues from online subscriptions and downloads, which were not covered by the 2007 Agreement.

65. Those excess payments for online subscriptions and downloads total more than one million dollars.

**Because all the Design Patents have expired, Plaintiff's obligation to pay royalties under the 2007 Agreement has ended and Plaintiff has overpaid.**

66. All the Design Patents assigned by Tanner to Plaintiff pursuant to the Agreements have expired, the last of which expired on May 29, 2021.

67. Defendants have not provided to Plaintiff any goods, services, consultation, or other benefit since Defendants stopped providing consulting services to Plaintiff in 2009.

68. The 2005 Agreement provides for a flat royalty of one-half percent on certain branded electronic cutting machines, regardless of whether any Design Patents remain in force. The 2005 Agreement does not provide for a discounted royalty rate after the expiration of the Design Patents.

69. Section 3.3 of the 2007 Agreement provides for a flat royalty of "one-half percent (1/2 %) of any CRICUT-branded electronic cutting machines" and a flat royalty of "one half percent (1/2 %) of any CRICUT-branded cutting cartridges…." The 2007 Agreement does not provide for a discounted royalty rate after the expiration of the Design Patents.

70. An agreement to pay a royalty on revenues accruing after the expiration of the underlying patents is void and unenforceable as against public policy once the underlying patents have expired. *Kimble v. Marvel Entertainment, LLC*, 576 U.S. 446, 135 S. Ct. 2401 (2015).

71. The 2005 Agreement is an agreement to pay a royalty on revenue accruing after the expiration of the Design Patents.

72. The 2007 Agreement is an agreement to pay a royalty on revenue accruing after the expiration of the Design Patents.

73. The July 2021 royalty payment from Cricut to E for E pursuant to Section 3.3 of the 2007 Agreement included royalties for the quarter ending June 30, 2021.

74. In the July 2021 royalty payment, Plaintiff erroneously calculated royalties by including the revenues earned after the last patent expired on May 29, 2021. E for E is not entitled to royalties on revenues accruing after May 29, 2021.

75. Plaintiff's overpayment to E for E for royalties on revenues accruing after the Design Patents expired (i.e., the period from May 29, 2021 through June 30, 2021) exceeds $300,000.

76. Absent the expiration of the last of the Design Patents, the next quarterly royalty payment following Plaintiff's July 2021 royalty payment would have been due October 12, 2021. Due to the expiration of the last of the Design Patents on May 29, 2021, however, Plaintiff owes Defendants no additional royalties, and Plaintiff made no payment to E for E on October 12, 2021.

**FIRST CAUSE OF ACTION**
**(Declaratory Judgment, 28 U.S.C. § 2201)**

77. Plaintiff incorporates and realleges the preceding paragraphs as if fully set forth herein.

78.     This action is brought pursuant to 28 U.S.C. § 2201, the Declaratory Judgment Act, which allows this Court to adjudicate parties' respective rights and other legal relations in an actual controversy. This Court has power to issue declaratory judgments determining rights, status, and other legal relations within its jurisdiction.

79.     At least two actual controversies exist between Plaintiff and Defendants.

80.     First, Plaintiff maintains that the 2007 Agreement does not require Plaintiff to make royalty payments for online subscriptions and downloads, that Plaintiff's mistaken royalty payments for such online subscriptions and downloads must be returned by Defendants, and that Plaintiff is not required to make any future royalty payments to Defendants for such online subscriptions and downloads.

81.     In contrast, Defendants maintain that the 2007 Agreement does require royalty payments for online subscriptions and downloads, that they are entitled to keep such payments already made, and that they are entitled to continue to receive such payments in the future.

82.     Second, Plaintiff maintains that, as a matter of law, Plaintiff owes no royalty payments under the 2007 Agreement on any revenues earned after May 29, 2021 when the last of the Design Patents on the Design Inventions expired, that any provisions in the agreements to the contrary are unenforceable, that Plaintiff's non-payment of royalties on October 12, 2021 was not a breach of the 2007 Agreement, that Plaintiff's mistaken payment exceeding $300,000 must be returned, and that Plaintiff does not need to make any future royalty payments to Defendants.

83.     In contrast, Defendants maintain that those royalty payments for the Design Inventions are still owed by Plaintiff in perpetuity, that the royalty payments must be paid by Plaintiff in perpetuity despite the expiration of all of the Design Patents, and, on information and belief, that the non-payment of royalties by Plaintiff on October 12, 2021 constitutes a default and non-payment of amounts due under the 2007 Agreement.

84. Plaintiff seeks declaratory relief because a judgment will resolve these controversies and remove uncertainty.

85. Plaintiff is entitled to, and hereby requests, declaratory judgment as follows:

   a. the 2007 Agreement does not require Plaintiff to make royalty payments for online subscriptions and downloads; Plaintiff's mistaken royalty payments for such online subscriptions and downloads must be returned by Defendants; and Plaintiff is not required to make any future royalty payments to Defendants for such online subscriptions and downloads; and

   b. Plaintiff owes no royalty payments under the 2007 Agreement on any revenues earned after May 29, 2021 when the last of the Design Patents on the Design Inventions expired; any and all agreement provisions to the contrary are unenforceable; Plaintiff's non-payment on October 12, 2021, was not a breach of the 2007 Agreement; Plaintiff's mistaken payment exceeding $300,000 must be returned by Defendants; and Plaintiff does not need to make any future royalty payments to Defendants.

### SECOND CAUSE OF ACTION
**(Unjust Enrichment)**

86. Plaintiff incorporates and realleges the preceding paragraphs as if fully set forth herein.

87. Defendants have been unjustly enriched by Plaintiff with respect to the mistaken and unnecessary royalty payments.

88. Plaintiff conferred a benefit on Defendants when it mistakenly paid Defendants royalties totaling more than one million dollars for online subscriptions and downloads. Neither the 2005 Agreement, the 2007 Agreement, nor any other agreements between Plaintiff and Defendants required payments for online subscriptions and downloads.

89. Plaintiff conferred a benefit on Defendants when it mistakenly paid Defendants royalties exceeding $300,000 relating to revenues generated after the last of the Design Patents expired, which royalty payments are unenforceable and contrary to the law.

90. Defendants have actual knowledge that Plaintiff has conferred these benefits to Defendants, and Defendants accepted and have continued to retain these benefits.

91. Under these circumstances—including that these payments were not contracted for, are contrary to the law, and are in excess of the millions of dollars of payments to which Defendants were entitled and received—it would be inequitable for Defendants to retain the benefits of these payments.

92. Defendants have been unjustly enriched by not paying Plaintiff the amount it is owed. Plaintiff is entitled to reimbursement of the more than one million dollars for online subscriptions and downloads, and the royalties exceeding $300,000 on expired Design Patents.

**THIRD CAUSE OF ACTION**
**(Money Had and Received)**

93. Plaintiff incorporates and realleges the preceding paragraphs as if fully set forth herein.

94. Plaintiff mistakenly paid Defendants royalties totaling more than one million dollars for online subscriptions and downloads.

95. Moreover, on July 10, 2021, Plaintiff made its final royalty payment to E for E, covering the months of April to June, 2021.

96. Included in that final royalty payment was a payment exceeding $300,000 on revenue accruing after the expiration of all of the Design Patents (i.e., for the period May 29, 2021 through June 30, 2021) and a payment for online subscriptions and downloads (for the period April 1, 2021 through June 30, 2021), neither of which payments was owed to Defendants.

97. Plaintiff made such payments by mistake.

98. Defendants have actual receipt of that money.

99. Defendants have this money in hand, maintaining possession, custody, and control of that money.

100. That money belongs to Plaintiff.

101. In equity and good conscience, that money must be paid back to Plaintiff. Defendants, however, have not paid that money back to Plaintiff.

102. Defendants must return such payments to Plaintiff.

### FOURTH CAUSE OF ACTION
**(Overpayment/Recoupment)**

103. Plaintiff incorporates and realleges the preceding paragraphs as if fully set forth herein.

104. Plaintiff mistakenly overpaid Defendants royalties totaling more than one million dollars for online subscriptions and downloads.

105. Plaintiff also mistakenly overpaid Defendants over $300,000 on expired Design Patents (for the period May 29, 2021 through June 30, 2021).

106. It would be highly inequitable for Defendants to retain these overpayments, which were not required under the 2005 Agreement or the 2007 Agreement, which were not earned by Defendants, which are not allowed by law, and which do not belong to Defendants. Defendants, however, have not paid these overpayments back to Plaintiff.

107. Defendants are not and will not be unduly prejudiced or unduly burdened by being required to return the overpayments to Plaintiff.

108. Plaintiff is entitled to recoupment of the overpayments, and Defendants must return such overpayments to Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for the following relief:

A.  For judgment on each cause of action as requested;

B.  For damages, as set forth above;

C.  For equitable and declaratory relief as set forth above;

D.  For an award of costs, attorney fees, and contractual, pre-judgment and post-judgment interest as allowed by law; and

E.  For such additional relief as this Court deems appropriate.

DATED this 13th day of October, 2021.

                                         SNELL & WILMER, L.L.P.

                                         */s/ Jeremy J. Stewart*
                                         Matthew L. Lalli
                                         Jeremy J. Stewart
                                         Sarah A. Hafen

                                         BAKER BOTTS L.L.P.
                                         Paul J. Reilly (pro hac vice pending)
                                         David Tobin (pro hac vice pending)
                                         Susan Kennedy (pro hac vice pending)

                                         *Attorneys for Cricut, Inc.*