# EXHIBIT A

## CONSULTING AGREEMENT

THIS LICENSE AGREEMENT (the "Agreement") is made and entered into this 21st day of February 2005 (the "Effective Date"), by and between Desirée Tanner ("Tanner"), an individual residing in the State of ~~Utah~~ CA, and having an address at 24 w. [illegible handwritten address], and Provo Craft and Novelty, Inc. (hereinafter referred to as "Provo Craft"), a corporation duly organized under the laws of the State of Utah, and having its registered office at 151 East 3450 North, Spanish Fork, Utah 84660.

WHEREAS, Tanner has been a consultant to Provo Craft for a number of years.

WHEREAS, Provo Craft desires to continue to retain Tanner as a consultant on various Provo Craft projects and products; and

WHEREAS, Provo Craft and Tanner wish to formalize their ongoing relationship through this Agreement.

NOW, THEREFORE, in consideration of the mutual promises contained herein, the parties, intending to be legally bound, hereby agree as follows:

### ARTICLE 1 - DEFINITIONS

As used herein, the following terms shall have the meanings set forth below:

1.1 "Consulting Services" means and includes 1) the responsibilities, duties and services set forth in Schedule A; and 2) any other additional responsibilities, duties or services requested by Provo Craft and mutually agreed upon by the parties hereto and set forth in writing in a new Schedule A or an addendum to Schedule A. Such additional responsibilities, duties or services being deemed by the parties hereto to be fully supported by the consideration set forth in this Agreement with no additional consideration required therefor.

1.2 "Royalty-Based Products" means those products, identified by SKU number, set forth in Schedule B or those products mutually agreed upon by the parties hereto and set forth in writing in a new Schedule B or an addendum to Schedule B.

1.3 "Ancillary Products" means any product, identified by SKU number, that is sold and branded with the Royalty-Based Products and is set forth in Schedule B or those products mutually agreed upon by the parties hereto and set forth in writing in a new Schedule B or an addendum to Schedule B.

1.4 "Net Sales Price" means the price invoiced by Provo Craft to its customers less credits and returns. Net Sales Price shall not include sales taxes, freight charges, and similar items.

1.5 "Consulting Fee" means the amount to be paid to Tanner hereunder which shall be in an amount equal to the Net Sales Price times the Consulting Fee Rate set forth in Schedule B.

1.6 "Royalty" means the amount to be paid to Tanner hereunder which shall be in an amount equal to the Net Sales Price times the Royalty Rate set forth in Schedule B.

1.7 "Confidential Information" means all materials provided to Tanner that are identified (both orally or in writing) as confidential; all material or information not generally known outside of the business of Provo Craft or Provo Craft's affiliates (and information and material that becomes known outside of the businesses of Provo Craft or the Provo Craft's Affiliates as a result of a breach by Tanner of its obligations hereunder) and/or which is confidential or proprietary to Provo Craft or any Provo Craft affiliate, including, but not limited to, products developed, being developed and/or to be marketed, promoted or otherwise supported by Provo Craft or any Provo Craft affiliate, the Intellectual Property Rights therein prior to their authorized publication or public disclosure by Provo Craft (and provided that all unpublished or undisclosed portions of the foregoing shall continue to be treated as confidential hereunder); all business plans and financial, marketing, sales, product, research and development plans, and other business information of Provo Craft or any Provo Craft affiliate; material or information

1.8 "Intellectual Property Right" and "Intellectual Property Rights" means one or more of the Copyrights, Trademarks, Patent Rights and Other Rights, and specifically including, but not limited to, the right to i) sue for, assert claims or demands, settle and/or release, and recover damages and all other remedies at law or equity for any past, present or future infringement, misappropriation or other violation of the same, ii) seek and obtain protection therefor (including without limitation the right to seek and obtain copyright registrations, Letters Patent and Trademark Registrations) in the United States and all other countries in Provo Craft's name (or otherwise as Provo Craft may desire), and iii) claim all rights and priority thereunder to the extent, if any, that Tanner may be entitled to claim any such rights.

disclosed to Tanner or of which Tanner became aware only by virtue of its work for, with or on behalf of Provo Craft or an Provo Craft Affiliate; and the terms and conditions of this Agreement.

## ARTICLE 2 – CONSULTING SERVICES

2.1 Tanner shall perform the Consulting Services. The payment of Consulting Fees hereunder shall be predicated upon the continued performance by Tanner of the Consulting Services.

## ARTICLE 3 – COMPENSATION

3.1 As compensation for the performance of the Consulting Services, Tanner shall be paid a Consulting Fee for the sale of Royalty-Based Products and Ancillary Products set forth in Schedule B.

3.2 Provo Craft shall also pay to Tanner a Royalty for the sale of Royalty-Based Products and Ancillary Products set forth in Schedule B.

3.2 No Consulting Fee or Royalty hereunder shall be due or owing for any sales of any products, whether or not identified as Royalty-Based Products or Ancillary Products for which Tanner did not provide Consulting Services relating thereto. No Consulting Fee or Royalty hereunder shall be due or owing for any sales of Ancillary Products that are not branded and sold with the Royalty-Based Products. No Consulting Fee or Royalty hereunder shall be due or owing for any sales of the Royalty-Based Products or Ancillary Products that are sold at or below Provo Craft's cost or at closeout prices.

3.3 Provo Craft and Tanner shall in good faith seek to mutually agree upon products that are to be included as Royalty-Based Products or Ancillary Products in Schedule B or an Addendum to Schedule B and the Royalty Rates and Consulting Fee Rates therefor. If the parties hereto cannot reach such a mutual agreement, Provo Craft shall have sole authority to determine if a product qualifies as a Royalty-Based Product or Ancillary Product and, if so, set the Royalty Rate and Consulting Fee Rate therefore.

3.4 The Net Sales Price to which the Consulting Fee Rate or Royalty Rate may apply may be prorated for Royalty-Based Products or Ancillary Products that are packaged together with or combined with other products that are not typically branded with the Royalty-Based Products. The amount of the prorated share of the Net Sales Price shall be at Provo Craft's sole discretion, but shall generally be approximately equal to the wholesale price of the Ancillary Product(s) when sold alone as compared to the wholesale price of the products that are not typically branded with the Royalty-Based Products. Consulting Fee and Royalty payments due hereunder shall be made on a quarterly basis or as otherwise agreed to by the parties.

## ARTICLE 4 – PERFORMANCE

4.1 Tanner shall provide the Consulting Services as reasonably requested by and in a reasonable manner and a reasonable time specified by Provo Craft. Should Tanner fail to provide or become unable to provide the Consulting Services, whether voluntarily or involuntarily, as reasonably requested and specified by Provo Craft, Provo Craft may, at its sole discretion, withhold and/or terminate all future Consulting Fees that have not accrued at the time of such failure to provide or inability to provide the Consulting Services.

4.2 In circumstances where a cure is possible, Tanner shall have thirty (30) days to cure any failure to provide the Consulting Services. Any delay caused by a failure to perform the Consulting Services may

result in a corresponding delay by Provo Craft in payment of Consulting Fees. In a case where a cure is not possible, Provo Craft may withhold a portion of Consulting Fees due to offset any costs associated with the failure to perform the Consulting Services. Provo Craft shall notify Tanner of any such offset and the amount thereof. Provo Craft shall at its sole discretion determine the acceptance or rejection of any such cure or attempted cure by Tanner.

4.3  The Royalties due hereunder shall not be affected by the performance, or lack thereof, of the Consulting Services.

## ARTICLE 5 – RECORDS AND PAYMENTS

5.1  Provo Craft agrees to keep accurate books of account and records covering all transaction relating to the Consulting Fees and Royalties due hereunder throughout the term of this Agreement.

5.2  Provo Craft shall furnish Tanner with a Statement along with payment of Consulting Fees and Royalties due hereunder. Provo Craft shall also provide a detail of any Royalty-Based Products or Ancillary Products sold at or below Provo Craft's cost or at closeout prices, as part of a package or combination for which the royalty has been prorated and/or any offset of royalties pursuant to Section 3.3 or 4.2 above.

5.3  Tanner shall have the right to object to any Statement or payment hereunder as long as Tanner provides to Provo Craft written notice of same including the nature of and grounds for such objection within thirty (30) days after Tanner' receipt of the relevant statement or payment.

## ARTICLE 6 – INTELLECTUAL PROPERTY RIGHTS AND ENFORCEMENT

6.1  Tanner acknowledges and agrees that Provo Craft shall be the owner of all right, title and interest in and to the Royalty-Based Products and Ancillary Products or any other product or Intellectual Property Right resulting from the Consulting Services, including, but not limited to, all Intellectual Property Rights therein. Tanner agrees to and hereby irrevocably assigns, sells, transfers, grants and conveys all of her worldwide right, title and interest in and to any improvements or contributions to the Royalty-Based Products and Ancillary Products from the moment of creation to Provo Craft, its successors and assigns (without the necessity of any further consideration or action on the part of Provo Craft or Tanner), including, but not limited to, all Intellectual Property Rights therein, for perpetuity (or for the longest period of time otherwise permitted by law) (and insofar as ownership of the Designs or the Intellectual Property Rights therein are not deemed to vest in or be owned by Provo Craft by operation of law), the same to be held and enjoyed by Provo Craft, its successors and assigns to the same extent that such right, title and interest would have been held and enjoyed by Tanner if this assignment had not been made.

6.2  Tanner without reservation hereby binds herself, her successors, assigns and legal representatives to cooperate fully and promptly with Provo Craft and to do all acts necessary or required to be done or requested by Provo Craft in order to perfect title to all Intellectual Property Rights in the newly developed Royalty-Based Products, ancillary products or as a result of any of the Consulting Services therein in Provo Craft and in connection with the maintenance, enforcement or defense of such Intellectual Property Rights and all other proceedings before the United States Patent and Trademark Office ("PTO"), the United States Copyright Office and similar foreign offices without the necessity of further consideration from Provo Craft but at Provo Craft's reasonable expense, including, without limitation, to execute and deliver to Provo Craft any and all lawful application documents including petitions, specifications, oaths, assignments, disclaimers and lawful affidavits in form and substance as may be requested by Provo Craft (including but not limited to copyright, trademark and patent assignments) to communicate to Provo Craft all facts known to it relating to any copyright subject matter, trade secrets and inventions, to furnish Provo Craft with any and all information, documents, materials or records of any kind (and in any media) in its control that may be useful for establishing the facts of conceptions, disclosures, and reduction to practice and the like; to testify in, and assist in Provo Craft's preparation for, all legal, administrative or other proceedings (including without limitation in connection with the reissue application and any reexamination, interference or other proceeding before the PTO or Copyright Office); to sign, execute and deliver all lawful papers when called upon to do so

that may be necessary or desirable in connection with the foregoing; and generally to do everything possible to aid Provo Craft in connection with the foregoing in the United States and other countries. Tanner appoints Provo Craft as her agent and attorney-in-fact to act for and on her behalf in connection with the foregoing, which appointment is irrevocable and coupled with an interest.

## ARTICLE 7 – CONFIDENTIALITY AND NON-COMPETITION

7.1  All Confidential Information shall at all times remain the property of Provo Craft. Both during the period of retention by Provo Craft and thereafter, Tanner shall maintain the same in confidence and shall take all necessary steps (including those reasonably directed by Provo Craft) to carefully safeguard and prevent the disclosure thereof. Tanner shall not (and shall not permit others to), without the prior written consent of Provo Craft, directly or indirectly publish, disclose, transfer, distribute, release or permit others to have access (by electronic means or in any other way) to the Confidential Information. The confidentiality and nondisclosure obligations set forth herein shall survive the expiration or termination of this Agreement, except only with respect to any portion of the Confidential Information that itself is, and whose technical and commercial significance is, made conveniently available to the applicable trade or portion of the public by Provo Craft, disclosed to Tanner by a third party who did not obtain the same directly or indirectly from Provo Craft or was known to Tanner (in writing) prior to disclosure to it by Provo Craft, provided, however, that notwithstanding anything to the contrary in this Agreement, in the event that any Confidential Information is included in or made part of a patent application, the confidentiality and nondisclosure obligations set forth herein with respect to such Confidential Information shall remain in effect in the United States or a foreign jurisdiction, as warranted, until each such aspect of the Confidential Information is disclosed in an issued patent or published by a government patent office.

7.2  Nothing in this Agreement nor Provo Craft's disclosure of the Confidential Information shall be deemed, by implication or otherwise, to grant Tanner any licensed interest or property right in, under or to any of the Confidential Information or Intellectual Property. Tanner acknowledges and agrees that she has no right to and will not (a) commercially exploit the Confidential Information or Intellectual Property except as required to perform the Consulting Services and as expressly authorized by Provo Craft, (b) prepare Derivative Works of any part of the Confidential Information or Intellectual Property, except as required to perform the Consulting Services and as expressly authorized by Provo Craft, (c) make a copy of or store any part of the Confidential Information or Intellectual Property in any computer or in any magnetic, optical or similar medium or in digital form without the prior express consent of Provo Craft, (d) grant third parties any rights thereunder, (e) claim, apply for or obtain Intellectual Property Rights in the Confidential Information (f) contest (or assist others in contesting) Provo Craft's right to secure Intellectual Property Rights hereunder.

7.3  During the term of this Agreement and for a period of one (1) year after termination of this Agreement by either party, Tanner shall not compete directly or indirectly with Provo Craft, cause or encourage any third party to compete directly or indirectly with Provo Craft, work for any competitor of Provo Craft, or provide any of the Consulting Services for any other entity or third party without the express written consent of Provo Craft.

7.3  Nothing in this Agreement shall be deemed, by implication or otherwise, to form an affiliation, association or other connection between Provo Craft and Tanner beyond the scope of the Consulting Services or grant Tanner any authority beyond that necessary to perform the Consulting Services. Tanner shall not take any action or make any statement, oral or written, that would cause or appear to create such an affiliation, association, or other connection between Provo Craft and Tanner or appear to grant such authority without the express written consent of Provo Craft and shall in all instances deny the same.

## ARTICLE 8 – TERM AND TERMINATION

8.1 Unless terminated, this Agreement shall remain in effect so long as Provo Craft sells any of the Royalty-Based Products or Ancillary Products set forth in Schedule B.

8.2 The terms relating to the payment of Consulting Fees hereunder shall remain in effect so long as Provo Craft retains Tanner as a consultant and Tanner performs the Consulting Services.

8.3 Either party shall have the right to terminate this Agreement in the event that the other party commits a material breach of any provision of this Agreement which is not cured within thirty (30) days after receipt of written notice from the non-breaching party. With respect to Tanner, a material breach of this Agreement shall be limited to a breach of the terms and conditions of Article 6 or Article 7 herein and shall not include Tanner's ability to satisfactorily perform or inability to perform the Consulting Services. A material breach by Tanner that is not cured to the satisfaction of Provo Craft shall relieve Provo Craft of non-accrued Consulting Fees and Royalties.

8.4 Provo Craft or Tanner may terminate this Agreement for any reason by giving the other party thirty (30) days advanced written notice. Should such termination be based upon a reason other than for a material breach by Tanner or upon Tanner's ability to satisfactorily perform or inability to perform the Consulting Services, the terms relating to the payment of Royalties hereunder shall survive such termination. Such termination shall relieve Provo Craft of the payment of non-accrued Consulting Fees.

8.5 Termination of this Agreement shall in no way prevent or encumber Provo Craft's right to continue or begin to manufacture, distribute and/or sell the Royalty-Based Products and Ancillary Products.

8.6 The provisions of this Agreement with respect to Confidential Information and Intellectual Property shall survive expiration or termination of this Agreement and continue indefinitely thereafter.

## ARTICLE 9 – GENERAL PROVISIONS

9.1 To the extent that any provision, portion or extent of this Agreement is determined to be invalid, illegal or unenforceable, such provision, portion or extent shall be severed or deleted herefrom or limited so as to give effect to the intent of the parties insofar as possible and that the remainder of the Agreement shall remain binding upon the parties. The invalidity or unenforceability of any provision hereof shall not affect the validity or enforceability of any other provision. All references to particular Sections are to Sections contained in this Agreement. The captions in this Agreement are inserted for convenience of reference only and do not constitute a part of the Agreement and shall not modify or limit any of the terms thereof.

9.2 This Agreement (a) constitutes the entire understanding between the parties concerning the subject matter hereof and supersedes any prior agreements or understandings whether written or oral, and (b) may not be amended except in a writing executed by all parties. The parties hereto agree that the venue for any litigation or dispute arising out of this Agreement shall be in Utah and that the Federal and State courts therein shall have jurisdiction over the subject matter and the parties.

9.3 A waiver, express or implied, by either party hereto of any rights hereunder, for failure to perform or breach by the other party hereto, shall not be deemed as a waiver of any other right hereunder or of any other breach or failure of such other party hereto, whether of a similar or dissimilar nature thereto and shall not be deemed a continuing waiver of any breach or failure hereunder.

9.4 This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective representatives, heirs, successors, and assigns. Tanner shall not be entitled to assign her interest in this Agreement without the prior written consent of Provo Craft.

IN WITNESS WHEREOF, and intending to be legally bound hereby, the parties have caused this instrument to be duly executed as of the Effective Date written above.

Date: Feb 24, 2005

By: Tanner

_____
Desirée Tanner (an individual)

Date: _____

By: Provo Craft and Novelty, Inc.

_____
Robert Workman, CEO

## SCHEDULE A
### (Consulting Services)

All Provo Craft policy and procedures must be followed and maintained. Expense policy procedures must be followed and controlled.

Training: Provide training services on an as-needed basis. Such training services shall include, but not be limited to the training of in-house customer service personnel and sales representatives and key accounts whether in-house or at their place of business as required.

Trade Shows: Attending and teaching at specified trade shows from time-to-time as needed and mutually agreed to by the parties.

Ellison Educational: Interfacing on Provo Craft's behalf with Ellison Educational on all design and educational issues.

New Product Development: Seeking and discovering new product opportunities for Provo Craft including, but not limited to, obtaining information regarding the relevant market, current trends and evolving trends, sourcing including sourcing from other industries and the development of new and original product ideas.

Recruiting, Selecting and Overseeing Artists and Designers:
 A. Actively recruiting new artists and designers at shows
 B. Reviewing artwork and designs that are submitted to Provo Craft
 C. Following up with artists and designers who submit portfolios
 D. Setting up meetings with artists and designers to review their artwork and determine a fit or program
 E. Selling artists and designers on product/concept so they will submit artwork.
 F. Making requests or calls for art
 G. Selecting artists and designers to work on particular projects based on knowledge of artists' style, abilities and past efficiency.
 H. Regular phone or in-person contact with artists and designers while working on a project
 I. Working with artists and designers to modify artwork to fit product concept or customer requests
 J. Following up with artists and designers to keep them updated on the status of their artwork and designs or projects they are working on
 K. Letting artists and designers know if artwork or designs have been accepted for production
 L. Letting PLM know which artwork, designs, artists and designers are approved for a product
 M. Continuing to work with artists and designers as a product evolves
 N. Collecting art work and developments from artists and designers
 O. Making sure that the artists and designers have executed all applicable contracts with Provo Craft regarding non-disclosure, non-compete and royalty agreements.
 P. Working with PLM to make sure artists and designers get any required samples once the product is produced
 Q. Forwarding used/unused artwork and designs onto the other Creative Leads to be cross-promoted and/or used in other programs.

Viability Studies: Preparing for viability by completing viability form and preparing sample artwork or visual aides to help committee members conceptualize the proposal. Prepare mock up samples of product when possible to visually show hot the product will look when complete. Also taking steps to establish acceptable pricing guidelines in the relevant market and sourcing within Provo Craft's existing vendors to establish Provo Craft's ability to meet pricing expectations.

Working closely with PLM and Marketing Team to coordinate look and feel of packaging, samples, and storyboards.

Being an active member of product line team, including without limitation, preparing samples for meetings, preparing to present and educate about new products in viavbility and line extension meetings, for sales or their

customers at shows, etc., working with in-house designers to obtain project samples or prototypes, helping to prepare for Kick-off meetings in conjunction with PLM.

Show Preparation: Submitting and/or helping evaluate Make 'n' Take Proposals, preparing demonstrations of product lines, reviewing and preparing product samples for displays at shows.

Writing scripts for promotional television and video opportunities.
Traveling to location of promotional television and video opportunities and participating in such as needed.
Traveling to location of scrapbooking programs.
Attending consumer shows.
Visiting key accounts or making presentations with or to sales representatives.

In addition to and without limiting the foregoing, with specific reference to Sizzix® and Küttr™ product lines.

A. Developing programs
B. Gathering and Assigning new designs
C. Reworking existing designs
D. Organizing all Designs and ensuring correct formatting
E. Recruit new designers/artists
F. Coordinating launch periods and content
G. Coordinating all ideas, designs and communication with PLMs
H. Conveying royalty information as provided by Provo Craft
I. Supporting sales staff with samples and teaching, selling and explaining programs.
J. Scouting, researching and developing major trends in design
K. Developing and "pitching" article concepts and editorial opportunities to major magazines
L. Developing positive working relationships with other companies in the industry to cross-promote
M. Advising and coordinating Sizzix® machine and die placement to key designers in the industry
N. Advise on packaging
O. Coordinating press releases
P. Following-up on all designs from conception to QC
Q. Answering customer service questions
R. Travel as needed

Date: _Feb 21, 2005_          By: Tanner

_[signature]_
Desirée Tanner (an individual)

Date: _____          By: Provo Craft and Novelty, Inc.

_____
Robert Workman, CEO

## SCHEDULE B
### (Royalty-Based Products and Royalty Rates)

| Royalty-Based Product: | Royalty Rate: | Consulting Fee Rate: |
|---|---|---|
| Sizzix® branded steel rule dies | 1/2% | 1/2% |
|     SKU No. _____ | 1/2% | 1/2% |
|     SKU No. _____ | 1/2% | 1/2% |
|     SKU No. _____ | 1/2% | 1/2% |
|     SKU No. _____ | 1/2% | 1/2% |
|     SKU No. _____ | 1/2% | 1/2% |
|     SKU No. _____ | 1/2% | 1/2% |
|     SKU No. _____ | 1/2% | 1/2% |
|     SKU No. _____ | 1/2% | 1/2% |
| | | |
| Sizzix® branded Ancillary Products | up to 2% (to be negotiated) | |
|     SKU No. _____ | _____ | _____ |
|     SKU No. _____ | _____ | _____ |
|     SKU No. _____ | _____ | _____ |
|     SKU No. _____ | _____ | _____ |
|     SKU No. _____ | _____ | _____ |
|     SKU No. _____ | _____ | _____ |
|     SKU No. _____ | _____ | _____ |
|     SKU No. _____ | _____ | _____ |
| | | |
| Küttr™ branded electronic cutting machines *or its replacement* | 1/2% | 1/2% |
|     SKU No. _____ | | |
| | | |
| Küttr™ branded Ancillary Products | | |
| *or its replacement* SKU No. _____ | _____ | _____ |
|     SKU No. _____ | _____ | _____ |
|     SKU No. _____ | _____ | _____ |
|     SKU No. _____ | _____ | _____ |
|     SKU No. _____ | _____ | _____ |
|     SKU No. _____ | _____ | _____ |
|     SKU No. _____ | _____ | _____ |
|     SKU No. _____ | _____ | _____ |

Date: Feb 24, 2005

By: Tanner

_Desirée Tanner_ (an individual)

Date: 2/24/2005

By: Provo Craft and Novelty, Inc.

Robert Workman, CEO

IN WITNESS WHEREOF, and intending to be legally bound hereby, the parties have caused this instrument to be duly executed as of the Effective Date written above.

Date: _FEB 21, 2005_                          By: Tanner

                                                                            _Desirée Tanner_
                                                                            Desirée Tanner (an individual)

Date: _2-24-2005_                              By: Provo Craft and Novelty, Inc.

                                                                            Robert Workman, CEO