# EXHIBIT B

## CONSULTING SERVICES AND ROYALTY AGREEMENT

THIS CONSULTING SERVICES AND ROYALTY AGREEMENT (the "Agreement") is made and entered into this ⬚⬚ day of ⬚⬚⬚⬚ 2007 (the "Effective Date"), by and between Desiree Tanner (**"Tanner"**), an individual residing in the State of California and Enough for Everyone, Inc. a California corporation with its principal place of business located at 214 West Avenida Cordoba, San Clemente, CA 92672 (**"E for E"**), and Provo Craft and Novelty, Inc. (hereinafter referred to as "Provo Craft"), a corporation duly organized under the laws of the State of Utah, and having its registered office at 151 East 3450 North, Spanish Fork, Utah 84660. E for E and Provo Craft are sometimes referred to herein individually as a **"Party"** or collectively as **"the Parties".** All provisions apply to E for E; only specified provisions apply to Tanner the individual.

WHEREAS, Desiree Tanner , who formed the corporation Enough for Everyone on December 21, 2006, and Provo Craft previously entered into a consulting agreement dated February 21, 2005 (**"2005 Consulting Agreement"**);

WHEREAS, Provo Craft sold the Sizzix product line to Ellison Educational Equipment, Inc., and is still paying Tanner Royalties on the Sizzix product line and will continue to pay such Royalties only for the period of time that Provo Craft continues to sell Sizzix products, but is no longer paying Tanner any Consulting Fee relating to the Sizzix product line;

WHEREAS, Tanner and Provo Craft have been operating under the terms of the 2005 Consulting Agreement and other terms not provided in a written agreement;

WHEREAS, E for E and Provo Craft would like to enter into this Agreement to set forth their relationship with respect to products sold under the CRICUT and CUTTLEBUG marks and other products for which E for E is currently receiving or may receive a royalty; and

WHEREAS, this Agreement supersedes and replaces the 2005 Consulting Agreement as of the Effective Date stated above, except that some Royalty Rates and Consulting Fee Rates will have an earlier effective date if so specified in the applicable Schedule B or Schedule C.

NOW, THEREFORE, in consideration of the mutual promises contained herein, the sufficiency of which consideration is hereby expressly acknowledged and agreed to by the Parties, the Parties, intending to be legally bound, hereby agree as follows:

## ARTICLE 1 - DEFINITIONS

As used herein, the following terms shall have the meanings set forth below. Other terms are defined elsewhere in this Agreement.

A.      "Confidential Information" means all materials provided to one Party (**"Recipient"**) by the other Party (**"Discloser"**) that are of a character regarded by the Discloser as confidential. Confidential Information of Provo Craft may include, but is not limited to, products developed, being developed and/or to be marketed, promoted or otherwise supported by Provo Craft or any Provo Craft affiliate, and the Intellectual Property Rights therein (excluding Intellectual Property Rights belonging to E for E or any third party) prior to their authorized publication or public disclosure by Provo Craft (and provided that all unpublished or undisclosed portions of the foregoing shall continue to be treated as confidential hereunder); all business plans and financial, marketing, sales, product, research and development plans, and other confidential or proprietary business information of Provo Craft or any Provo Craft affiliate of which E for E became aware only by virtue of its work for, with or on behalf of Provo Craft or an Provo Craft affiliate. Such Confidential Information if disclosed in writing shall be marked or identified as confidential or a similar designation, or if orally or visually disclosed, shall be identified as the

*TANNER CONSULTING SF#32B89D.doc*

confidential information of the Discloser at the time of disclosure and then summarized in writing and provided to the Recipient in such written form within thirty (30) days after such oral or visual disclosure.  However, Confidential Information shall not lose its protection under this Agreement if, due to oversight or other reasonable cause, the Discloser fails to mark or identify such information as confidential at the time of its disclosure, if such identification is provided by the Discloser within a reasonable time after the oversight is discovered; and the Recipient shall not be liable for failing to treat such information as confidential prior to its identification as such unless the information should reasonably have been understood by the Recipient to be confidential from the context or circumstances.

B.   "Consulting Expenses" means any out of pocket expenses paid by E for E in performing the Consulting Services and any hourly fees charged for Additional Consulting Services (defined in **Section 2.8 "Consulting Expenses"**) not covered by the Consulting Fee Rate.

C.   "Consulting Fee" means the amount to be paid to E for E for Consulting Services, which shall be in an amount equal to the Net Sales Price times the Consulting Fee Rate set forth in Schedule C, and any subsequent version of Schedule C or an addendum to Schedule C.

D.   "Consulting Services" means and includes 1) the responsibilities, duties and services to be provided by E for E as set forth in Schedule A; and 2) any other additional responsibilities, duties or services requested by Provo Craft and mutually agreed upon by the Parties hereto and set forth in writing in a new Schedule A or an amendment or addendum to Schedule A.  If additional consideration is agreed upon for such additional responsibilities, duties or services it will be specified in the new Schedule A or an amendment or addendum to Schedule A.

E.   "Design Content" means any artwork, designs, fonts or other material provided by E for E to Provo Craft hereunder.

F.   "Intellectual Property Rights" means all worldwide:  (a) patents, patent applications, and patent rights; (b) rights associated with works of authorship including copyrights, copyright applications, copyright registrations, mask work rights, mask work applications, and mask work registrations; (c) trademarks, trademark applications, and trademark registrations; (d) rights relating to the protection of trade secrets and Confidential Information; (e) rights analogous to those set forth herein and any other proprietary rights relating to intangible property; (f) divisions, continuations, renewals, reissues, and extensions of the foregoing (as applicable) now existing or hereafter filed, issued, or acquired; and (g) Moral Rights; and the right to i) sue for, assert claims or demands, settle and/or release, and recover damages and all other remedies at law or equity for any past, present or future infringement, misappropriation or other violation of the same, ii) seek and obtain protection therefor (including without limitation the right to seek and obtain copyright registrations, Letters Patent and Trademark Registrations) in the United States and all other countries in Provo Craft's name (or otherwise as Provo Craft may desire), and iii) claim all rights and priority thereunder to the extent, if any, that E for E may be entitled to claim any such rights.

G.   "Moral Rights" means any right to claim authorship to or to object to any distortion, mutilation, or other modification or other derogatory action in relation to a work, whether or not such would be prejudicial to the author's reputation, and any similar right, existing under common or statutory law of any country in the world or under any treaty, regardless of whether or not such right is denominated or generally referred to as a "moral right".

H.   "Net Sales Price" means the price invoiced by Provo Craft to its customers less credits

TANNER CONSULTING SE#32R89D.doc

and returns. Net Sales Price shall not include sales taxes, freight charges, and similar items.

I. "Royalty" or "Royalties" means the amount to be paid to E for E hereunder which shall be in an amount equal to the Net Sales Price times the Royalty Rates as set forth in Schedule B, and any subsequent version of Schedule B.

J. "Royalty-Based Products" means those products, identified by SKU number, set forth in Schedules B and C and those products mutually agreed upon by the Parties hereto and set forth in writing in a new Schedule B or a new Schedule C or an addendum to Schedule B or Schedule C.

## ARTICLE 2 – CONSULTING SERVICES AND CONSULTING FEES

2.1 <u>Payment of Consulting Fee</u>.  The payment of the Consulting Fee hereunder shall be predicated upon the satisfactory performance of the Consulting Services by E for E and shall only be paid for CUTTLEBUG and CRICUT branded products set forth in Schedule C and any other product families that may be added to Schedule C in the future upon mutual agreement of the Parties.  For the purpose of determining whether a product is to be added to or included in Schedule C, a Consulting Fee shall only apply to a particular product if E for E is involved or has been involved in the product development of the particular product by performing Consulting Services related specifically to product development set forth in Schedule A, which shall be those services identified under the headings "Product Development", items A – I of the services identified under the heading "Recruiting, Selecting and Overseeing Artists and Designers" and/or items A – C of the services identified under the heading "Services related to CRICUT® and CUTTLEBUG® product line" set forth in Schedule A.  For example, if Provo Craft brands a line of paper card stock under the CUTTLEBUG trademark, the product will not be added to Schedule C if E for E was not involved with product development of the paper card stock.  Thus, products, even if branded with a trademark used for other products listed in Schedule C, may not necessarily be qualified for inclusion in Schedule C.

2.2 <u>Performance of Consulting Services</u>.  E for E shall use commercial best efforts to perform the Consulting Services as reasonably requested by Provo Craft and to meet reasonable time deadlines as specified by Provo Craft.  The Consulting Services will be performed by Tanner personally, or under Tanner's direction and supervision.

2.3 <u>Designer Contracts:</u>  In E for E's performance under this Agreement, E for E shall not utilize the services of, or provide to Provo Craft the Design Content of, any artist or designer until such time as Provo Craft has obtained an executed Designer Contract between the designer or artist and Provo Craft.  Provo Craft shall promptly notify E for E in writing if a Designer Contract has been executed with the particular artist or designer.

2.4 <u>Failure to Provide Consulting Services; Cure</u>.  Should E for E fail to provide or become unable to provide the Consulting Services, whether voluntarily or involuntarily, or if the Consulting Services are terminated by Provo Craft as permitted herein, Provo Craft shall be relieved from the payment of all Consulting Fees that have not accrued at the time of such failure or inability to provide or termination of the Consulting Services, either entirely or only relating to the particular product line to which the failure, inability, termination or breach relates, as the case may be.  In circumstances where a cure is possible, E for E shall have thirty (30) days to cure any failure to provide the Consulting Services.

2.5 <u>Delay in Payment or Offset</u>.  Any delay in the performance of the Consulting Services by E for E may result in a corresponding delay by Provo Craft in payment of Consulting Fees



for the affected Consulting Services.  In a case where a cure is not possible, Provo Craft may withhold a portion of Consulting Fees only to the extent required to offset any reasonable costs incurred by Provo Craft as a direct result of E for E's failure to perform the Consulting Services.  Provo Craft shall notify E for E of any such offset and the amount thereof.  Provo Craft shall at its sole reasonable discretion determine the acceptance or rejection of any such cure or attempted cure by E for E.

2.6    <u>Supersedes 2005 Consulting Agreement</u>.  This Agreement supersedes and replaces the prior Consulting Agreement dated February 21, 2005, between Tanner and Provo Craft.

2.7    <u>Consulting Fee</u>.  As compensation for the performance of the Consulting Services, Provo Craft shall pay E for E a Consulting Fee for the sale of certain Royalty-Based Products set forth in Schedule C.  The Consulting Fee shall be equal to one half percent (1/2 %) of the Net Sales Price of the Royalty-Based Products set forth in Schedule C, unless a different Consulting Fee Rate is specified in Schedule C.

2.8    <u>Consulting Expenses.</u>  In performing the Consulting Services, E for E may incur various expenses (e.g., travel expenses and telephone charges) for which Provo Craft may be willing to reimburse E for E.  In addition, E for E may perform additional Consulting Services not included in Schedule A or for product lines not included in Schedule C for which Provo Craft may be willing to pay E for E on an hourly basis (**"Additional Consulting Services"**).  Any such Consulting Expenses (which include Additional Consulting Services) must be pre-approved in writing by Provo Craft in order for E for E to be reimbursed or paid for any such Consulting Expenses,.  E for E must submit in writing a detailed list of such Consulting Expenses to Provo Craft and include a description of the Consulting Expense(s) and the actual (if available) or estimated cost (in the form of a budget) of such Consulting Expense(s).  Failure to obtain such pre-approval in writing will relieve Provo Craft of any obligation to pay for such Consulting Expense(s).  Any Additional Consulting Services provided by E for E to be paid on an hourly basis shall be subject to the terms applicable to the performance of Consulting Services set forth in **Sections 2.1 to 2.4**.

2.9    <u>Covered Products</u>.  Except for the Royalty-Based Products specifically listed in Schedule C, no Consulting Fee hereunder shall be due or owing for any sales of any other products.

2.10   <u>Consulting Fee on Changed SKUs</u>.  The applicable Consulting Fee Rate will apply to any Royalty-Based Product for which the SKU number has simply been changed.

2.11   <u>Sales Below Cost</u>.  No Consulting Fee hereunder shall be due or owing for any sales of the Royalty-Based Products that are sold at or below Provo Craft's cost.

2.12   <u>Determination of Royalty-Based Products</u>.  Provo Craft and E for E shall reasonably and in good faith seek to mutually agree upon the products that are to be included as Royalty-Based Products in Schedule C prior to E for E providing any Design Content or other Intellectual Property relating to such product to Provo Craft.

2.13   <u>Adding New Products</u>.  New Royalty-Based Products shall be added to Schedule C within a reasonable time, not to exceed thirty (30) days after the product's first shipment.  For new Royalty-Based Products that are to be added to Schedule C, Provo Craft must promptly notify E for E in writing (including e-mail) when any such new Royalty-Based Product is released and what the applicable Consulting Fee Rate is (if other than _%).  The notification sent by Provo Craft will constitute the amendment to add the new Royalty-Based Product to Schedule C, and the amendment will be effective retroactive to the first shipment of the added product.

TANNER CONSULTING SE#32B89D doc



2.14   Bundled Products.  The Net Sales Price to which the Consulting Fee Rate applies may be prorated for Royalty-Based Products that are packaged together with or combined with other products (**"Bundled Product"**).  The prorated share of the Net Sales Price shall be equal to the wholesale, retail list price, or cost (whichever was used to determine the sales price of the Bundled Product) of the Royalty-Based Product(s) when sold alone as compared to the wholesale, retail list price or cost of the Bundled Product.

2.15   Consulting Fee Payments and Late Payment Fee.  Consulting Fee payments due hereunder that are based upon the Net Sales Price shall be made by Provo Craft on a monthly basis, no later than ten (10) days following the end of each calendar month, unless a different payment schedule is mutually agreed to by the Parties in writing. E for E shall invoice Provo Craft on a monthly basis for any pre-approved Consulting Expenses and Provo Craft shall pay the invoiced amount within ten (10) days after receipt of E for E's invoice, unless a different payment due date is mutually agreed to by the Parties in writing.  Any payment that is due on a weekend or a holiday will not be considered late if it is made on the next business day following the weekend or holiday. Additionally, a delay of up to five (5) days will be excused if it results from a Force Majeure event.  E for E may charge Provo Craft interest on any late Consulting Fee or Consulting Expense payment, computed on a daily basis for each day that the payment is delinquent at a rate of the current prime interest rate (as published by the Federal Reserve Bank) plus two percent (2%) per year.

## ARTICLE 3 – ROYALTIES

3.1   Royalty Generally.  Provo Craft shall pay to E for E a Royalty for the sale of Royalty-Based Products as set forth in Schedule B or subsequent version of Schedule B and at the Royalty Rates set forth in such Schedules.  The Royalty Rates shall be applied to the Net Sales Price of the Royalty-Based Products set forth in Schedule B.  For the purpose of determining whether a product is to be added to or included in Schedule B, a Royalty shall only apply to a particular product if E for E is involved or has been involved in the product development of the particular product by performing Consulting Services related specifically to product development set forth in Schedule A, which shall be those services identified under the headings "Product Development", items A – I of the services identified under the heading "Recruiting, Selecting and Overseeing Artists and Designers" and/or items A – C of the services identified under the heading "Services related to CRICUT® and CUTTLEBUG® product line" set forth in Schedule A.  For example, if Provo Craft brands a line of paper card stock under the CUTTLEBUG trademark, the product will not be added to Schedule B if E for E was not involved with product development of the paper card stock.  Thus, products, even if branded with a trademark used for other products listed in Schedule B, may not necessarily be qualified for inclusion in Schedule B.

3.2   Duration of Royalty.  The Royalty on all product lines *other than Sizzix*-branded products will remain in effect if a Royalty-bearing product line, or portion thereof, is sold, licensed, or otherwise transferred in any way by Provo-Craft to a third party, or if the product line gets a new name.  In the event that Provo Craft sells, licenses, or transfers a Royalty-bearing product line or portion thereof (other than Sizzix) to a third party, such sale, license, or transfer must include a provision pursuant to which the purchaser, licensee, or transferee acknowledges that its ownership of, or license to, the Royalty-bearing product line or portion thereof is subject to the covenant set forth herein and that it will comply with and honor the covenant set forth herein.

The Royalty will also remain in effect after Tanner dies, after which time the Royalty will continue to be payable to E for E or will be payable to Tanner's heirs or to a trust established by Tanner; and instructions will be provided to Provo Craft.

*TANNER CONSULTING SE#32R89D.doc*

The Royalty on the Sizzix product line applies only to those Sizzix-branded Royalty-Based Products that are sold by Provo Craft itself.

3.3   Covered Products.  Except for the Royalty-Based Products specifically listed as having a Royalty Rate in Schedule B, no Royalty hereunder shall be due or owing for any sales of any other products.  Notwithstanding the foregoing, Provo Craft shall pay to E for E a Royalty as follows, based upon the Net Sales Price, for the specified products for which E for E is not otherwise receiving or eligible to receive a Royalty or Consulting Fee hereunder:  one half percent (1/2 %) of any CRICUT-branded cutting machines, one half percent (1/2 %) of any CRICUT-branded cutting electronic cutting cartridges, or other cartridges that have the same fit, form or function, as the Cricut-Branded cutting cartridges, for use with CRICUT-branded electronic cutting machines, one half percent (1/2 %) of any CUTTLEBUG branded machines, three quarter percent (3/4%) of any CUTTLEBUG-branded die cast dies, and three quarter percent (3/4%) of any CUTTLEBUG-branded plastic embossing folders.  *For avoidance of doubt*, this provision prevails over **Section 3.1 "Royalty Generally"**.

3.4   Royalty on Changed SKUs.  The applicable Royalty Rate will apply to any Royalty-Based Product for which the SKU number has simply been changed.

3.5   Sales Below Cost.  No Royalty hereunder shall be due or owing for any sales of the Royalty-Based Products that are sold at or below Provo Craft's cost.

3.6   Determination of Royalty-Based Products.  Provo Craft and E for E shall in good faith seek to mutually agree upon the products that are to be included as Royalty-Based Products and what the Royalty Rate will be in Schedule B prior to E for E providing any Design Content or other Intellectual Property relating to such product to Provo Craft.

3.7   Adding New Products.  New Royalty-Based Products shall be added to Schedule B within a reasonable time, not to exceed thirty (30) days after the product's first shipment.  For new Royalty-Based Products that are to be added to Schedule B, Provo Craft must promptly notify E for E in writing (including e-mail) when any such new Royalty-Based Product is released and what the applicable Royalty Rate is.  The notification sent by Provo Craft will constitute the amendment to add the new Royalty-Based Product to Schedule B, and the amendment will be effective retroactive to the first shipment of the added product.

3.8   Bundled Products.  The Net Sales Price to which the Royalty Rate applies may be prorated for Royalty-Based Products that are packaged together with or combined with other products (**"Bundled Product"**).  The prorated share of the Net Sales Price shall be equal to the wholesale, retail list price, or cost (whichever was used to determine the sales price of the Bundled Product) of the Royalty-Based Product(s) when sold alone as compared to the wholesale, retail list price or cost of the Bundled Product.

3.9   Royalty Payments and Late Payment Fee.  Royalty payments due hereunder shall be made on a quarterly basis, no later than ten (10) days following the end of the calendar quarter, unless a different payment schedule is mutually agreed to by the Parties in writing.  Payments are due January 10, April 10, July 10, and October 10.  E for E may charge Provo Craft interest on any late Royalty payment computed on a daily basis for each day that the payment is delinquent at a rate of the current prime interest rate (as published by the Federal Reserve Bank) plus two percent (2%) per year.  Any payment that is due on a weekend or a holiday will not be considered late if it is made on the next business day following the weekend or holiday.  Additionally, a delay of up to five (5) days will be excused if it results from a Force Majeure event.

*TANNER CONSULTING SF#32B89D.doc*

## ARTICLE 4 – RECORDS AND AUDIT

4.1   <u>Books and Records</u>.  Provo Craft agrees to keep complete and accurate books of account and records covering all transaction relating to the Consulting Fees and Royalties due hereunder throughout the Term of this Agreement, for at least four (4) years following the period to which the records relate.

4.2   <u>Royalty and Consulting Fee Statements</u>.  Provo Craft shall furnish E for E with a monthly statement along with monthly payment of Consulting Fees due hereunder based upon Net Sales Price, and with a quarterly statement along with quarterly payment of Royalties due hereunder.  Provo Craft shall also provide a detail of any Royalty-Based Products sold at or below Provo Craft's cost, or as part of a Bundled Product for which the Royalty or Consulting Fee has been prorated and/or any offset of Consulting Fees has been taken pursuant to **Section 2.5  ("Delay in Payment or Offset")** above.

4.3   <u>Objections to Royalty or Consulting Fee Statements</u>.  E for E shall have the right to object to any Royalty or Consulting Fee statement or payment hereunder as long as E for E provides to Provo Craft written notice of same including the nature of and grounds for such objection within thirty (30) days after E for E's receipt of the relevant statement or payment.  The Parties will negotiate in good faith to resolve any of E for E's objections. However, E for E's failure to object does not affect E for E 's right to conduct an audit or receive additional amounts as a result of an audit.

4.4   <u>Audit Rights</u>.  Provo Craft agrees that E for E may, at its discretion and expense upon ten (10) days' prior notice to Provo Craft, during normal business hours, but not more than once every six (6) months, inspect and audit Provo Craft's books and records pertaining to the payments made to E for E under this Agreement in order to verify the accuracy of such payments.  Such audits will be performed on E for E's behalf only by an independent third party accountant from a reputable accounting firm (the **"Auditor"**). The Auditor must execute a nondisclosure agreement reasonably acceptable to Provo Craft with regard to all materials inspected by the Auditor.  The Auditor shall report to E for E whether or not the amounts due hereunder were underpaid or overpaid and if so, the amount of such discrepancy.  If amounts are found to be underpaid or overpaid, the Auditor shall also provide E for E with sufficient documentation and information to substantiate such underpayment or overpayment.  The Auditor shall provide to Provo Craft the full details of such audit.  Provo Craft agrees to cooperate with E for E and the Auditor in conducting such audits, including (but not limited to) providing access to Provo Craft's relevant books and records.  Should the Auditor discover any underpayment or over-payment, the Parties shall make appropriate adjustments. Provo Craft shall pay E for E interest on any shortfall accruing from the time of such shortfall at the rate stated in **Sections 2.15 ("Consulting Fee Payments and Late Payment Fee") and 3.9 ("Royalty Payments and Late Payment Fee")**.  In addition, if an audit discloses a shortfall of more than ten percent (10%) of the amount owed for any audited period, Provo Craft shall reimburse E for E for the reasonable costs of such audit.

## ARTICLE 5 – ASSIGNMENT OF INTELLECTUAL PROPERTY RIGHTS AND ENFORCEMENT

5.1   <u>Assignment to Provo Craft</u>.  E for E acknowledges and agrees that Provo Craft shall be the owner of all right, title and interest in and to the Royalty-Based Products and Design Content provided by E for E, and any other product or Intellectual Property Right resulting from the Consulting Services, including, but not limited to, all Intellectual Property Rights therein.  E for E agrees to and hereby irrevocably assigns, sells, transfers, grants and conveys all of its worldwide right, title and interest in and to any artwork, improvements or contributions to the Royalty-Based Products and from the moment of creation to Provo Craft, its successors and assigns (without the necessity of any further consideration or action on the part of Provo Craft or E for E other than payment by Provo Craft of the

Royalties and Consulting Fees as required by this Agreement), including, but not limited to, all Intellectual Property Rights therein, for perpetuity (or for the longest period of time otherwise permitted by law).  Tanner and E for E irrevocably agree not to assert against Provo Craft or its successors or licensees any claim of any Intellectual Property Rights or Moral Rights of Tanner or E for E relating to the Design Content or other provided materials resulting from the Consulting Services.  *For avoidance of doubt*, this provision applies to Tanner the individual.

7.2    Further Assurances; Power of Attorney.  Tanner without reservation hereby binds herself, her successors, assigns and legal representatives, and E for E hereby binds itself, its successors, assigns and legal representatives, to cooperate fully and promptly with Provo Craft and to do all acts necessary or required to be done or requested by Provo Craft in order to perfect title to all Intellectual Property Rights in the Royalty-Based Products, or as a result of any of the Consulting Services therein in Provo Craft and in connection with the maintenance, enforcement or defense of such Intellectual Property Rights and all other proceedings before the United States Patent and Trademark Office ("PTO"), the United States Copyright Office and similar foreign offices without the necessity of further consideration from Provo Craft but at Provo Craft's expense, including, without limitation, to execute and deliver to Provo Craft any and all lawful application documents including petitions, specifications, oaths, assignments, disclaimers and lawful affidavits in form and substance as may be requested by Provo Craft (including but not limited to copyright, trademark and patent assignments) to communicate to Provo Craft all facts known to it relating to any copyright subject matter, trade secrets and inventions, to furnish Provo Craft with any and all information, documents, materials or records of any kind (and in any media) in its control that may be useful for establishing the facts of conceptions, disclosures, and reduction to practice and the like; to testify in, and assist in Provo Craft's preparation for, all legal, administrative or other proceedings (including without limitation in connection with the reissue application and any reexamination, interference or other proceeding before the PTO or Copyright Office); to sign, execute and deliver all lawful papers when called upon to do so that may be necessary or desirable in connection with the foregoing; and generally to do everything reasonably possible to aid Provo Craft in connection with the foregoing in the United States and other countries.  Tanner agrees that if Provo Craft is unable, because of Tanner's unavailability, mental or physical incapacity, or for any other reason, to secure Tanner's signature on any document mentioned above in this Section, then Tanner hereby irrevocably designates and appoints Provo Craft and its duly authorized officers and agents as Tanner's agent and attorney-in-fact, to act for and in Tanner's behalf and stead to execute and file any such applications and to do all other lawfully permitted acts to further the prosecution and issuance of such patents and copyright registrations, with the same legal force and effect as if executed by Tanner.  This appointment is coupled with an interest (which means that it shall remain in effect even after Tanner becomes incapacitated or dies).  *For avoidance of doubt*, this provision applies to Tanner the individual.

## ARTICLE 6 – CONFIDENTIALITY; NON-COMPETITION; RELATIONSHIP OF THE PARTIES; AND INTELLECTUAL PROPERTY INFRINGEMENT INDEMNITY

6.1    Confidentiality.

(a)    *Obligation of Confidentiality*.  Each Party as Recipient agrees that for the longer of the duration of this Agreement or a period of three (3) years from receipt of Confidential Information from the other Party as Discloser hereunder, Recipient shall use the same degree of care that it utilizes to protect its own information of a similar nature, but in any event not less than reasonable care, to prevent the unauthorized use or the disclosure of such Confidential Information to third parties.  The Confidential Information shall be disclosed only to employees and consultants of a Recipient with a "need to know" who are instructed to and agree in writing not to disclose the Confidential

*TANNER CONSULTING SE#32B89D.doc*

Information.  Each Party and each of its employees or consultants to whom disclosure is made shall hold all Confidential Information in confidence, and shall not disclose such information to any third party or apply it to uses other than the recipient's performance of this Agreement.

(b)    _Ownership of Confidential Information_.  All Confidential Information is, and shall remain, the property of the Discloser.  Nothing herein shall be construed as granting or conferring any rights by license or otherwise in the Confidential Information except as expressly provided herein.  The mingling of the Confidential Information with information of the Recipient shall not affect the confidential nature or ownership of the same as stated hereunder.  Recipient acquires hereunder only a limited right to use the Confidential Information solely for the purpose of performing its obligations under this Agreement.

(c)    _Exceptions to Obligation of Confidentiality_.  This Agreement shall impose no obligation of confidentiality upon a Recipient with respect to any portion of the Confidential Information received hereunder which:

   (i)  is now or hereafter becomes, through no act or failure to act on Recipient's part, generally known or available;

   (ii)  is lawfully known to Recipient without an obligation of confidentiality at the time Recipient receives the same from Discloser, as evidenced by written records;

   (iii)  is hereafter lawfully furnished to Recipient by a third party without restriction on disclosure;

   (iv)  is furnished to others by Discloser without restriction on disclosure; or

   (v)  is independently developed by Recipient without use of the discloser's Confidential Information.

Notwithstanding anything to the contrary in this Agreement, in the event that any Confidential Information is included in or made part of a patent application, the confidentiality and nondisclosure obligations set forth herein with respect to such Confidential Information shall remain in effect in the United States or a foreign jurisdiction, as warranted, until each such aspect of the Confidential Information is disclosed in an issued patent or published by a government patent office.

Nothing in this Agreement shall prevent Recipient from disclosing Confidential Information to the extent Recipient is legally compelled to do so by any court or governmental investigative, judicial, or regulatory agency pursuant to proceedings over which such court or agency has jurisdiction; provided, however, that prior to any such disclosure, Recipient shall:

   (i)  assert the confidential nature of the Confidential Information to the court or agency;

   (ii)  immediately notify Discloser in writing of the court's or agency's order or request to disclose; and

   (iii)  cooperate fully with Discloser, at Discloser's expense, in protecting against any such disclosure and/or obtaining a protective order narrowing the scope of the compelled disclosure and protecting the confidentiality of the Confidential Information.

_TANNER CONSULTING SE#32B89D.doc_

(d)     *Return of Confidential Information.* Upon the written request of Discloser, or upon the expiration or any earlier termination of this Agreement, Recipient shall promptly return all copies of the Confidential Information, in whatever form or media, to Discloser or, at the direction of discloser, destroy the same, and delete all of the discloser's Confidential Information from its computers. Recipient shall certify in writing to the discloser such return or destruction within ten (10) days thereafter.

6.2     <u>Limited Use of Confidential Information.</u>  Nothing in this Agreement or Provo Craft's disclosure of the Confidential Information shall be deemed, by implication or otherwise, to grant E for E any licensed interest or property right in, under or to any of the Confidential Information or Intellectual Property. E for E acknowledges and agrees that E for E has no right to and shall not (a) commercially exploit the Provo Craft Confidential Information or Intellectual Property Rights therein except as required to perform the Consulting Services and as expressly authorized by Provo Craft, (b) prepare derivative works of any part of the Provo Craft Confidential Information or Intellectual Property Rights therein, except as required to perform the Consulting Services and as expressly authorized by Provo Craft, (c) grant third parties any rights in the Provo Craft Confidential Information, (e) claim, apply for or obtain Intellectual Property Rights in the Provo Craft Confidential Information, or (f) contest (or assist others in contesting) Provo Craft's right to secure or maintain Provo Craft's Intellectual Property Rights hereunder.

6.3     <u>Agreement Confidential.</u>  Neither Party shall disclose the terms or conditions of this Agreement without the prior written consent of the other Party, except (i) as may be required by law and (ii) to its attorneys, accountants, and other professional advisors, and to investors or potential investors who are under an obligation of confidentiality at least as restrictive as that contained in Sections 6.1 and 6.2.

6.4     <u>Non-Compete.</u>  During the Consulting Term (defined in **Section 7.2 "Term for Consulting Services"**) and for the period of ninety (90) days thereafter, during which Provo Craft is required by **Section 7.4 ("Termination of Consulting Services for Convenience")** to continue to pay the Consulting Fee, neither E for E nor Tanner the individual shall compete directly or indirectly with Provo Craft with products similar to the Royalty-Based Products, cause or encourage any third party to compete directly or indirectly with Provo Craft with products similar to the Royalty-Based Products, work for any competitor of Provo Craft that designs, manufactures, distributes or sells products similar to the Royalty-Based Products, or provide any of the Consulting Services for any other entity or third party that manufactures, distributes, sells or designs products similar to the Royalty-Based Products without the express written consent of Provo Craft. So long as E for E is receiving a Royalty of at least one hundred thousand dollars ($100,000) during each twelve-month period commencing upon the completion of the 90-day period described above, the Royalty being based upon the sale of CRICUT-branded electronic cutting machines, CRICUT-branded cutting cartridges for use with CRICUT-branded electronic cutting machines, CUTTLEBUG-branded die cast dies, and/or CUTTLEBUG-branded plastic embossing folders (collectively the **"Non-Compete Products"**), neither E for E nor Tanner the individual shall compete directly or indirectly with Provo Craft with products similar to the Non-Compete Products, cause or encourage any third party to compete directly or indirectly with Provo Craft with products similar to the Non-Compete Products, work for any competitor of Provo Craft that designs, manufactures, distributes or sells products similar to the Non-Compete Products, or provide any of the Consulting Services for any other entity or third party that manufactures, distributes, sells or designs products similar to the Non-Compete Products, without the express written consent of Provo Craft.

6.5     <u>Warranties of E for E.</u>

*TANNER CONSULTING SE#32R89D.doc*

6.5.1   E for E warrants and certifies that E for E has no outstanding agreement or obligation that is in conflict with any of the provisions of this Agreement, or that would preclude E for E from complying with the provisions hereof, and warrants that E for E will not enter into any such conflicting agreement during the Consulting Term (defined in **Section 7.2 "Term for Consulting Services")**.

6.5.2   E for E warrants and certifies that it shall not knowingly provide any Design Content that is a violation of any Intellectual Property Right of any third party.

6.5.2   E for E warrants and certifies that it shall take all reasonable measures to ensure that any Design Content provided by E for E does not violate the Intellectual Property Rights of any third party.

6.6   Intellectual Property Infringement Defense.

(a)   *E for E Obligations*.  In the event that any action, proceeding or claim of any nature is asserted against Provo Craft alleging that the Design Content (or any part thereof) created by E for E and provided to Provo Craft hereunder infringes any copyright, trademark, trade dress or patent of any third party, or misappropriates any trade secret of any third party (hereinafter singularly or collectively a **"Claim"**), E for E shall, at its own expense, defend or settle such Claim, and shall pay the final judgment awarded therein against Provo Craft by a court or agreed upon in settlement by E for E. For avoidance of doubt, this provision does not apply to Design Content created by any third-party artists or designers.  For this indemnity to apply, Provo Craft must (i) give E for E immediate notice in writing of any such Claim or threat thereof; (ii) give E for E sole control and full authority to defend and/or settle such Claim, using counsel of E for E's choice, subject to Provo Craft's approval of any settlement, which may not be unreasonably withheld or delayed; and (iii) give E for E all the needed information and assistance, at E for E's expense, to enable E for E to defend or settle such Claim.

(b)   *Exclusions*.  Paragraph 6.6(a) shall not apply to and E for E shall have no liability or obligation for any infringement arising from: (i) any modification or addition made to the Design Content by anyone other than E for E; (ii) the use of such Design Content as a part of or in combination with any devices, parts or Design Content not provided by E for E; (iii) compliance with Provo Craft's design requirements or specifications (only patent infringement is excluded); (iv) the use of other than the then current unaltered release of the Design Content available from E for E; or (v) Provo Craft's use of the Design Content after notice from E for E that Provo Craft should cease use of the Design Content due to a Claim. The above exclusions only apply to the extent that the infringement would have been avoided but for such modifications, combinations, compliance with specifications, or use of other than the current release.

(c)   *E for E Solutions*.  In the event the use or distribution of any Design Content provided by E for E is enjoined, or if E for E or Provo Craft has a reasonable basis for believing that such a Claim is likely to be asserted, E for E will assist Provo Craft in (a) procuring a license for Provo Craft to provide Provo Craft with a right to exercise all rights with respect to the Design Content that were granted or intended to be granted to Provo Craft hereunder and that are otherwise impaired by the Claim and/or (b) replacing the Design Content with similar, non-infringing Design Content, or (c) modifying the Design Content so that it does not infringe or otherwise violate any Intellectual Property Right of any third party.

(d)   Provo Craft Obligations. Provo Craft shall, at its own expense, defend or settle any suit or proceeding that is instituted against E for E to the extent such suit or proceeding (i) alleges that any Design Content that has been modified by Provo Craft or by a third party (excluding the Design Content itself) infringes any patent, trademark or

*TANNER CONSULTING SE#32B89D.doc*



copyright, or includes any misappropriated trade secret; (ii) alleges that the Design Content infringes any patent, trademark or copyright, or includes any misappropriated trade secret as a result of: (a) Provo Craft's use of the Design Content as a part of or in combination with any devices, parts or Design Content not provided by E for E; (b) E for E's compliance with Provo Craft's design requirements or specifications (limited to responsibility for patent infringement); (c) Provo Craft's use of other than the then current unaltered release of the Design Content available from E for E; or (iii) results from Provo Craft's continued use of the Design Content after being instructed to stop using it (each a **"Claim"**; and shall pay the final judgment awarded therein against E for E by a court or agreed upon in settlement by Provo Craft. For this indemnity to apply E for E must (x) give Provo Craft immediate notice in writing of any such Claim or threat thereof; (y) give Provo Craft sole control and authority to defend and/or settle such Claim, using counsel of Provo Craft' choice, subject to E for E's approval of any settlement, which may not be unreasonably withheld or delayed; and (z) give Provo Craft all the needed information and assistance, at Provo Craft's expense, to enable Provo Craft to defend or settle such Claim.

(e) _Sole Remedy._ THIS SECTION 6.6 STATES E FOR E'S TOTAL RESPONSIBILITY AND LIABILITY, AND PROVO CRAFT'S SOLE REMEDY, FOR ANY ACTUAL OR ALLEGED INFRINGEMENT OR MISAPPROPRIATION OF ANY INTELLECTUAL PROPERTY RIGHT BY ANY DESIGN CONTENT DELIVERED HEREUNDER; AND STATES PROVO CRAFT'S TOTAL RESPONSIBILITY AND LIABILITY, AND E FOR E'S SOLE REMEDY, FOR ANY ACTUAL OR ALLEGED INFRINGEMENT OR MISAPPROPRIATION OF ANY INTELLECTUAL PROPERTY RIGHT BY ANY MODIFIED DESIGN CONTENT; AND IS IN LIEU OF AND REPLACES ANY AND ALL OTHER EXPRESS, IMPLIED OR STATUTORY WARRANTIES, TERMS, OR CONDITIONS REGARDING INFRINGEMENT AND MISAPPROPRIATION.

6.7 Relationship of the Parties. Nothing in this Agreement shall be deemed, by implication or otherwise, to form an affiliation, association or other connection between Provo Craft and E for E beyond the scope of the Consulting Services or grant E for E any authority beyond that necessary to perform the Consulting Services. E for E shall not take any action or make any statement, oral or written, that would cause or appear to create such an affiliation, association, or other connection between Provo Craft and E for E or appear to grant such authority without the express written consent of Provo Craft and shall in all instances deny the same.

## ARTICLE 7 – TERM AND TERMINATION

7.1 Term for Royalties. This Agreement shall become effective on the Effective Date and the Royalty payments portion of this Agreement shall remain in effect perpetually for so long as Provo Craft, or any successor in interest to or assignee of, Provo Craft sells any of the Royalty-Based Products set forth in any Schedule B or any of the other products listed in **Section 3.3 ("Covered Products")**. Termination of the Consulting Services portion of this Agreement shall not affect Provo Craft's obligation to continue to pay E for E established Royalties for Royalty-Based Products set forth in any Schedule B or any of the other products listed in **Section 3.3 ("Covered Products")**, for so long as Provo Craft or any successor, assignee, or licensee sells any such Royalty-Based Products (the **"Term"**). However, the Royalty on the Sizzix product line applies only to those Sizzix-branded products that are sold by Provo Craft itself.

7.3 Term for Consulting Services. The Consulting Services portion of this Agreement will remain in effect until terminated as provided below, except that it will expire automatically if no Consulting Services have been performed and no Consulting Fees have been paid under any Schedule A for twelve (12) consecutive months. The duration of the Consulting Services portion of this Agreement is the **"Consulting Term"**.

TANNER CONSULTING SE#32R89D.doc

7.4    <u>Termination of Consulting Services for Cause</u>.  Either Party shall have the right to terminate the Consulting Services portion of this Agreement, either in its entirety or only with relation to a particular product line, in the event that the other Party commits a material breach of any provision of this Agreement which is not cured within thirty (30) days after receipt of written notice from the non-breaching Party.  A material breach by E for E of its Consulting Services obligations that is not cured to the reasonable satisfaction of Provo Craft shall relieve Provo Craft of its obligation to pay non-accrued Consulting Fees for the product line(s) to which the breach applies.

7.5    <u>Termination of Consulting Services for Convenience</u>.  Provo Craft or E for E may terminate the Consulting Services portion of this Agreement for any reason by giving the other Party thirty (30) days advanced written notice.  Upon termination of the Consulting Services by Provo Craft for convenience, Provo Craft shall continue to pay the Consulting Fees for a period of ninety (90) days, after which Provo Craft shall be relieved of its obligation to pay non-accrued Consulting Fees.  In the event of termination of the Consulting Services by Provo Craft for convenience, E for E shall provide to Provo Craft a list of products for which Consulting Services hereunder have already been performed. Should Provo Craft sell any of the products identified on the list that have been previously agreed to in writing by the parties as being eligible for a Consulting Fee, Provo Craft shall pay a Consulting Fee for the sale of any such products for a period of one (1) year beginning with the date of first shipment of any such product.

7.6    <u>Obligations Upon Expiration or Termination</u>.  Upon expiration or termination of Consulting Services related to a particular product line, Provo Craft shall be obliged to pay E for E all unpaid and pre-approved (if approval was required) Consulting Expenses owing to E for E for Consulting Services satisfactorily performed in accordance with the provisions of **Section 2.15 ("Consulting Fee Payments and Late Payment Fee")** hereof. Payment for partial completion of any project for which there is a fixed project fee will be based upon E for E's pre-approved hourly rate for hours actually worked or the percentage of the project satisfactorily completed.  Termination of the Consulting Services portion of this Agreement shall in no way prevent or encumber Provo Craft's right to continue or begin to manufacture, distribute and/or sell the Royalty-Based Products.

7.7    <u>Survival</u>.  The following provisions of this Agreement shall survive expiration or termination of this Agreement and continue indefinitely thereafter (unless an earlier termination is stated within a particular provision):  Article 1 "Definitions"; Section 2.15 "Consulting Fee Payments and Late Payment Fee" (survives for the period of time stated in Section 7.4 "Termination of Consulting Services for Convenience"), Article 3 "Royalties"; Article 4 "Records and Audit"; Article 5 "Assignment of Intellectual Property Rights and Enforcement", Article 6 "Confidentiality; Non-Competition; Relationship of the Parties; and Intellectual Property Infringement Indemnity"; Section 7.1 "Term for Royalties"; Section 7.4 "Termination of Consulting Services for Convenience", Section 7.5 "Obligations Upon Expiration or Termination"; 7.6 "Survival"; Article 8 "Limitation of Liability"; and Article 9 "General Provisions".

ARTICLE 8 – LIMITATION OF LIABILITY

8.1    <u>NO NON-DIRECT DAMAGES</u>.  EXCEPT FOR DAMAGES RESULTING FROM A BREACH OF **SECTIONS 6.1, 6.2, 6.3, 6.4 OR 6.5** (DEALING WITH CONFIDENTIALITY, NON-COMPETITION AND WARRANTY), AND EXCEPT FOR EACH PARTY'S OBLIGATIONS UNDER **SECTION 6.6** ("INTELLECTUAL PROPERTY INFRINGEMENT DEFENSE"), TO THE FULL EXTENT ALLOWED BY LAW THE PARTIES EXCLUDE ANY LIABILITY, WHETHER BASED IN CONTRACT, TORT (INCLUDING NEGLIGENCE), OR ANY OTHER LEGAL THEORY, FOR INCIDENTAL, CONSEQUENTIAL, INDIRECT, SPECIAL OR PUNITIVE DAMAGES OF ANY KIND, OR

*TANNER CONSULTING SE#32R89D.doc*

FOR LOSS OF REVENUE OR PROFITS, LOSS OF BUSINESS, LOSS OF INFORMATION OR DATA, OR ANY DAMAGES THAT ARE NOT DIRECT, ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT OR THE PERFORMANCE OR BREACH HEREOF, EVEN IF THE PARTY HAS BEEN ADVISED OF THE POSSIBILITY THEREOF.

## ARTICLE 9 – GENERAL PROVISIONS

9.1    <u>Severability</u>.  To the extent that any provision of this Agreement is determined to be invalid, illegal or unenforceable, a modified provision shall be substituted which carries out as nearly as possible the original intent of the Parties and the remainder of the Agreement shall remain binding upon the Parties.  The invalidity or unenforceability of any provision hereof shall not affect the validity or enforceability of any other provision.

9.2    <u>References to Sections and Schedules</u>.  All references to particular Articles and Sections are to Articles or Sections contained in this Agreement, and all references to particular Schedules are to Schedules currently attached to this Agreement, or to Schedules that become a part of this Agreement in the future by written agreement of the Parties.

9.3    <u>Headings</u>.  The captions in this Agreement are inserted for convenience of reference only and shall not modify or limit any of the terms thereof or be used in its construction or interpretation.

9.4    <u>Entire Agreement; Order of Precedence; Amendment</u>.  This Agreement constitutes the entire understanding between the Parties concerning the subject matter hereof and supersedes any prior agreements or understandings whether written or oral regarding this subject matter.  This Agreement supersedes and replaces the 2005 Consulting Agreement as of the Effective Date, except that some Royalty Rates and Consulting Fee Rates will have an earlier effective date if so specified in the applicable Schedule B or Schedule C.  In the event of any conflict between the front part of this Agreement (*i.e.*, Articles 1 through 9) and a Schedule, the provisions of the front part of this Agreement will prevail unless the Schedule expressly states that it shall prevail over a particular provision.  This Agreement may not be amended except in a writing executed by both Parties.

9.5    <u>Dispute Resolution and Arbitration</u>.

(a)    *Negotiation*.  The Parties agree that every dispute or difference between them, arising under this Agreement, shall be addressed first by a meeting of the Parties to confer and attempt to resolve the dispute or difference in a good faith manner.

(b)    *Mediation*.  If the Parties cannot resolve their dispute after conferring, either Party may require the other Party to submit the matter to nonbinding mediation to take place in Salt Lake City, Utah, utilizing the services of an impartial, professional mediator approved by the Parties, within thirty (30) days after written notice by one Party to the other demanding non-binding mediation.  Neither Party may unreasonably withhold consent to the selection of a mediator or the location of the mediation.  Both Parties will equally share the mediator's fee and any administrative fee, but each Party shall bear its own costs and expenses, including attorney's fees, witness fees, travel expenses, and preparation costs.  Discussions and correspondence relating to trying to resolve such dispute shall be treated as confidential information developed for the purpose of settlement and shall be exempt from discovery or production and shall not be admissible in subsequent mediation, other alternate dispute resolution ("ADR"), or litigation.

TANNER CONSULTING SE#32B89D.doc



(c)    _Arbitration_.  Should mediation fail to resolve such a dispute, the Parties shall submit the dispute to arbitration by one arbitrator under the auspices of the American Arbitration Association (AAA) and in accordance with the Commercial Arbitration Rules of the American Arbitration Association then in effect, unless the Parties mutually agree otherwise in writing.  Notice of demand for arbitration shall be filed in writing with the other Party to this Agreement and with the American Arbitration Association.  Such arbitration shall take place in Salt Lake City, Utah.  The power of the arbitrator shall not exceed that possessed by a judge of a trial court of general jurisdiction in the State of Utah.  The arbitrator shall issue a written opinion in support of his or her decision, stating the legal and factual basis for the decision and the reasoning leading to such decision. The arbitrator is prohibited from awarding damages or remedies in excess of those allowed by the provisions of this Agreement.  The award shall be deemed to be made in the State of Utah.  The award rendered by the arbitrator shall be binding and final upon the Parties with no right to appeal, except under any of the following circumstances: (i) the award was procured by corruption, fraud or other undue means; (ii) the rights of a Party were substantially prejudiced by misconduct of a neutral arbitrator; (iii) the arbitrator exceeded his or her powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted; (iv) the rights of a Party were substantially prejudiced by the refusal of the arbitrator to postpone the hearing upon sufficient cause being shown therefor or by the refusal of the arbitrator to hear evidence material to the controversy or by other misconduct of the arbitrator; or (v)  the arbitrator making the award failed to disclose a ground for disqualification of which the arbitrator was then aware.  Judgment on the award may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.  Both Parties will equally share the arbitrator's fee and the AAA administrative fee, but each Party shall bear its own costs and expenses, including attorney's fees, witness fees, travel expenses, and preparation costs.

Except by written consent of the person or entity to be joined, no arbitration arising out of or related to the Agreement shall include, by consolidation, joinder or in any other manner, any person or entity not a Party to this Agreement under which such arbitration arises, unless it is shown at the time the demand for arbitration is filed that (1) such person or entity is substantially involved in a common question of fact or law; (2) the presence of such person or entity is required if complete relief is to be accorded in the arbitration; and (3) the interest or responsibility of such a person or entity in the matter is not insubstantial.

(d)    _Exclusions_.  Notwithstanding the above requirements of negotiation, mediation, and arbitration, any dispute regarding the following is not required to be negotiated, mediated, or arbitrated: non-payment or late payment; breach of any obligation of confidentiality; infringement, misappropriation, or misuse of any Intellectual Property Right; any other claim where interim relief from the court is sought to prevent serious and irreparable injury to one of the Parties or to others.

9.6    Governing Law.  The Parties hereto agree that this Agreement shall be construed in accordance with, and all disputes hereunder shall be governed by, the laws of the State of Utah and E for E expressly agrees to be subject to personal jurisdiction in Utah.

9.7    Waiver.  Failure of either Party to enforce compliance with any provision of this Agreement shall not constitute a waiver of such provision unless accompanied by a clear written statement that such provision is waived.  A waiver by either Party hereto of any rights hereunder, for failure to perform or breach by the other Party hereto, shall not be deemed as a waiver of any other right hereunder or of any other breach or failure of such other Party hereto, whether of a similar or dissimilar nature thereto and shall not be deemed a continuing waiver of any breach or failure hereunder.

_TANNER CONSULTING SE#32B89D.doc_



9.8    Assignment.  This Agreement shall not be assigned by E for E without the prior written consent of Provo Craft. Provo Craft may assign its rights and obligations under this Agreement provided that the assignee agrees in writing to be bound by this Agreement. Any attempted assignment in violation of this provision shall be null and void.  From and after the making of any such assignment and delegation by the assignor, the assignee shall be substituted for the assignor as a Party hereto and the assignor shall no longer be bound hereby, except that the assignor shall remain bound by the obligation of confidentiality and shall remain liable for breaches occurring prior to assignment.  Subject to the foregoing, this Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective representatives, heirs, successors, and assigns.  All Royalties due and owing or that become due and owing hereunder after Tanner's death shall inure to the benefit of her heirs and will be payable to Tanner's heirs or to a trust established by Tanner, and will continue in perpetuity so long as any of the Royalty-Based Products are sold, in accordance with **Section 3.2 ("Duration of Royalty")**.

9.9    Force Majeure.  Except for the obligation to pay money, neither Party shall be liable to the other for its failure to perform any of its obligations hereunder during any period in which such performance is delayed by circumstances beyond its reasonable control including, but not limited to, fire, flood, earthquake, war, embargo, strike, riot, inability to secure materials and transportation facilities, or the intervention of any governmental authority.

9.10   Notices.  Notices shall be given in writing to the address stated immediately below, or to such other address as shall be given by either Party to the other in writing.  Any notice involving non-performance, termination, or renewal shall be personally delivered or sent by recognized overnight courier or by certified mail, return receipt requested.  All other notices may additionally be sent by fax or e-mail with an automatic confirmation of transmission by the transmitting machine.  All notices shall be deemed to have been given and received on the earlier of actual delivery (except that faxes and e-mails sent on a non-business day will be deemed received on the next business day) or three (3) days from the date of postmark.

**To Provo Craft:**

151 E. 3450 No.
Spanish Fork, UT 84660
Attn:  Jim Thornton

e-mail:  jimt@provocraft.com
Fax:    801-794-9006
Telephone:  801-794-9099

**To E for E:**

Enough for Everyone
214 West Avenida Cordoba
San Clemente, California 92672
Attn:  Desiree Tanner

e-mail:  DesireeTanner@cox.net
Fax:    (949) 388-9969
Telephone: (949) 388-9969

9.11   Counterparts.  This Agreement may be executed in two counterparts with the same effect as if both Parties hereto had signed the same document.  All counterparts will be construed together and will constitute one document.  A facsimile copy or photocopy of this Agreement, including the signature pages hereto, shall be deemed to be an original.

IN WITNESS WHEREOF, and intending to be legally bound hereby, the Parties have caused this Agreement to be duly executed on the date(s) shown below, to be effective as of the Effective Date written above.

Date:  _____          By:  Enough for Everyone, Inc.

*TANNER CONSULTING SE#32B89D.doc*

91

_Desiree Tanner, President_

Date: _September 1st, 2007_

By: Desiree Tanner

_Desiree Tanner (an individual)_

Date: _November 7, 2007_

By: Provo Craft and Novelty, Inc.

Its: _President & CEO_

## SCHEDULE A
### (Consulting Services)

<u>Policies and Procedure:</u>  E for E shall follow and maintain all Provo Craft policy and procedures of which E for E is informed in writing by Provo Craft.  E for E shall follow and control all Expense policy procedures of which E for E is informed in writing by Provo Craft.

<u>Training:</u>  E for E shall provide training services on an as-needed basis.  Such training services shall include, but not be limited to the training of in-house customer service personnel and sales representatives and key accounts whether in-house or at their place of business as required.

<u>Trade Shows</u>:  E for E shall attend and teach at specified trade shows from time-to-time as needed and mutually agreed to by the Parties.

<u>Product Development</u>:  E for E shall seek and discover new product opportunities for Provo Craft including, but not limited to, obtaining information regarding the relevant market, current trends and evolving trends and sourcing (including sourcing from other industries).  E for E shall assist in the development of any such new and original product ideas brought to Provo Craft by E for E.  New product ideas shall not include products or ideas created or developed independently by Provo Craft or any third party without the assistance or involvement of E for E.

<u>Recruiting, Selecting and Overseeing Artists and Designers</u>:

E for E shall:

    A.    Actively recruit new artists and designers at shows whom Provo Craft may wish to engage as the independent contractors of Provo Craft.  Notwithstanding the recruitment by E for E, these designers/artists who provide Design Content and/or other material under this Agreement will be the independent contractors of Provo Craft, and will not be independent contractors or employees of E for E unless otherwise agreed to in writing by the Parties.

    B.    Review artwork and designs that are submitted to Provo Craft.

    C.    Follow up with artists and designers who submit portfolios.

    D.    Set up meetings with artists and designers to review their artwork and determine a fit or program.

    E.    Sell artists and designers on product/concept so they will submit artwork.

    F.    Make requests or calls for art.

    G.    Select artists and designers to work on particular projects based on knowledge of artists' style, abilities and past efficiency.

    H.    Engage in regular phone or in-person contact with artists and designers while working on a project.

    I.    Work with artists and designers to modify artwork to fit product concept or customer requests.

    J.    Follow up with artists and designers to keep them updated on the status of their artwork and designs or projects they are working on.

    K.    Inform artists and designers if artwork or designs have been accepted for production.

    L.    Inform the Product Line Manager (PLM) the specific artwork, designs, artists and designers are approved for a product.

    M.    Continue to work with artists and designers as a product evolves.

    N.    Collect art work and developments from artists and designers.

    O.    Provide each artist and designer with a copy of the "Designer Agreement and Assignment" form (or other similar agreement) provided by  Provo Craft regarding non-disclosure, non-compete and royalty agreements, submit signed agreements to Provo Craft, and instruct the artists and designers to deal directly with Provo Craft if they have any comments, questions, or concerns about the agreement.

*TANNER CONSULTING SE#32R89D.doc*

P.    Work with PLM to make sure artists and designers get any required samples once the product is produced.

Working with Product Line Team:

A.    E for E shall work closely with PLM and Provo Craft Marketing Team to coordinate look and feel of packaging and samples. E for E shall work with PLM to establish acceptable pricing guidelines in the relevant market.

B.    E for E shall be an active member of product line team, including without limitation, prepare samples for meetings, prepare to present and educate about new products in viability and line extension meetings for sales or their customers at shows, etc., work with in-house designers to obtain project samples or prototypes, and help to prepare for kick-off meetings in conjunction with PLM.

Trade Shows:

A.    E for E shall submit and/or help evaluate Make 'n' Take Proposals, prepare demonstrations of product lines, and review and prepare product samples for displays at shows.

B.    Traveling to location of consumer shows and attending such consumer shows when necessary

Promotional Materials:

A.    E for E shall contribute to scripts for promotional television and video opportunities.

B.    E for E shall travel to location of promotional television and video opportunities and participate in such as needed.

Services related to CRICUT® and CUTTLEBUG® product lines:  In addition to and without limiting the foregoing, with specific reference to CRICUT® and CUTTLEBUG® product lines, E for E will provide the following Consulting Services:

A.    Develop programs
B.    Gather and assign new designs
C.    Rework existing designs
D.    Organize all designs and ensuring correct formatting
E.    Recruit new designers/artists whom Provo Craft may wish to engage as the independent contractors of Provo Craft. Notwithstanding the recruitment by E for E, these designers/artists who provide Design Content and/or other material under this Agreement will be the independent contractors of Provo Craft, and will not be independent contractors or employees of E for E unless otherwise agreed to in writing by the Parties
F.    Coordinate launch periods and content
G.    Coordinate all ideas, designs and communication with PLMs
H.    Convey to the artists and designers the initial Royalty information. Any subsequent changes must be communicated by Provo Craft to the artists and designers.
I.    Support sales staff with samples and teaching, selling and explaining programs.
J.    Scout, research and develop major trends in design
K.    Develop and "pitch" article concepts and editorial opportunities to major magazines
L.    Develop positive working relationships with other companies in the industry to cross-promote

*TANNER CONSULTING SE#32B89D.doc*

M.   Advise on packaging
N.   Follow-up on all designs from conception to quality control
O.   Travel as needed, (with actual costs to be reimbursed by Provo Craft)

**Hourly Rate:** Provo Craft shall pay E for E an hourly rate of $100 for providing Additional Consulting Services, which include (i) Consulting Services specified above in this Schedule A for a product line to which a Consulting Fee Rate does not apply; and (ii) Additional Consulting Services beyond the scope of what is stated above in this Schedule A; unless a different hourly rate is stated on a particular Schedule or is otherwise agreed to in writing by the Parties provided E for E receives written consent from an authorized representative of Provo Craft prior to performing such Additional Consulting Services.

**Expenses.** Provo Craft shall reimburse E for E for certain out-of-pocket expenses incurred by E for E in the course of performing Consulting Services pursuant to this Schedule A; provided E for E receives written consent from an authorized representative of Provo Craft prior to incurring such expenses. For certain expenses incurred while attending meetings at Provo Craft offices and while traveling on behalf of Provo Craft, such as lodging, meals and tips, car rental and gasoline (or mileage when a vehicle owned by Tanner or E for E is used), parking fees, and miscellaneous expenses incurred when traveling on Provo Craft business, E for E shall obtain a per diem amount from Provo Craft, regardless of the amount of such expenses actually incurred by E for E. *For avoidance of doubt,* airline tickets are not included in the per diem, and airline tickets for approved travel will be reimbursed at actual cost. The per diem amount must be no less than the per diem amount paid to Provo Craft employees traveling on company business for similar types of travel. Any such expenses that exceed the per diem will not be reimbursed by Provo Craft. In addition, E for E shall submit a written monthly budget to cover items such as shipping to Provo Craft; supplies used for product development; project supplies; other supplies used in the performance of Consulting Services; long distance telephone calls made in connection with the performance of Consulting Services and the pro-rata portion of other land-line telephone and mobile telephone charges incurred by E for E in connection with performing the Consulting Services. The budget must be pre-approved by an authorized representative of Provo Craft. At the end of each month, E for E shall submit to Provo Craft a monthly statement itemizing the actual cost of such expenses for reimbursement. Provo Craft shall reimburse E for E for such expenses not to exceed the amount set forth in the budget.

**Invoices:** On a monthly basis, E for E shall submit all invoices for Consulting Services to which an hourly rate applies and for Consulting Expenses in the manner reasonably prescribed by Provo Craft.

Date: _____

By: Enough for Everyone, Inc.

_____
Desiree Tanner, President

Date: November 7, 2007

By: Provo Craft and Novelty, Inc.

Its _____
President & CEO

**SCHEDULE B**
**(Royalty-Based Products and Royalty Rates)**

Date: _September 11, 2007_                    By: Enough for Everyone, Inc.

_____
Desiree Tanner, President

Date: _September 11, 2007_                    By: Desiree Tanner

_____
Desiree Tanner (an individual)

Date: _November 7, 2007_                      By: Provo Craft and Novelty, Inc.

_____
Its: _CEO & President_

## SCHEDULE C
### (Royalty-Based Products and Consulting Fee Rates)

Date: _September 11, 2007_

By: Enough for Everyone, Inc.

_____
Desiree Tanner, President

By: Desiree Tanner

Date: _September 11, '07_

_____
Desiree Tanner (an individual)

Date: _November 7, 2007_

By: Provo Craft and Novelty, Inc.

_____

Its: President & CEO
_____