Matthew L. Lalli (6105)
Jeremy J. Stewart (12247)
Sarah A. Hafen (16466)
**SNELL & WILMER L.L.P.**
15 West South Temple, Suite 1200
Salt Lake City, Utah 84101-1004
Telephone:  (801) 257-1900
Facsimile:  (801) 257-1800
mlalli@swlaw.com
jjstewart@swlaw.com
sahafen@swlaw.com

Paul J. Reilly (pro hac vice)
David Tobin (pro hac vice)
Susan Kennedy (pro hac vice)
**BAKER BOTTS L.L.P.**
2001 Ross Avenue, Suite 900
Dallas, Texas 75201-2980
Telephone: (214) 953-6869
Facsimile: (214) 661-4869
Paul.Reilly@BakerBotts.com
David.Tobin@BakerBotts.com
Susan.Kennedy@BakerBotts.com

*Attorneys for Plaintiff Cricut, Inc.*

---

**UNITED STATED DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| CRICUT, INC., A Delaware corporation, <br><br> Plaintiff, <br><br> v. <br><br> ENOUGH FOR EVERYONE, INC., a Nevada corporation, and DESIRÉE TANNER, an individual, <br><br> Defendants. | **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER VENUE TO THE UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA** <br><br> Case No. 2:21-cv-00601-DBB <br><br> Judge David Barlow |

Pursuant to Federal Rules of Civil Procedure 7 and 12(b)(3), Plaintiff Cricut, Inc. ("**Cricut**") respectfully submits its opposition to the *Motion to Transfer Venue to the United States District Court, Central District of California and Memorandum of Points and Authorities in Support* (the "**Motion**") filed by Defendants Enough for Everyone, Inc. ("**E for E**") and Desiree Tanner ("**Tanner**") (together with E for E, "**Defendants**").

## SUMMARY

Venue is proper in this state and Court for the most fundamental and compelling of reasons: the parties agreed to it. The 2005 Agreement at issue in this case states "that the ***venue for any litigation or dispute arising out of this Agreement shall be in Utah*** and that the Federal and State courts therein shall have jurisdiction over the subject matter and the parties." (2005 Agreement at § 9.2 (emphasis added).) The 2007 Agreement also at issue states that all disputes "**shall by governed by [] the laws of the State of Utah**" and "E for E **expressly agrees to be subject to personal jurisdiction in Utah**." (2007 Agreement at § 9.6 (emphases added).) So yes, Defendants are right that their Motion is about forum shopping, but it is forum shopping by the defense, not the plaintiff.

Nevertheless, with a barrage of irrelevant arguments about a different lawsuit in a different case, assertions of "deliberate bad faith," and unfounded accusations they only hope to be able to prove, Defendants ask the Court to transfer this case to the Central District of California, and even suggest which judge they would prefer adjudicate the dispute. Defendants are particularly focused on a decade-old lawsuit in a California court, arguing that the existence of that case compels transfer of this case to California. To the extent that case has any impact on this case, that is a matter of res judicata, issue preclusion, or claim preclusion, which this Court could consider if Defendants were to raise it appropriately, which Defendants have not done.

Even without Defendants' agreement to litigate disputes with Cricut in Utah, venue still is proper because a substantial part of the events underlying Cricut's claims indisputably

2

occurred in Utah. While Defendants focus solely on their own contacts with California, they cannot avoid the fact that Cricut is and has always been located in Utah, and that it negotiated, executed, and performed under the contracts in this state—not to mention Tanner's visits to Cricut's Utah office during the negotiation and performance of the contracts. Venue is proper because a substantial part of the events took place in this forum—even if some part of the events also took place in another forum. Despite Defendants' unduly impassioned plea to the contrary, the Motion to Transfer should be denied.

## STATEMENT OF RELEVANT FACTS

1.     Cricut is a Delaware corporation, with its principal place of business in Utah. (Compl. ¶ 1; Declaration of M. Peterson, attached as **Exhibit 1**, at ¶ 5.) Until March 2018, Cricut was incorporated in Utah as Provo Craft & Novelty, Inc. (Compl. ¶ 2.)

2.     E for E is a Nevada corporation, with its principal place of business in Nevada. (*Id*. ¶ 3.) E for E is a successor to Enough for Everyone, Inc., a California corporation. (*Id*. ¶ 4.)

3.     Tanner is an individual with residences in California and Nevada, and in her Motion asserts she is still a resident of California. (Opp. at 14.) She is the founder, sole shareholder, president, secretary, treasurer and sole director of E for E. (Compl. ¶¶ 5-6.)

4.     Tanner was a co-inventor of certain designs related to a Cricut electronic cutting machine and its related cartridges (the "Design Inventions"). (*Id*. ¶ 17.)

5.     Cricut and Tanner negotiated and ultimately signed a Consulting Agreement in February 2005 pursuant to which Tanner assigned her patent rights and Cricut agreed to pay royalties to Tanner. (*See* Consulting Agreement ("**2005 Agreement**"), attached as Ex. A to Compl.; Compl. ¶ 20.)

6.     Cricut negotiated, executed, and performed under the 2005 Agreement in Utah. (*See* Ex. 1 ¶ 7.)

7.  The 2005 Agreement has a forum selection clause, under which the parties agree "that the *venue for any litigation or dispute arising out of this Agreement shall be in Utah* and that the Federal and State courts therein shall have jurisdiction over the subject matter and the parties." (2005 Agreement at § 9.2 (emphasis added).)

8.  In 2007, Cricut, Tanner, and E for E entered into a Consulting Services and Royalty Agreement (*See* Consulting Services and Royalty Agreement ("2007 Agreement"), attached as Ex. B to Compl.; Compl. ¶ 43.) A key reason for amending the 2005 Agreement was that Tanner had formed Enough for Everyone, Inc., then a California corporation, to collect her patent royalties.  Accordingly, E for E also became a party to the 2007 Agreement. (Compl. ¶ 45.)

9.  Cricut negotiated, executed, and performed under the 2007 Agreement in Utah. (*See* Ex. 1 ¶ 7.)

10.  Tanner negotiated the 2007 Agreement with Cricut, individually and on behalf of E for E, by emailing and communicating with Cricut personnel in Utah and by traveling at least once to Cricut's Utah headquarters for a face to face negotiation with a Cricut employee regarding the terms of that agreement. (*See* Ex. 1 ¶ 8 and Ex. A thereto.)

11.  The 2007 Agreement expressly states that all disputes "**shall by governed by [] the laws of the State of Utah**" and "E for E **expressly agrees to be subject to personal jurisdiction in Utah**." (2007 Agreement at § 9.6 (emphases added).)

12.  Between 2005 and 2021, Cricut made payments for consulting fees and royalties to Tanner (under the 2005 Agreement) and E for E (under the 2007 Agreement). All payments were prepared in and sent from Cricut's Utah headquarters. (*See* Ex. 1 ¶ 9.)

13.  "For years prior to and at all times after the Agreement was signed, Ms. Tanner . . . interacted with Cricut employees"—in Utah—"largely by telephone calls and email communications." (Mot. at 8 and Tanner Decl. at ¶¶ 6–7.)

14.     During the course of her relationship with Cricut, and to perform her obligations under the Agreements, Tanner sometimes traveled to Cricut's Utah headquarters, including to participate in business meetings and board meetings. (*See* Ex. 1 ¶ 10 and Ex. B thereto.) In 2011, E for E sued Provo Craft & Novelty, Inc., Cricut's predecessor, in the U.S. District for the Central District of California, for unpaid royalties. (Compl. ¶ 58.)  At the time, Cricut (then Provo Craft & Novelty, Inc.) had ceased making payments under the 2007 Agreement because it was on the verge of insolvency and in deep financial distress. (*Id*. ¶¶ 56–57.)

15.     E for E obtained a judgment in the California court, and ultimately collected the full judgment amount with interest after Cricut underwent an out-of-court restructuring. (*Id*. ¶¶ 58–59.)

16.     Since the full payment of the judgment obtained by E for E, Cricut has made regular payments, including a payment with respect to the calendar quarter ending June 30, 2021, totaling millions of dollars. (*Id*. ¶ 61.)

17.     In this case, Cricut alleges that, since the time of that judgment in the prior case, Cricut has overpaid Defendants more than actually owed under the 2005 and 2007 Agreements. Specifically, Cricut alleges it erroneously included in its royalty calculation revenues from online subscriptions and downloads, which were not covered by the 2007 Agreement. (*Id*. ¶¶ 62–65.) Cricut further alleges that all Design Patents assigned by Tanner to Cricut pursuant to the 2005 and 2007 Agreements have expired, the last of which expired on May 29, 2021, and that Cricut should not have paid, and need not pay in the future, any royalties on revenues earned after the Design Patents expired. (*Id*. ¶¶ 66–76.)

## ARGUMENT

Defendants argue that venue is improper in this Court and ask the Court to transfer the case to the Central District of California pursuant to 28 U.S.C. § 1406(a). Despite Defendants' arguments, venue is proper in this District.

## I.   THE 2005 AGREEMENT MANDATES THIS VENUE, AND THE 2007 AGREEMENT MAKES THIS A PROPER VENUE.

The 2005 Agreement contains a forum-selection clause mandating venue in Utah. (*See* 2005 Agreement at § 9.2 ("[T]he venue for any litigation or dispute arising out of this Agreement shall be in Utah . . . .").) In their Motion, Defendants do not explain why this mandatory forum-selection clause should not control. In fact, Defendants conveniently fail to analyze the clause altogether. (Mot. at 14.) Despite Defendants' telling omission, the forum-selection clause controls here and is dispositive: venue in this forum is not only proper, it is required.

"[A] valid forum-selection clause should be given controlling weight in all but the most exceptional cases." *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Ct. for Western Dist. Of Tex.*, 571 U.S. 49, 63 (2013) (cleaned up). "This is because there is a strong presumption that the parties should litigate the matter in the forum selected in their contract." *Prima Alliance Bank, Inc. v. Leasing Innovations, Inc.*, No. 1:19-cv-142-DBB, 2020 WL 6801962, at *4 (D. Utah Nov. 19, 2020). In deciding whether to enforce a forum-selection clause, a court may consider only a limited set of factors such as the "local interest in having localized controversies decided at home;" the court may not consider the parties' preferences or their "private interests." *Id*. (quotation omitted). The party opposing enforcement must present evidence "that would undermine the 'strong presumption' of enforcing the parties' forum selection clause." *Id*.

The forum-selection clause in the 2005 Agreement is mandatory, as it states that litigation "arising out of" the Agreement "shall be in Utah."[1] *See Am. Soda, LLP v. U.S. Filter Wastewater*

---

[1] To avoid their agreement to litigate in this venue, Defendants may try to argue Cricut's claims do not arise out of the 2005 Agreement. That argument lacks merit and is undermined by the allegations in the Complaint that rely heavily on the 2005 Agreement. For example, a key issue in this case is Cricut's claim that the obligation to pay royalties terminated when the patents expired. The transfer of patent rights under the 2005 Agreement is of singular importance to this issue. Knowing that fact, Defendants try to push it aside by arguing "the Agreement is *not* a patent license agreement." (Mot. at 11.) But rights to patentable inventions (which matured into the patents cited in the Complaint) *were* transferred under the 2005 Agreement, making it significant in this case. Cricut's claims arise out of the 2005 Agreement and are subject to the mandatory forum-selection clause contained therein.

*Grp., Inc.*, 428 F.3d 921, 927 (10th Cir. 2005) ("[W]hen venue is specified, such as when the parties designate a particular county or tribunal, and the designation is accompanied by mandatory or obligatory language, a forum selection clause will be enforced as mandatory."). Cricut's claims arise out of both the 2005 and 2007 Agreements. (*See, e.g.*, Compl. ¶ 88 (claiming it would be inequitable for Defendants to retain overpayments "which were not required under the 2005 Agreement or the 2007 Agreement.").) And because Defendants have made no showing of "extraordinary circumstances" to overcome the strong presumption in favor of enforcing the mandatory forum-selection clause, Defendants' request to transfer venue out of this District—the parties' contractually selected forum—should be rejected out of hand.

The 2007 Agreement also contains provisions demonstrating the parties' intent to focus on Utah as the forum for disputes. The parties agreed that Utah would be the sole forum for mediation or arbitration, that the Agreement is governed by Utah law, and that E for E "expressly agrees to be subject to personal jurisdiction in Utah." (2007 Agreement at §§ 9.5, 9.6.) While these provisions, including the permissive forum-selection clause, do not *mandate* litigation in this Court, they plainly identify Utah as a *proper* forum. *Cf. Am. Soda, LLP*, 428 F.3d at 927 ("[P]ermissive forum selection clauses authorize jurisdiction in a designated forum, but do not prohibit litigation elsewhere.") (quotation omitted).

Therefore, venue is proper in this Court because the parties' Agreements that form the foundation of Cricut's claims mandate, and then identify, Utah as the proper venue.

## II.     VENUE ALSO IS PROPER UNDER SECTION 1391(B)(2).

Even setting aside the mandatory forum-selection clause in the 2005 Agreement (which designates Utah as the required venue) and the repeated and unique references to Utah in the 2007 Agreement (which, at a minimum, make Utah a proper venue), Defendants have not established that venue is improper in this Court under § 1391(b)(2). On the contrary, venue is

7

proper in this Court because a substantial part of the events giving rise to Cricut's claims occurred in Utah.

Venue is proper in any "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2).[2] A party seeking a transfer to another court bears the burden to show venue is improper. *See, e.g.*, *Stocking v. Simonovich*, No. 1:19-cv-21-JNP, 2020 WL 2736093, at *5 (D. Utah May 26, 2020) (finding the defendants did "not me[e]t their burden to establish that the suit should be transferred to [another] federal court."). When reviewing a challenge to venue under § 1391(b)(2), courts conduct a two-part analysis: "First, we examine the nature of the plaintiff's claims and the acts or omissions underlying those claims;" and "[s]econd, we determine whether substantial events material to those claims occurred in the forum district." *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1166 (10th Cir. 2010) (quotation omitted).[3] "The substantiality requirement is satisfied upon a showing of acts and omissions that have a close nexus to the alleged claims." *Id*. (quotation omitted). Importantly, under § 1391(b)(2), "venue is not limited to the district with the *most* substantial events or omissions." *Id*. at 1165 (emphasis in original). Rather, Section 1391(b)(2) "contemplates that venue can be appropriate in more than one district . . . [and] permits venue in multiple judicial districts as long as a substantial part of the underlying events took place in those districts." *Id*. at 1166 (alterations in original) (quotation omitted).

Applying *Bartile Roofs'* two-part analysis here, it is clear that venue is proper in this Court, just as the parties agreed in the 2005 and 2007 Agreements. Regarding the nature of

---

[2] Section 1391(b) contains two other avenues for establishing venue, neither of which is relevant here. The court need only find that a "substantial part of the events or omissions giving rise to the claim occurred" in Utah to find venue proper. *See Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. Of Tex.*, 571 U.S. 49, 56 (2013) ("When venue is challenged, the court must determine whether the case falls within one of the three categories set out in § 1391(b). If it does, venue is proper.").

[3] *Bartile Roofs* analyzed a prior version of the statute, 28 U.S.C. § 1391(a)(2). The statutory language is unchanged.

Cricut's claims, those claims all arise out of the 2005 and 2007 Agreements, which provide terms under which Tanner assigned patent rights and Cricut agreed to make certain royalty payments to Defendants. Cricut seeks declaratory judgment regarding its rights and obligations under those Agreements, *see* Compl. ¶¶ 77–85, and asserts claims for Unjust Enrichment, Money Had and Received, and Overpayment/Recoupment based on allegations that Defendants mistakenly were overpaid royalties, including on revenue received after all the patents expired, which Defendants were not entitled to receive under the Agreements and under the law. (*Id*. ¶¶ 86–108.)

Turning to the second part of the *Bartile Roofs* analysis, a substantial part of the underlying events material to Cricut's claims occurred in Utah, making venue proper in this District. Although E for E is a resident of Nevada, and Defendants assert that Tanner is a resident of California, Cricut's principal place of business is and always has been in Utah. (*Id*. ¶¶ 1–6; Ex. 1 ¶ 5.) Prior to March 2018, Cricut (then Provo Craft & Novelty) also was incorporated in Utah. (Compl. ¶ 2.) Cricut thus negotiated, executed, and performed under the Agreements from Utah. (Ex. 1 ¶ 7.) While Defendants focus solely on their own residence and location at the time of performance, they also acknowledge that "contract negotiations . . . took place almost entirely through phone calls and emails"—i.e., to and from Cricut in Utah—with "one in-person meeting in Utah." (Mot. at 14.) Tanner negotiated the 2007 Agreement with Cricut, individually and on behalf of E for E, by emailing and communicating with Cricut personnel in Utah and by traveling at least once to Cricut's Utah headquarters for a face to face negotiation with a Cricut employee regarding the terms of that agreement. (Ex. 1 ¶ 8.)

As for performance of the Agreements, Cricut has made payments under the Agreements to Defendants for well over a decade, and each payment was prepared in and sent from Utah. (Ex. 1 ¶ 9.) Tanner acknowledges that she performed work for Cricut "almost entirely remotely" but "interacted with Cricut personnel"—who were located in Utah—"by phone calls and through

email." Dkt. 24 ¶ 6–7. And the work she performed was knowingly for, and delivered to, a Utah company (Cricut) in Utah. Moreover, there can be no question that Cricut has alleged injury to its business in Utah totaling more than $1.3 million. (*See, e.g.*, Compl. ¶¶ 88, 89.) Defendants point to a single lunch in California with a Cricut investor, which lunch is irrelevant to the claims in this lawsuit, as supporting venue in California. (*See* Dkt. 24 ¶¶ 10–11.) At most this contact suggests venue *also* may be proper in California, but it does not undermine proper venue in this Court. On the contrary, it is beyond dispute that a "substantial part of the underlying events" took place in Utah and that venue in this Court is, therefore, proper.

Furthermore, courts find venue proper under § 1391(b)(2) where, as here, "all terms of the business relationship and contracts between [the parties] were negotiated via email, text message, or phone call with [the plaintiff] while he was in the State of Utah." *Stocking v. Simonovich*, No. 1:19-cv-21JNP, 2020 WL 2736093, at *1, 5 (D. Utah May 26, 2020); *see also CITGO Petroleum Corp. v. Wilburn Oil Co.*, 2009 WL 10687965, at *6 (N.D. Okla. Apr. 28, 2009) ("[T]he simple transmittal of letters, facsimiles, e-mails, and telephone calls to a forum during either negotiation and/or execution of a contract are considered to be substantial enough events for the purposes of venue."). Cricut's presence in Utah throughout the negotiation, execution, and performance of the Agreements establishes the necessary tie to the venue, and Tanner's multiple visits to Cricut's Utah headquarters—including during contract negotiations—also are significant. *See, e.g.*, *Advisors Excel, LLC v. Zagula Kaye Consulting, LLC*, 2015 WL 11089657, at *3 (D. Kan. Feb. 20, 2015) (finding a substantial part of the events occurred in Kansas where the plaintiff negotiated the contract from Kansas, defendants communicated with the Kansas plaintiff by phone and email, the plaintiff prepared and mailed payments from Kansas, and the defendant made two trips to Kansas which were "part of the business

relationship" between the parties).[4] That Cricut is a Utah business that has alleged significant injury suffered in Utah further supports a finding that venue in this Court is proper. *See, e.g.*, *Lopez v. Killian*, 2012 WL 13080169, at *5 (D.N.M. Mar. 2, 2012) (finding venue proper in New Mexico where "the brunt of the injury in [the] case will be suffered by a New Mexico resident and his New Mexico business").

That some events relevant to this case may have occurred outside of Utah, including in California, is irrelevant and does not make venue in this Court improper. As noted above, venue "is not limited to the district with the *most* substantial events or omission;" rather, venue is proper in *any* district in which a substantial part of the events occurred. *Bartile Roofs, Inc.*, 618 F.3d at 1165 (quotation omitted). Despite Defendants' myopic focus on their own alleged ties to California, Cricut was at all times located in Utah and thus negotiated, performed, and suffered injury related to the Agreements in this state. *See Advisors Excel, LLC v. Zagula Kaye Consulting, LLC*, 2015 WL 11089657, at *4 (D. Kan. Feb. 20, 2015) ("Where, as here, the parties to a contract engaged in communications between two states, a substantial part of the events may occur equally in both states to make venue proper in either forum.").Venue therefore is statutorily proper in the District of Utah, and the Court should deny Defendants' request to transfer venue.

## III.   THE PRIOR CASE IN THE CENTRAL DISTRICT OF CALIFORNIA IS IRRELEVANT TO THIS COURT HAVING VENUE.

Defendants devote significant space in their Motion to discussing the prior case, *Enough for Everyone, Inc. v. Provo Craft & Novelty, Inc.*, Case No. SACV 11-01161-DOC(MLGx)

---

[4] It is also notable that the 2005 Agreement designates Utah as the mandatory forum for all disputes, and the 2007 Agreement provides that Utah law controls and E for E submits to personal jurisdiction in the state. (2005 Agreement at § 9.2; 2007 Agreement at § 9.6.) These provisions demonstrate that the parties to the Agreements recognized from the outset the strong Utah nexus. *See Advisors Excel, LLC*, 2015 WL 11089657, at *3 (noting as part of its *Bartile Roofs* analysis that the parties' Kansas choice of law provision "demonstrate that the Agreement . . . has a Kansas nexus" which should be considered as part of the "'entire sequence of events underlying the claim'") (quoting *Bartile Roofs*, 618 F.3d at 1166).

11

(C.D. Cal.), which involved two of the parties' predecessors and the 2007 Agreement. With no regard for the legal standards governing their Motion, Defendants argue that the Court should transfer this case to the Central District of California because that court "is already familiar with these proceedings" and the two cases "involve identical issues." (Mot. at 6, 7; *see also id*. at 17 ("The California District Court's writings make clear that it is very familiar with the parties and the royalty agreements involved [in this case].")). Defendants go so far as to argue that the case should be transferred to the "California District Court, and particularly Judge Carter who remains active, [and] is already familiar with this case." (*Id*. at 16.) Ironically (given this bizarre request), Defendants accuse Cricut of "judge shopping." (*Id*. at 6.)

It is difficult to discern precisely how Defendants propose the Court take the prior case into account in its analysis, because Defendants cite no authority for their apparent proposition that parties who were previously engaged in litigation over a contract must (a decade later) bring any subsequent litigation involving that agreement in the same court (even, apparently, before the same judge). Defendants do not argue that this Court lacks personal jurisdiction over them, nor do they invoke issue or claim preclusion.[5] (*See generally* Mot.) Indeed, if the California District Court case really addressed the claims or issues stated in this case, the proper remedy would be claim or issue preclusion, not a change of venue, and there is no reason this Court could not address a preclusion motion. Moreover, Defendants do not argue that venue is improper under 28 U.S.C. § 1391(b)(2) because of the prior case. (*See id*. at 13–15.) Instead,

---

[5] Nor could they. While this case and the prior litigation in the Central District of California both involve the 2007 Agreement, the two cases involve different issues. In the prior case, E for E sued to collect unpaid royalties and consulting fees. *See* Dkt. 25-1 at 2 ("Plaintiff EFE claims it is owed unpaid royalties and consulting fees from Defendant Provo Craft."). After the court found for E for E in that case, Cricut paid E for E for the amount of the judgment. (Compl. ¶¶ 58–59.) This case does not relate to those unpaid royalties and fees which have already been adjudicated. Rather, in this case, Cricut alleges it has overpaid E for E "more than actually owed under the 2007 Agreement," including because "[a]ll the Design Patents assigned to Tanner by [Cricut] pursuant to the Agreements have expired"—since the prior lawsuit. (*See, e.g.*, Compl. ¶¶ 62, 66.) Thus, this case is not "merely a continuation" of the prior case, as Defendants assert (Mot. at 16), but a new set of claims arising out of the 2005 and 2007 Agreements.

12

Defendants appear to argue only that if this Court determines venue is improper in the District of Utah—for some unstated reason, and despite the parties' clear agreement naming Utah as the proper venue—it should transfer the case "back" to the California court rather than dismiss it, "to avoid rewarding Cricut for its attempt at blatant forum shopping." (*Id*. at 16.) But there is no basis to find that Utah is not a proper venue, the prior lawsuit certainly does not provide that basis, and if Cricut engaged in "forum shopping" it did so only in 2005 and 2007 when it agreed with Defendants that Utah was the proper venue for this lawsuit.

## IV.    "THE INTERESTS OF JUSTICE" DO NOT WARRANT A TRANSFER OF VENUE.

In a footnote, Defendants argue half-heartedly that if the Court finds venue proper in this District, it should still transfer the case pursuant to 28 U.S.C. § 1404(a). (*See* Mot. at 18 n.11.) Section 1404(a) provides that a court may transfer a case to another district court where it could have been brought "for the convenience of parties and witnesses, in the interest of justice." The sole argument Defendants make in this regard is that permissive transfer is "appropriate in this matter for the same reason—there is no basis to relitigate the same claims in a second forum." (Mot. at 18 n.11.)

This request should be denied for at least two reasons. First, Defendants fail to cite the controlling standard, let alone meet it. Courts considering whether to transfer under § 1404(a) are to consider several "discretionary factors." *Bartile Roofs*, 618 F.3d at 1167 (listing factors). "Unless the balance is strongly in favor of the movant, the plaintiff's choice of forum should rarely be disturbed." *Id*. (quotation omitted). "The party moving to transfer a case pursuant to § 1404(a) bears the burden of establishing that the existing forum is inconvenient." *Id*. (quotation omitted). Defendants have not even attempted to meet their burden here, and could not, given that Cricut is a Utah resident with Utah witnesses, which chose to sue in Utah for contracts it negotiated, executed, and performed in Utah, and which contain Utah forum selection provisions.

13

Second, Defendants' stated "reason" for requesting transfer—that "there is no basis to relitigate the same claims in a second forum"—is based on a false factual premise, is irrelevant, ignores the relevant standards, and demonstrates a fundamental misunderstanding of venue and res judicata principles. Defendants have failed to show that Cricut is "relitigat[ing] the same claims in a second forum," and, as shown above, the opposite is true. Cricut fully satisfied the judgment from the prior lawsuit and this new lawsuit involves new claims and new issues nowhere raised or litigated in the prior lawsuit. In addition, even if Cricut were trying to "relitigate" previously litigated claims, which it is not, that would not justify a change of venue but would merely provide Defendants with a basis to make a motion based on res judicata principles and standards. If Defendants contend—which they have not done—that claim or issue preclusion apply to bar Cricut from bringing its claims (whether in this Court or any other), Defendants are obligated to make an appropriate motion and apply the governing legal standards. Defendants have made no such motion, and there is no basis for this Court to deny Cricut its proper and contractually agreed-to venue based solely on Defendants' conclusory, vague, and unsupported "relitigation" allegation.

## CONCLUSION

This Court is the proper venue for Cricut's claims because the parties contractually agreed to this venue and because a "substantial part of the underlying events" indisputably took place in Utah. Therefore, the Court should deny Defendants' Motion to Transfer Venue.

DATED this 28th day of January, 2022.

SNELL & WILMER, LLP


*/s/ Jeremy J. Stewart*
Matthew L. Lalli
Jeremy J. Stewart
Sarah A. Hafen

BAKER BOTTS L.L.P

Paul J. Reilly
David Tobin
Susan Kennedy

*Attorneys for Cricut, Inc.*