THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CRICUT, INC., a Delaware corporation<br><br>Plaintiff,<br><br>v.<br><br>ENOUGH FOR EVERYONE, INC., a Nevada corporation, and DESIREE TANNER, an individual,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS; GRANTING IN PART AND DENYING IN PART TANNER'S MOTION TO DISMISS; AND GRANTING PLAINTIFF LEAVE TO AMEND COMPLAINT<br><br>Case No. 2:21-CV-601-TS-DAO<br><br>District Judge Ted Stewart |

This matter is before the Court on: (i) Defendants' Motion to Dismiss Post-Patent Royalty Claims, (ii) Defendant Desiree Tanner's Motion to Dismiss Plaintiff's Complaint, (iii) Defendants' Request for Judicial Notice in Support of Motion to Dismiss Post-Patent Royalty Claims ("Defendants' Request for Judicial Notice"), and (iv) Plaintiff's Request for Judicial Notice in Support of its Combined Opposition to: (1) Defendants' Motion to Dismiss Post-Patent Royalty Claims; and (2) Defendant Desiree Tanner's Motion to Dismiss Plaintiff's Complaint ("Plaintiff's Request for Judicial Notice").

For the following reasons, the Court will take judicial notice of Defendants' and Plaintiff's requested documents, deny Defendants' Motion to Dismiss Post-Patent Royalty Claims, grant in part and deny in part Tanner's Motion to Dismiss Plaintiff's Complaint, and grant Plaintiff leave to amend its Complaint.

## I.        BACKGROUND

Plaintiff Cricut, Inc. ("Cricut" or "Plaintiff") (formally known as "Provo Craft and Novelty, Inc.")[1] is a crafting business that sells machines used to cut out patterns and other crafting materials like vinyl and paper.[2] In or around 2005, Tanner became an independent contractor for Cricut to design and market patterns for scrapbooking-like purposes.[3] Tanner also helped Cricut recruit, select, and oversee other artists and designers to develop patterns.[4]

In 2005, Tanner and Cricut entered into an agreement where Cricut agreed to pay Tanner for her consulting services and the sale of certain "Royalty-Based Products" (the "2005 Agreement").[5] In 2007, Cricut and Enough for Everyone, Inc. ("EFE") entered into a new agreement that "supersede[d] and replace[d] the 2005 Consulting Agreement"[6] (the "2007 Agreement"). Tanner is the founder, sole shareholder, officer, and sole director of EFE.[7] Cricut alleges that "[a] key reason for amending the 2005 Agreement was that Tanner had formed [EFE] . . . to collect her patent royalties."[8] However, in 2010, Cricut stopped making royalty payments to EFE, and in 2011, EFE sued for breach of contract and accounting.[9] EFE prevailed on its claims and collected the full judgment with interest.[10]

---

[1] Docket No. 25-4 at 2; Docket No. 2 ¶ 2.

[2] Docket No. 2 ¶ 13.

[3] *Id.* ¶ 14.

[4] *Id.*

[5] *Id.* ¶ 20; Docket No. 12-1.

[6] Docket No. 12-2 ¶ 9.4.

[7] Docket No. 2 ¶ 6.

[8] *Id.* ¶ 45.

[9] *Id.* ¶ 57–58.

[10] *Id.* ¶ 59.

In October 2021, Cricut again stopped making payments to EFE and filed this action against EFE and Tanner asserting claims for declaratory judgment, unjust enrichment, money had and received, and overpayment/recoupment.[11] Cricut seeks declaratory judgment as follows:

> a. the 2007 Agreement does not require Plaintiff to make royalty payments for online subscriptions and downloads; Plaintiff's mistaken royalty payments for such online subscriptions and downloads must be returned by Defendants; and Plaintiff is not required to make any future royalty payments to Defendants for such online subscriptions and downloads; and

> b. Plaintiff owes no royalty payments under the 2007 Agreement on any revenues earned after May 29, 2021 when the last of the Design Patents on the Design Inventions expired; any and all agreement provisions to the contrary are unenforceable; Plaintiff's non-payment on October 12, 2021, was not a breach of the 2007 Agreement; Plaintiff's mistaken payment exceeding $300,000 must be returned by Defendants; and Plaintiff does not need to make any future royalty payments to Defendants.[12]

EFE moves to dismiss Cricut's second declaration that the 2007 Agreement does not require Cricut to pay royalties on any revenues earned after the Design Patents[13] expired.[14] Tanner also moves to dismiss Cricut's Complaint arguing that it lacks factual allegations against her in her individual capacity.[15]

Defendants filed a request for judicial notice related to their Motion to Dismiss Post-Patent Royalty Claims, which asks the Court to take judicial notice of four documents from EFE's and Plaintiff's prior lawsuit in the Central District of California and the Ninth Circuit (the

---

[11] See Docket No. 2.

[12] Id. ¶ 85.

[13] Design Patents refer to Plaintiff's seven United States design patents for electronic cutting machines and cartridges: D533,582; D533,897; D534,204; D534,205; D541,843; D541,844; D543,583. See Docket Nos. 2-4, -5, -6, -7, -8, -9 and -10.

[14] Docket No. 38.

[15] Docket No. 40.

3

"California Litigation").[16] Cricut objects to Defendants' request and filed a separate request for judicial notice for four documents from the California Litigation.[17]

The Court begins its analysis with Defendants' and Plaintiff's requests for judicial notice and then addresses both Motions to Dismiss.

## II.     DISCUSSION

### A.  JUDICIAL NOTICE LEGAL STANDARD

Under Federal Rule of Evidence 201(b), the Court may take judicial notice of facts that are not subject to reasonable dispute because the facts are either "generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." If a party requests that a court take judicial notice of a fact and supplies the court with the necessary information to do so, the court must take judicial notice of the fact.[18] The Tenth Circuit has held that facts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion into a motion for summary judgment.[19]

### 1.  Defendants' Request for Judicial Notice

Defendants ask the Court to take judicial notice of four documents from the California Litigation: EFE's Complaint, the Special Master's Report and Recommendation, the Order Granting Plaintiff's Motion to Adopt Special Master's Report and Recommendation, and the Judgment entered for EFE.

Defendants argue that its requests are filings made in the California Litigation, and that the Court may take judicial notice under Fed. R. Evid. 201(b)(2). Defendants' arguments are

---

[16] Docket No. 39.

[17] Docket Nos. 41 and 47.

[18] Fed. R. Evid. 201(c)(2).

[19] *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006).

persuasive. "[F]ederal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue."[20] Although the Court takes judicial notice of the documents referenced above, these documents will only be considered to show their contents, not to prove the truth of the matters asserted.[21] Thus, the Court notes that it will not take any of the prior proceeding's legal conclusions or arguments as facts when deciding dispositive issues in this case.

### 2. Plaintiff's Request for Judicial Notice

Plaintiff also seeks judicial notice of the following four documents from the California Litigation: Tanner's Deposition Transcript, EFE's Post-Accounting Trial Brief, EFE's Appellate Brief, and EFE's Supplemental Record submitted by EFE in support of its Appellate Brief. Defendants object to Plaintiff's request for judicial notice of Tanner's deposition transcript because it is not "publicly-filed."[22]

As previously stated, federal courts may take notice of proceedings in other courts if those proceedings have a direct relation to matters at issue.[23] In *Hansen v. Harper Excavating, Inc*, the Tenth Circuit took judicial notice of documents from its earlier case in the electronic database of the U.S. District Court for the District of Utah, as facts capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.[24] Similarly here, Tanner's deposition was part of the record in the California Litigation and its accuracy is

---

[20] *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979).

[21] *See Tal*, 453 F.3d at 1264 n.24.

[22] Docket No. 50 at 8.

[23] *St. Louis Baptist Temple*, 605 F.2d at 1172.

[24] *Hansen v. Harper Excavating, Inc.*, 641 F.3d 1216, 1220 n.2 (10th Cir. 2011).

not reasonably questionable. Thus, the Court also takes judicial notice of Plaintiff's requests but makes clear that the documents will not be considered to prove the truth of the matters asserted therein.

B.   MOTION TO DISMISS LEGAL STANDARD

When evaluating a complaint under Rule 12(b)(6), the Court accepts all well-pleaded factual allegations, as distinguished from conclusory allegations, as true and views them in the light most favorable to the non-moving party.[25] The plaintiff must provide "enough facts to state a claim to relief that is plausible on its face,"[26] which requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[27] "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[28]

In considering a motion to dismiss, a district court considers the complaint, any attached exhibits,[29] the "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[30] The Court may also consider other documents "referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."[31]

---

[25] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[26] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[27] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[28] *Id.* (quoting *Twombly*, 550 U.S. at 555, 557) (alteration in original).

[29] *Commonwealth Prop. Advocs., LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1201 (10th Cir. 2011).

[30] *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

[31] *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).

1. *Defendants' Motion to Dismiss Post-Patent Royalty Claims*

Defendants move to dismiss Plaintiff's second demand for declaratory relief based on an exception to the Supreme Court's decision in *Brulotte v. Thys Company*.

In *Brulotte*, the Supreme Court held that licensing agreements extending royalty payments after a patent expires were *per se* unlawful.[32] Put differently, the Court held that a patent holder could not charge royalties for the use of their invention after its patent expired. In that case, a patent owner agreed to license his hop-picking machine to farmers in exchange for royalties from the hop-crop harvest. However, the patent for the hop-picking machine expired before the licensing agreement. The Court explained that "[t]he exaction of royalties for use of a machine after the patent has expired is an assertion of monopoly power in the post-expiration period when, as we have seen, the patent has entered the public domain."[33]

Several years later in *Kimble v. Marvel Entertainment, LLC*, the Supreme Court declined to overrule *Brulotte*.[34] In *Kimble*, Marvel Entertainment, LLC ("Marvel") infringed on a patented web-slinging toy simulating Spiderman's novel superpower. After it was sued for patent infringement, Marvel agreed to purchase the patented toy in exchange for a lump sum of about one half-million dollars and a 3% royalty on Marvel's future sales of the toy and similar products. The agreement did not include an expiration date, so the Court held that the agreement ended when the patent expired. Justice Kagan stated that "[t]he [*Brulotte*] decision is simplicity

---

[32] *Brulotte v. Thys Co.*, 379 U.S. 29, 32 (1964).

[33] *Id.* at 33.

[34] *Kimble v. Marvel Ent., LLC*, 576 U.S. 446, 455–60 (2015) (declining to overrule *Brulotte* under *stare decisis*).

itself to apply. A court need only ask whether a licensing agreement provides royalties for post-expiration use of a patent. If not, no problem; if so, no dice."[35]

Defendants rely on the following exception to the *Brulotte* rule: "post-expiration royalties are allowable so long as tied to a *non-patent right*—even when closely related to a patent."[36] Defendants argue that Section 3.3 of the 2007 Agreement expressly refers to "CRICUT-*branded*" and "CUTTLEBUG-*branded*" products and, therefore, it concerns branding rights—not patent rights—which means Cricut is still obligated to make its royalty payments.

Cricut, however, alleges that "[t]he 2007 Agreement is an agreement to pay a royalty on revenue accruing after the expiration of the Design Patents."[37] In its response, Cricut also asserts that Section 3.3 of the 2007 Agreement does concern patent rights and that "the '-branded' qualifier merely helps to identify the products on which those Patent Royalties are to be paid."[38] Cricut supports it argument by citing the Defendants' alleged admissions during the California Litigation. However, as previously stated, by taking judicial notice of these prior court documents, the Court would merely take notice of the existence of the documents, not the truth of the documents' contents. Thus, the Court turns its analysis to whether Cricut plausibly alleges that the 2007 Agreement provides royalties for post-expiration use of Design Patents by solely looking to Cricut's Complaint and its attached exhibits.

Section 3.3 of the 2007 Agreement states that EFE would receive

one half percent (1/2%) of any CRICUT-branded electronic cutting machines, one half percent (1/2%) of any CRICUT-branded cutting cartridges, or other cartridges that have the same fit, form or function, as the Cricut-Branded cutting

---

[35] *Id.* at 459.

[36] *Id.* at 454 (emphasis added).

[37] Docket No. 2 ¶¶ 70, 72.

[38] Docket No. 48 at 27.

cartridges, for use with CRICUT-branded electronic cutting machines, one half percent (1/2%) of any CUTTLEBUG branded machines, three quarter percent (3/4%) of any CUTTLEBUG-branded die cast dies, and three-quarter percent (3/4%) of any CUTTLEBUG-branded plastic embossing folders.[39]

The 2007 Agreement does not include a post-patent royalty provision. Cricut alleges that the "CRICUT-branded electronic cutting machines" and the "CRICUT-branded cutting cartridges" correspond to the products made and sold under the Design Patents. This argument is plausible. Each of the Design Patents includes the term "Electronic Cutter" in its title;[40] Provo Craft and Novelty, Inc. is listed as the assignee of each of the Design Patents;[41] and the following photographs of the Cricut-branded electronic cutting machines and the Cricut-branded cutting cartridges, as originally sold, correspond with images of the Design Patents.[42]

---

[39] Docket No. 12-2 ¶ 3.3.

[40] Docket No. 2 ¶¶ 30, 35–41.

[41] *Id.* ¶ 31.

[42] *Id.* at 10–11.





On its face, Defendants' Motion merely contradicts allegations in Cricut's Complaint by stating the Section 3.3 concerns branding rights. But the Court must accept the allegations in the Complaint as true and view them in the light most favorable to Plaintiff. Because Cricut pleads enough facts to state a plausible claim to relief, the Court will deny Defendants' Motion to Dismiss Post-Patent Royalty Claims.

### 2. *Tanner's Motion to Dismiss Plaintiff's Complaint*

Tanner moves to dismiss Cricut's Complaint arguing that Cricut fails to allege any factual basis for claims against her. In response, Cricut argues that Tanner is a necessary party to its declaratory judgment claim and that Cricut has sufficiently pled facts to establish equitable claims against Tanner. The Court analyzes both arguments in turn.

### a. *Declaratory Judgment*

Section 2201 of the Declaratory Judgment Act states that "[i]n a case of actual controversy . . . any court of the United States . . . *may* declare the rights and other legal relations

of any interested party seeking such declaration . . . ."[43] The Tenth Circuit has "supported the view that in an action for declaratory judgment all persons interested in the declaration are necessary parties."[44]

Under the *Twombly/Iqbal* standard, the plausibility requirement is satisfied if Cricut pleads factual content sufficient for the Court to reasonably infer that Tanner is an interested party in Cricut's declaration. Cricut has pled that "Tanner is the founder, sole shareholder, president, secretary, treasurer, and sole director of [EFE];"[45] "Tanner executed the 2007 Agreement;"[46] and a key purpose of that agreement was for Tanner "to collect *her* patent royalties."[47] As previously noted, the Court must accept the allegations in the Complaint as true and view them in the light most favorable to Plaintiff. As a party who executed the 2007 Agreement to allegedly collect *her* royalties, the Court finds that Cricut has pled sufficient facts, supported by the 2007 Agreement, to show that Tanner would have an interest in Cricut's declaration and, therefore, she is a necessary party to this action and cannot be dismissed from it. For these reasons, the Court will deny Tanner's Motion to Dismiss as to Plaintiff's claim for declaratory judgment.

### b. *Equitable Claims*

Tanner also argues that she cannot be liable for equitable relief under Cricut's unjust enrichment, money had and received, and overpayment/recoupment claims. Tanner asserts that because Cricut's alleged overpayments were made to EFE, not Tanner, Cricut has not alleged the

---

[43] 28 U.S.C. § 2201(a) (emphasis added).

[44] *Harris v. Quinones*, 507 F.2d 533, 537 (10th Cir. 1974) (quotation marks omitted).

[45] Docket No. 2 ¶ 6.

[46] *Id.* ¶ 43.

[47] *Id.* ¶ 45 (emphasis added).

necessary facts to establish its claims. Cricut's claims for equitable relief are governed under Utah law.[48]

Under Utah law, a claim for unjust enrichment requires that the party show (1) a benefit conferred on one person by another, (2) an appreciation or knowledge by the conferee of the benefit, and (3) the acceptance or retention by the conferee of the benefit under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value.[49] A claim for money had and received "is based on the theory that one has money in hand belonging to another which, in equity and with good conscience, should be paid over."[50] And a claim for recoupment is appropriate where "[i]t would be highly inequitable to allow plaintiffs to retain something that was not theirs."[51]

To sufficiently plead such claims, Cricut should have alleged that Tanner received payments from it or conferred a benefit to her, which it did not. To the contrary, Cricut repeatedly pleads that it overpaid EFE under the 2007 Agreement.[52] In its response to Tanner's Motion to Dismiss, Cricut argues that "[EFE] really is just Tanner"[53] and, for the first time, asserts claims under alter ego liability.[54] Cricut, in its Complaint, merely pleads labels, conclusions, and a formulaic recitation of the elements of each cause of action, which will not

---

[48] Docket No. 12-2 ¶ 9.6 ("The Parties hereto agree that this Agreement shall be construed in accordance with, and all disputes hereunder shall be governed by, the laws of the State of Utah.").

[49] *Desert Miriah, Inc. v. B & L Auto, Inc.*, 2000 UT 83, ¶ 13, 12 P.3d 580 (citing *Berrett v. Stevens*, 690 P.2d 553, 557 (Utah 1984)).

[50] *CIG Expl., Inc. v. Hill*, 824 F. Supp. 1532, 1546 (D. Utah 1993).

[51] *Freston v. Gulf Oil Co. U.S.*, 565 P.2d 787, 789 (Utah 1977).

[52] Docket No. 2 ¶¶ 50, 55, 62, and 95.

[53] Docket No. 48 at 38.

[54] *Id.* at 38–42.

do.[55] For these reasons, the Court will grant Tanner's Motion to Dismiss Plaintiff's Complaint as to each of these equitable claims.

### C.   LEAVE TO AMEND COMPLAINT

The remaining question is whether Cricut should be granted leave to amend its Complaint. Leave to amend a complaint should be "freely give[n] . . . when justice so requires."[56] It is within the Court's discretion to grant or deny leave to amend.[57]

> Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment.[58]

Based on these factors, the Court grants Cricut's request for leave to amend to provide additional facts to support its unjust enrichment, money had and received, and overpayment/recoupment equitable claims. A careful review of Cricut's response to Defendants' Motion to Dismiss suggests that Cricut could sufficiently provide additional factual allegations and/or theories of liability against Tanner. For these reasons, the Court will grant Tanner's Motion to Dismiss as to each of Cricut's equitable claims without prejudice, but it will also grant Cricut leave to amend its Complaint.

---

[55] *See* Docket No. 2 ¶¶ 88–90, 94–99, and 104–08.

[56] Fed. R. Civ. P. 15(a)(2).

[57] *LeaseAmerica Corp. v. Eckel*, 710 F.2d 1470, 1473 (10th Cir. 1983).

[58] *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993) (internal citations omitted).

III.    CONCLUSION

It is therefore

ORDERED that Defendants' Motion to Dismiss Post-Patent Royalty Claims (Docket No.

38) is DENIED; and Defendant Desiree Tanner's Motion to Dismiss Plaintiff's Complaint

(Docket No. 40) is GRANTED IN PART and DENIED IN PART as set forth above. It is further

ORDERED that Plaintiff is granted leave to amend its Complaint. Plaintiff should file an

amended complaint within fourteen (14) days.

DATED this 25th day of May, 2022.

BY THE COURT:

_____

Ted Stewart
United States District Judge

15