IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CRICUT, INC., a Delaware corporation,<br><br>　　　　　Plaintiff,<br>v.<br><br>ENOUGH FOR EVERYONE, INC.,<br>a Nevada corporation, and DESIREE<br>TANNER, an individual,<br><br>　　　　　Defendants. | MEMORANDUM DECISION AND ORDER<br>DENYING IN PART DEFENDANTS' MOTION<br>FOR LEAVE TO FILE FIRST AMENDED<br>ANSWER AND COUNTERCLAIMS AND<br>GRANTING DEFENDANTS' MOTION TO<br>APPROVE NOTICE PROGRAM<br><br>Case No. 2:21-cv-00601-TS-DAO<br><br>District Judge Ted Stewart<br><br>Magistrate Judge Daphne A. Oberg |

This matter is before the Court on Defendants Desiree Tanner and Enough for Everyone,

Inc.'s ("EFE; collectively "Defendants") Motion for Leave to File First Amended Answer and

Counterclaims to Plaintiff's First Amended Complaint (Docket No. 65) and Defendants' Motion

to Approve Notice Program for Correction of Inventorship Under 35 U.S.C. § 256 (Docket No.

77).  For the reasons discussed below, the Court will deny in part Defendants' Motion to Amend

and grant Defendants' Motion to Approve Notice Program.

I.   BACKGROUND

The parties in this matter include Plaintiff Cricut, Inc. ("Cricut") (formally known as

Provo Craft and Novelty, Inc., or "Provo Craft"),[1] a crafting business incorporated in Delaware

with headquarters in Utah; Defendant Desiree Tanner, an individual residing in Nevada; and

---

[1] Docket No. 25-4, at 2; *see also* Docket No. 2 ¶ 2.

Defendant EFE, a Nevada corporation. As an independent contractor with Cricut, Tanner was a co-inventor of the ornamental design for the company's electronic cutting machine and its related cartridges,[2] used to cut out various patterns in paper and other materials. Cricut needed Tanner's agreement when it applied for patents on the cutter and cartridge designs. In 2005, the parties entered into an agreement for Cricut to pay Tanner royalties on the revenue earned from the cutter and cartridge products (the "2005 Agreement").[3] Soon after the 2005 Agreement was finalized, Cricut applied for and received seven U.S. patents related to the product designs (the "Design Patents"), on which Tanner is a named inventor.

In 2007, Tanner formed EFE for the purpose of collecting the royalties from Cricut.[4] In the same year, the parties agreed to modify their 2005 Agreement so Cricut could make payments to EFE directly. Nearly all the provisions in the 2005 Agreement carried over into the new agreement (the "2007 Agreement"), including the term, scope (*e.g.*, the products on which royalties were owed), and rates of the royalties.

Cricut asserts that it no longer owes EFE patent royalties for its cutting machines and cartridges because the last Design Patent related to those products expired on May 29, 2021.[5] Cricut alleges it erroneously continued paying EFE royalties from May 29, 2021, through June 30, 2021. During this period, Cricut estimates it overpaid EFE in royalties by more than $300,000. Additionally, Cricut asserts that it erroneously paid EFE more than one million dollars

---

[2] Docket No. 54 ¶ 18.

[3] *See* Docket No. 12-1.

[4] Docket No. 54 ¶ 46.

[5] *Id.* ¶¶ 98–108.

for online subscriptions and digital downloads related to the patented products, because royalties related to digital products were allegedly not contemplated by the 2007 Agreement.[6]

With their Motion to Amend, Defendants seek (1) to extend the deadline to amend pleadings from August 15, 2022,[7] to December 23, 2022, the date they filed their Motion; and (2) to amend their Answer to identify *res judicata* as an affirmative defense and add a counterclaim for correction of inventorship. Defendants' Motion to Approve Notice Program seeks approval from the Court for their proposed program to give notice to "all parties concerned" under 35 U.S.C. § 256, as a condition precedent to correcting inventorship of two patents.

## II.  LEGAL STANDARD

The Federal Rules of Civil Procedure instruct that "court[s] should freely give leave" to amend "when justice so requires."[8]  "In the absence of . . . undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be freely given."[9]

When a party seeks leave to amend after a scheduling order deadline has passed, the moving party "must demonstrate (1) good cause for seeking modification under Fed. R. Civ. P.

---

[6] *Id.* ¶¶ 94–97.

[7] *See* Docket No. 45.

[8] Fed. R. Civ. P. 15(a)(2).

[9] *Foman v. Davis*, 371 U.S. 178, 182 (1962) (internal quotation marks omitted); *see also Frank v. U.S. W., Inc.*, 3 F.3d 1357, 1365–66 (10th Cir. 1993).

16(b)(4) and (2) satisfaction of the Rule 15(a) standard."[10] "In practice, this standard requires the movant to show the 'scheduling deadlines cannot be met despite [the movant's] diligent efforts,'"[11] which means the movant "must provide an adequate explanation for any delay."[12] "[T]he key inquiry is whether [the moving party] acted with diligence with respect to when it first learned of the relevant information and when it moved to amend."[13]

"Rule 16's good cause requirement may be satisfied, for example, if a plaintiff learns new information through discovery or if the underlying law has changed."[14] "If the plaintiff knew of the underlying conduct but simply failed to raise [the] claims, however, the claims are barred."[15] Courts are "afforded wide discretion" in their application of the good cause standard under Rule 16.[16]

## III. DISCUSSION

### A. MOTION TO AMEND

Defendants must show good cause to modify the existing scheduling deadline for amending pleadings, which passed on August 15, 2022—more than four months before they filed the present Motion.

---

[10] *Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014) (citation omitted).

[11] *Id.* (quoting *Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001).

[12] *Strope v. Collins*, 315 F. App'x 57, 61 (10th Cir. 2009) (citation omitted).

[13] *Est. of Medina v. Samuels*, No. 20-CV-01443-NYW, 2022 WL 194480, at *7 (D. Colo. Jan. 21, 2022).

[14] *Gorsuch*, 771 F.3d at 1240.

[15] *Id.*

[16] *Bylin v. Billings*, 568 F.3d 1224, 1231 (10th Cir. 2009).

Defendants assert that they "obtained information supporting the application of *res judicata* after the pleading amendment deadline had passed,"[17] which prevented them from diligently meeting the scheduling deadline on this claim. L. Rex Sears' Declaration provides the basis for the proposed *res judicata* claim.[18] Mr. Sears states that "[he] encountered information suggesting that certain Cricut-branded electronic cutters do not embody designs covered by the aforementioned design patents."[19] Defendants contend that this information "breathes new life into the distinction between branding and design patent coverage," and may have preclusive effect, given the California district court's adjudication that "royalties are to be paid on 'products containing the [] Cricut *brand*.'"[20]

The Court finds Defendants' argument that new information unveiled a *res judicata* defense unpersuasive. Defendants admit that their delay in moving to amend was "to confirm their suspicion that Cricut's representation was false,"[21] but it appears Defendants were aware of the underlying conduct subject to *res judicata* prior to the deadline for amending pleadings.[22] Indeed, Defendants argue that "*res judicata* has been 'in the air' since early in the case."[23] In

---

[17] Docket No. 65, at 1.

[18] *See* Docket No. 66.

[19] *Id.* ¶ 5.

[20] Docket No. 65, at 6 (emphasis in original).

[21] *Id.*

[22] *See Carrazco v. Morrison,* No. 21-CV-01277-NYW, 2022 WL 2666031 (D. Colo. July 11, 2022) (finding good cause did not exist to allow amendment where defendant knew of the defense before the scheduling deadline passed but waited to obtain information that *confirmed* the defense).

[23] Docket No. 65, at 1.

their Motion to Change Venue on December 17, 2021,[24] Defendants raised a similar preclusion argument to their proposed amendment, arguing that Cricut was merely "forum shopping" so it could obtain a "new judge for the same disputes that were previously decided adversely to Cricut."[25] Defendants were aware of the previous ruling from the district court in California and knew the court had entered judgment against Cricut for failure to pay royalties to Defendants for sales of Cricut-branded products. Thus, Defendants were aware of the underlying conduct that would have supported a *res judicata* defense but failed to raise it before the scheduling deadline.

Therefore, the Court finds that Defendants fail to establish good cause to amend their Answer to add the proposed *res judicata* defense.

Defendants also seek to amend their Answer to add a counterclaim for correction of inventorship. They present this counterclaim as an alternate theory of the case, in response to Cricut's argument that the royalties in section 3.3 of the 2007 Agreement were no longer valid after the expiration of the Design Patents.[26] Defendants wish to add Ms. Tanner to two utility patents[27] that have not yet expired, allowing her to continue collecting royalties under the 2007 Agreement, regardless of the Court's findings concerning royalties and the expired Design Patents. Cricut contends that "Defendants do not have good cause to amend to add a counterclaim that they could have asserted by the deadline."[28]

---

[24] Docket No. 23.

[25] *Id.* at 17–18.

[26] Docket No. 65, at 7–8.

[27] Ms. Tanner's claim for correction of inventorship relates to utility patents 7,845,259 and 8,646,366. *See* Docket No. 77, at 3.

[28] Docket No. 73, at 9.

Defendants were aware of issues regarding inventorship at least as early as August 10, 2022, when they sent discovery requests relating to the utility patents to Cricut.[29] In response to Cricut's objection to Defendants' discovery request, Defendants explained their theory that "Cricut would not (yet) be excused from making [royalty] payments because Ms. Tanner should have been named as an inventor on certain of the utility patents, which had not yet expired."[30] Though the two patents for which the Defendants seek to correct inventorship were issued more than 12 and 9 years ago, Defendants assert they did not become aware of such patents until after this suit began in 2021.[31] Nonetheless, Defendants were aware of the patents and had a theory for correction of inventorship prior to the August 15, 2022 scheduling deadline, as evidenced by their discovery requests.

Defendants provide no justification for addressing the issue more than four months after the scheduling deadline, but instead argue that "denying the Motion would not narrow the issues to be litigated . . . [because] [u]tility-patent inventorship is already part of the case."[32] Thus, Defendants have not shown that they learned new information through the discovery process, that the law has changed, or that they were unable to assert these claims before the amendment deadline passed despite their diligent effort.

Therefore, the Court finds that Defendants fail to establish good cause to amend their Answer to add the proposed counterclaim for correction of inventorship.

---

[29] Docket No. 66 ¶ 6.

[30] *Id.*

[31] Docket No. 74, at 10 n.2.

[32] Docket No. 76, at 8.

Where Defendants have not satisfied Rule 16's standards for modifying a schedule, it is not necessary to evaluate the motion under Rule 15.[33]

The Court denies Defendant's Motion for Leave to File First Amended Answer and Counterclaims to Plaintiff's First Amended Complaint (Docket No. 65) for failure to show good cause. However, the Court will allow Defendants leave to proceed with the non-substantive amendments for tone and clarity contained in their proposed Amended Answer.

B.  MOTION TO APPROVE NOTICE PROGRAM

In their Motion to Approve Notice Program, Defendants ask the Court to approve their proposed program for giving notice to "all parties concerned" as a condition precedent to correcting inventorship of the utility patents, Nos. 7,845,259 and 8,646,366.[34] The Federal Circuit has clearly stated that "[t]he [35 U.S.C.§ 256] statute prescribes only one prerequisite to judicial action: all parties must be given notice and an opportunity to be heard."[35] Courts have interpreted the notice requirement of § 256 as sufficient when it "preserve[s] one's due process rights in relation to property interests."[36] "[D]ue process requires 'notice reasonably calculated,

---

[33] *See Gorsuch*, 771 F.3d at 1242 ("Having concluded [movants] lacked good cause to amend their pleadings after the scheduling order deadline, we need not reach the Rule 15(a) issue, and decline to do so."); *StorageCraft Tech. Corp. v. Persistent Telecom Sols., Inc*., No. 2:14-CV-76-DAK, 2016 WL 3435189, at *8 (D. Utah June 17, 2016) ("Only after determining that good cause has been established will the Court proceed to determine if the more liberal Rule 15(a) standard for amendment has been satisfied.") (quoting *Carefusion 213, LLC v. Pro. Disposables, Inc.,* No. CIV-09-2626-KHV, 2010 WL 4004874, at *3–4 (D. Kan. Oct. 12, 2010)).

[34] Docket No 77, at 1.

[35] *MCV, Inc. v. King-Seeley Thermos Co*., 870 F.2d 1568, 1570 (Fed. Cir. 1989).

[36] *Fina Tech., Inc. v. Ewen*, 857 F. Supp. 1151, 1156 (N.D. Tex.), dismissed sub nom. *Fina Tech., Inc. v. Ewen*, 45 F.3d 442 (Fed. Cir. 1994); *see also Gabriel Techs. Corp. v. Qualcomm Inc.*, No. 08-CV-1992-MM-POR, 2009 WL 3326631, at *9 (S.D. Cal. Sept. 3, 2009)

under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"[37]

Defendants assert that, under § 256, the Court may "order correction" of Ms. Tanner's omission on the utility patents "on notice and hearing of all parties concerned."[38] The "parties concerned" in § 256 are the "named inventors, omitted inventors, and assignees."[39] Defendants intend for the proposed notice program to satisfy the notice requirement of § 256. Cricut opposes the Motion, arguing that approving such a notice program is "premature" because "Defendants have not yet filed a lawsuit, claim, or counterclaim in any court—including this Court— challenging the presumptively correct inventorship of the Utility Patents;"[40] that the motion improperly extends discovery deadlines; and that the motion is deficient as due process notice.

The Court will approve Defendants' Motion. If Defendants move, as expected, to correct the list of inventors on the utility patents, the existing patent holders should be notified as soon as possible—preferably before Defendants submit their contemplated motion to correct inventorship. The Motion is not premature because the purpose of a notice requirement is "fundamentally practical"[41]—"to apprise the affected individual of, and permit adequate

---

("Parties with an economic stake in a patent's validity are entitled to be heard on inventorship issues once a putative inventor has sued to correct inventorship.").

[37] *Stanford v. City of Newton, Kan.*, No. 94-3135, 1995 WL 307587, at *1 (10th Cir. May 11, 1995) (unpublished) (quoting *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 13 (1978)).

[38] Docket No 77, at 1 (quoting 35 U.S.C. § 256).

[39] *Nichols Inst. Diag. v. Scantibodies Clin. Lab.,* 218 F. Supp. 2d 1243, 1250 (S.D. Cal. 2002).

[40] Docket No. 78, at 4.

[41] *Stanford*, 1995 WL 307587, at *1.

preparation for, an impending hearing."[42] Approving a notice program at this stage of the proceedings allows all interested parties an opportunity to be apprised of and prepare for a potential hearing on the matter of correcting inventorship. Further, approving the notice program will not meaningfully impact or delay the discovery process.

Cricut asserts that Defendants' proposed notice program is deficient for several reasons: (1) it does not present notice in a neutral manner; (2) it fails to inform the interested parties that they are not required by law to respond to the notice; and (3) Defendants have failed to sufficiently locate the current mailing addresses for the concerned parties. Defendants did not dispute Cricut's objections and instead proposed fixes for these deficiencies.[43] Defendants agree to add language addressing the lack of neutrality and informing the interested parties that they are not required to respond to the notice. Additionally, Defendants propose using identification services to locate updated addresses for the parties-to-be-noticed. With these fixes, the Court finds that Defendants' proposed notice program is reasonably calculated to apprise interested parties of the pendency of the action.

Therefore, the Court approves the notice program proposed in Defendants' Motion.

## IV. CONCLUSION

Based on the foregoing, it is hereby

ORDERED that Defendants' Motion for Leave to File First Amended Answer and Counterclaims to Plaintiff's First Amended Complaint (Docket No. 65) is DENIED in part; and

---

[42] *Memphis Light, Gas & Water Div.*, 436 U.S. at 14 (internal quotation marks and citation omitted).

[43] Docket No. 83, at 6–7.

ORDERED that Defendants' Motion to Approve Notice Program for Correction of

Inventorship Under 35 U.S.C. § 256 (Docket No. 77) is GRANTED.

DATED this 8th day of May, 2023.

BY THE COURT:

_____
Ted Stewart
United States District Court Judge