IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CRICUT, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>ENOUGH FOR EVERYONE, INC., a Nevada corporation, and DESIRÉE TANNER, an individual,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SANCTIONS AND DENYING DEFENDANTS' MOTION FOR LEAVE TO FILE A SURREPLY<br><br><br>Case No. 2:21-CV-00601-TS-DAO<br><br>District Judge Ted Stewart |

This matter comes before the Court on Plaintiff's Motion for Sanctions and Defendants' Motion for Leave to File Sur-Reply. For the reasons discussed below, the Court will grant Plaintiff's Motion and deny Defendants' Motion.

I. BACKGROUND

Plaintiff formally disclosed Tanner Co. and its employees Mr. Jeffrey Bickel, Dr. Nancy Voth, and Mr. Mark Madrian as expert witnesses on May 26, 2023.[1] Tanner Co. had provided tax preparation and consulting services to Defendants' intellectual property counsel, Maschoff Brennan, for years prior to the instant case.[2]

On May 30th, 2023, Maschoff Brennan's finance director, Ted Drass, contacted Heather Allen, a partner at Tanner Co., to inform her that he "perceived a conflict in Mr. Bickel's appearance as a testifying expert, on the taxation of intellectual property, against the firm's client."[3] Later that day, Ms. Allen arranged a call with Mark Erikson, Tanner Co.'s managing

---

[1] Docket No. 128-1.

[2] Docket No. 135, at 2.

[3] *Id.* at 3 (emphasis omitted).

partner, Mr. Drass, and two of Defendants' attorneys, Sterling Brennan and Rex Sears, regarding the three Tanner Co. partners serving as expert witnesses against Maschoff Brennan's client.[4] Mr. Brennan expressed concern about Tanner Co. employees testifying against their client "because impeaching the testimony of such witnesses on intellectual-property taxation might involve attacks on the very consulting firm that Maschoff Brennan . . . uses for its own tax work and because Cricut might exploit that relationship to rehabilitate those relationships."[5]

Following the communications between Maschoff Brennan and Tanner Co., on June 2, 2023, the three experts employed by Tanner Co. withdrew their services via an email from Mr. Bickel. Mr. Bickel explained that Mr. Allen had been contacted by Maschoff Brennan and made aware of the purported conflict. Mr. Bickel then stated they did not know "whether there [was] a legal basis for their expectation that [he] withdraw from the case," but explained that "it [was] in the best interest of the firm that [he] resign" "in the interest of preserving [their] relationship with Maschoff Brennan."[6]

Plaintiff now moves for sanctions "on the basis that Defendants . . . , through counsel, . . . interfered with [Plaintiff's] expert witnesses until they withdrew."[7] Plaintiff requests that the Court order Defendants or Maschoff Brennan to "pay the costs and fees incurred by Tanner Co. and [Plaintiff's] counsel in furtherance of Tanner Co.'s expert engagement."[8] Defendants deny allegations of witness interference and argue that because the ex parte communications were

---

[4] *Id.*

[5] *Id.*

[6] Docket No. 128-3, at 1.

[7] Docket No. 128, at 1.

[8] *Id.* at 10.

with Tanner Co. executives rather than the individual experts themselves, they are not sanctionable.[9]

On July 28, 2023, Plaintiff filed a reply.[10] Defendants move for leave to file sur-reply, arguing that Plaintiff's reply raised new arguments and evidence.[11]

## II. DISCUSSION

*A. Motion for Leave to File Surreply*

Generally, parties "should be given an opportunity to respond to new material raised for the first time" in a reply memorandum.[12] "'Material,' for purposes of this framework, includes both new evidence and new legal arguments."[13] However, if the Court "does not rely on the new material in reaching its decision," it may deny a motion for leave to file a response to the new material.[14]

All arguments made in the Plaintiff's reply were in direct response to Defendants' Opposition. The Court also need not consider any new evidence or argument in reaching its decision on the merits of Plaintiff's Motion for Sanctions. Therefore, Plaintiff's reply does not justify granting leave to file a surreply, and the Court will deny the Motion.

---

[9] Docket No. 135, at 6–8.

[10] Docket No. 166.

[11] Docket No. 170.

[12] *Green v. New Mexico*, 420 F.3d 1189, 1196 (10th Cir. 2005).

[13] *Id.* (citing *Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1139 n.13 (10th Cir. 2003)).

[14] *Id.*; *see also Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1164–65 (10th Cir. 1998) (holding that a district court "does not abuse its discretion by precluding a surreply" when deciding a motion "without relying on the new materials and arguments in the movant's reply").

B. *Motion for Sanctions*

All attorneys that appear before this Court "must comply with the rules of practice adopted by this court and with the Utah Rules of Professional Conduct as revised, amended, and interpreted by this court."[15] "[A] federal court has the power to control admission to its bar and to discipline attorneys who appear before it."[16] In doing so, federal courts have the inherent authority to impose sanctions.[17] "This inherent authority 'extends to a full range of litigation abuses,' including attorneys who violate the Rules of Professional Conduct."[18]

While "[t]here is no outright prohibition against ex parte contacts with an opposing expert's employer[,]" courts have interpreted Federal Rule of Civil Procedure 26 as an implied prohibition on such conduct, and sanctioned such conduct as a violation of the applicable rules of professional responsibility.[19] This is because Rule 26 provides specific guidance on how parties may obtain discovery from experts and all other forms are implicitly prohibited.[20]

The American Bar Association Committee on Ethics and Professional Responsibility's position on the matter is in line with this interpretation and provides as follows: "[A]lthough the Model Rules do not specifically prohibit a lawyer in a civil matter from making ex parte contact

---

[15] DUCivR 83-1.5.1(a).

[16] *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991).

[17] *Mellot v. MSN Commc'ns, Inc.*, 513 Fed. App'x 753, 754 (10th Cir. 2013) (citing *Chambers*, 501 U.S. at 50).

[18] *Runnebaum v. Magellan Healthcare, Inc.*, No. 19-2151-KHV, 2019 WL 5310252, at *2 (D. Kan. Oct. 21, 2019) (quoting *Chambers*, 501 U.S. at 46) (collecting cases).

[19] Don Zupanec, *Expert Witness – Ex Parte Communications – Expert's Employer*, 20 No. 8 FED. LITIGATOR 14; *see also Erickson v. Newmar Corp.*, 87 F.3d 298, 302 (9th Cir. 1996) (holding that "an attorney who engages in prohibited communications violates the attorney's ethical duty to obey the obligations of the tribunal.").

[20] 2 Geoffrey C. Hazard & W. William Hodes, *The Law of Lawyering* § 3.4:402 (2d ed. Supp. 1994).

with the opposing party's expert witness, such contacts would probably constitute a violation of Rule 3.4(c) if the matter is pending in federal court or in a jurisdiction that has adopted an expert-discovery rule patterned after Federal Rule 26(b)(4)(A)."[21] Utah has adopted Rule of Professional Conduct 3.4(c), which states in part, "[a] lawyer shall not . . . knowingly disobey an obligation under the rules of a tribunal." Rule 26(b)(4)(A) provides that "[a] party may depose . . . an expert whose opinions may be presented at trial." Courts have interpreted this as prohibiting opposing counsel's ex parte communication with an expert and have imposed sanctions for such conduct accordingly under Rule 3.4(c).[22]

Maschoff Brennan does not dispute that they communicated with Tanner Co. concerning the conflicts of interest they perceived, which ultimately caused the experts' withdrawal from the case.[23] Instead, they argue that because Maschoff Brennan communicated with executives of Tanner Co., rather than with the experts themselves, their communications were not improper, and Plaintiff's motion for sanctions should be denied.[24]

---

[21] ABA Comm. On Ethics and Pro. Resp., Formal Op. 93-378 (1993).

[22] *Erickson*, 87 F.3d at 302 (holding that "an attorney who engages in prohibited communications violates the attorney's ethical duty to obey the obligations of the tribunal."); *Calaway v. Schucker*, No. 02-2715-STA-cgc, 2013 WL 12033181, at *2 (W.D. Tenn. May 10, 2013) (finding that "Rule 26(b)(4)(A) permits a party to depose a person identified as an expert witness," and concluding that "an attorney violates the ethical duty to 'conform to the rules of a tribunal before which a particular matter is pending' established under Model Rule of Professional Conduct 3.4(c) when the attorney engage[s] in *ex parte* communication with the opposing party's expert witness"); *Massachusetts Inst. of Tech. v. Imclone Sys., Inc.*, 490 F. Supp. 2d 119, 127 (D. Mass. 2007) (finding attorney's contact with opposing party's witness' employer was made "in the expectation that [the employer] would lean on [the witness] to cease cooperating with [the opposing party]," and in so doing "violated Rules 3.4 and 8.4(d) of the Massachusetts Rules of Professional Conduct.").

[23] Docket No. 135, at 2–6.

[24] *Id.* at 6–7.

Other courts have addressed similar situations, finding that such contact violated Rule 3.4(a), instead of Rule 3.4(c). Utah Rule of Professional Conduct 3.4(a) provides that a lawyer "shall not unlawfully obstruct other party's access to evidence . . . ." In *Sanderson v. Boddie-Noel Enterprises, Inc.*,[25] the district court concluded that counsel violated Virginia Rule of Professional Conduct 3.4(a) when they contacted the opposing party's expert's employer.[26] The court determined that by contacting the employer, "[counsel] deliberately set into motion a series of events that had the effect of obstructing the [other party's] ability to use the services of its designated expert witness."[27] The court determined that the appropriate sanction was requiring counsel to compensate the defendant for fees charged by the expert, the fees of the replacement expert, and the fees incurred by opposing counsel in working with the expert, in prosecuting the motion, and securing a new experts, as well as fees associated with delay.[28]

Relying in part on the "instructive" nature of *Sanderson*, the Georgia Court of Appeals similarly concluded that "the natural and foreseeable result" of counsel's calls to the expert's employer was that the expert was "pressured into withdrawing from the case."[29] While the Court acknowledges that the facts in *Sanderson* are more egregious than those at issue here, the case is informative. There, counsel repeatedly contacted opposing counsel's key expert witness to pressure the expert into withdrawing from the case.[30] Despite the differences, the outcome was the same as presented here—Plaintiff lost its chosen experts.

---

[25] 227 F.R.D. 448 (E.D. Va. 2005).

[26] *Id.* at 453.

[27] *Id.* at 453–54.

[28] *Id.* at 454–56.

[29] *WellStar Health Sys., Inc. v. Kemp*, 751 S.E.2d 445, 452 (Ga. Ct. App. 2013).

[30] *Id.* at 451.

Differentiating the case before it from *Sanderson* and *Wellstar*, the District of Colorado denied sanctions where counsel contacted an expert witness's employer but had no prior existing relationship with the employer.[31] In that case, counsel contacted an expert witness's employer to conduct what the court determined was a proper investigation on behalf of his client.[32] The court noted that this scenario was unlike those in *Sanderson* and *Wellstar* where "the offending attorney leveraged an existing relationship with the employer of an expert to exert influence with the goal of keeping the expert from testifying."[33]

Here, Maschoff Brennan leveraged its existing relationship with Tanner Co. to prevent Plaintiff's expert witnesses from testifying against its clients and "deliberately set into motion a series of events that had the effect of obscuring the [other party's] ability to use the services of its designated expert witness."[34] Such conduct violates the Federal Rules of Civil Procedure and the Utah Rules of Professional Conduct.

The Court notes that Maschoff Brennan could have taken one of several appropriate alternative actions, including (1) negotiating with Plaintiff's counsel for an agreement that certain information be excluded from any hearings and trial; (2) making a motion in limine for certain information to be excluded from trial; (3) allowing lead counsel for Defendants to handle matters relating to Tanner Co. as had been done for prior depositions in the case; or (4) making a motion to the Court proving the conflict and seeking exclusion of the expert testimony.[35] However, Maschoff Brennan instead chose to communicate directly with Plaintiff's expert

---

[31] *Clark v. Home Depot U.S.A., Inc.*, 18-cV-00899-REB-GPG, 2019 WL 13195510, at *3 (D. Colo. Apr. 9, 2019).

[32] *Id.*

[33] *Id.*

[34] *See Sanderson*, 227 F.R.D. at 453–54.

[35] Docket No. 128, at 6.

witnesses regarding a perceived conflict in violation of the Federal Rules of Civil Procedure and the Utah Rules of Professional Conduct. The fact that Maschoff Brennan's communications were with the employer rather than the employee is a distinction without difference.

Based on the foregoing, the Court finds that sanctions against Maschoff Brennan and those attorneys involved in the May 30th conference call are appropriate. Because their improper communications with Plaintiff's expert witnesses imposed a significant burden on Plaintiff, the Court will impose a sanction on Maschoff Brennan of the costs and fees incurred by Tanner Co. and Plaintiff's counsel in furtherance of Tanner Co.'s expert engagement.

## IV. CONCLUSION

It is therefore

ORDERED that Defendants' Motion for Leave to File Surreply (Docket No. 170) is DENIED. It is further

ORDERED that Plaintiff's Motion for Sanctions (Docket No. 128) is GRANTED.

Plaintiff is ordered to submit a formal affidavit detailing the costs and fees incurred by Tanner Co. and Plaintiff's counsel in furtherance of Tanner Co.'s expert engagement within fourteen (14) days of this Order.

DATED this 26th day of September, 2023.

BY THE COURT:

_____
Ted Stewart
United States District Judge