UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| CRICUT, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>ENOUGH FOR EVERYONE, INC., a Nevada corporation, and DESIREE TANNER, an individual,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S SHORT FORM DISCOVERY MOTION (DOC. NO. 92)**<br><br>Case No. 2:21-cv-00601<br><br>District Judge Ted Stewart<br><br>Magistrate Judge Daphne A. Oberg |

This case involves a dispute over Plaintiff Cricut, Inc.'s obligation to pay royalties to Defendants Enough for Everyone, Inc. ("EFE") and Desiree Tanner under a 2007 agreement.[1] The instant motion concerns Cricut's subpoena to Defendants' tax accountant, Brian Ringler, seeking documents and communications related to Defendants' tax filings.[2] In response to the subpoena, Mr. Ringler, through Defendants' counsel, produced certain emails with redactions based on Defendants' claim that the redacted portions contain information protected by attorney-client privilege.[3] Cricut moves to compel production of these emails without redactions, arguing

---

[1] (*See* Am. Compl., Doc. No. 54.)  Cricut seeks a declaratory judgment that it no longer owes royalties under the agreement, (*see id.*), and Defendants have counterclaimed for breach of contract, (*see* Answer and Countercls., Doc. No. 55).

[2] (*See* Pl.'s Short Form Disc. Mot. ("Mot."), Doc. No. 92; Ex. F to Mot., Subpoena to Brian Ringler, Doc. No. 92-6.)

[3] (*See* Exs. A & B to Mot., Redacted Emails (First Version), Doc. Nos. 94-1 & 94-2.)  Defendants' counsel represented Mr. Ringler in responding to the subpoena and accepted service of Cricut's motion on his behalf.  (*See* Mot. 1, Doc. No. 92; Acceptance of Service on Behalf of Brian Ringler, Doc. No. 103.)  Mr. Ringler did not respond to the motion.

1

the privilege does not apply.[4] Defendants removed some redactions after the motion was filed, but they argue the remaining redactions protect privileged information.[5] The court held a hearing on October 2, 2023, and permitted Defendants to submit the unredacted emails to the court for in camera review.[6]

Based on in camera review of the emails, and having considered the parties' briefing and argument, the court finds all but one of the redacted portions of the emails are privileged. Therefore, for the reasons explained below, the motion is granted in part and denied in part. Defendants are ordered to produce a version of the October 3, 2022 email from Tamara Mellem to Brian Ringler with the second redaction removed, within fourteen days.

## LEGAL STANDARDS

Because this is a diversity case in which Utah law governs the parties' claims, Utah privilege law applies.[7] Under Utah law, a party claiming attorney-client privilege must establish: "(1) an attorney-client relationship, (2) the transfer of confidential information, and (3) the purpose of the transfer was to obtain legal advice."[8] Under Rule 504 of the Utah Rules of Evidence, this privilege may extend to communications involving representatives of the attorney or client if: "(1) the communications were made for the purpose or in the course of obtaining or

---

[4] (*See* Mot., Doc. No. 92.)

[5] (*See* Defs.' Opp'n to Pl.'s Short Form Disc. Mot. ("Opp'n"), Doc. No. 98; Exs. A & B to Opp'n, Redacted Emails (Second Version), Doc. Nos. 98-1 & 98-2.)

[6] (*See* Min. Entry, Doc. No. 188.)

[7] *See* Fed. R. Evid. 501 ("[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."); (*see also* Opp'n 4, Doc. No. 98).

[8] *S. Utah Wilderness All. v. Automated Geographic Reference Ctr., Div. of Info. Tech.*, 2008 UT 88, ¶ 33, 200 P.3d 643, 655.

2

facilitating the rendition of legal services to the client; and (2) the communications were (A) between (i) the client or the client's representative and (ii) the legal professional [or] the legal professional's representatives."[9]

This rule defines "communication" to include "advice, direction or guidance given by . . . the legal professional's representative" and "disclosures of the client and the client's representative to the legal professional [or] the legal professional's representative."[10] "Confidential communication" is defined as "a communication not intended to be disclosed to third persons other than those to whom disclosure is in furtherance of rendition of legal services to the client or to those reasonably necessary for the transmission of the communication."[11] A "legal professional's representative" is "a person or entity employed to assist the legal professional in the rendition of legal services."[12] And a "client's representative" is

> a person or entity authorized by the client to: (A) obtain legal services for or on behalf of the client; (B) act on advice rendered pursuant to legal services for or on behalf of the client; (C) provide assistance to the client that is reasonably necessary to facilitate the client's confidential communications; or (D) disclose, as an employee or agent of the client, confidential information concerning a legal matter to the legal professional.[13]

## ANALYSIS

Cricut challenges the redactions in two documents: (1) a December 3, 2020 email from Mr. Ringler to defendant Desiree Tanner, labeled "RINGLER2875," and (2) an email thread

---

[9] Utah R. Evid. 504(b)(1)–(2)(A).

[10] Utah R. Evid. 504(a)(8)(A)–(B).

[11] Utah R. Evid. 504(a)(9).

[12] Utah R. Evid. 504(a)(6).

[13] Utah R. Evid. 504(a)(7).

spanning two years between Mr. Ringler and EFE's bookkeeper, Tamara Mellem, labeled "RINGLER2914."[14] Each document is addressed in turn.

### A. RINGLER2875

The subject line of the December 3, 2020 email from Mr. Ringler to Ms. Tanner is "Capital Gain Treatment."[15] In the unredacted portion, Mr. Ringler states: "Here is the email I finished last night but I did talk with you this morning on it and sent to Rus your attorney my comments."[16] The remainder of the email is redacted.

Cricut contends this email is a nonprivileged communication between non-attorneys, relating to a nonprivileged tax issue: Mr. Ringler's preparation of EFE's tax returns treating Cricut patent royalties as capital gains before this case was filed.[17] However, Defendants assert that in late 2020 and early 2021, they were in discussions with Cricut regarding a lump-sum buyout of Cricut's payment obligations under the 2007 agreement, as a potential settlement of

---

[14] (Mot., Doc. No. 92.)

[15] (See Ex. A to Opp'n, Redacted Email from B. Ringler to D. Tanner (Dec. 3, 2020), Doc. No. 98-1.) The version cited here and in the remainder of this order is the version Defendants filed with their opposition, which contains fewer redactions than the one originally produced by Mr. Ringler.

[16] (Id.)

[17] (Mot. 2–3, Doc. No. 92.) Although the relevance of the emails is not at issue, Cricut explains the tax treatment of its royalties is relevant to whether the royalties Cricut paid to Defendants were, at least in part, in exchange for Defendants' assignment of patent rights to Cricut. (Id. at 1.) If so, Cricut asserts Supreme Court precedent would prohibit payment of royalties after expiration of the patents. (Id.) According to Cricut, EFE's tax returns show that in early 2021, EFE began treating all Cricut royalties as capital gains (on amended tax returns from 2017 to 2019 and original returns for 2020 and 2021). (See id.) Cricut contends such treatment would be an admission by Defendants that Cricut royalties were for patents because patent royalties may be treated as capital gains under the Internal Revenue Code. (Id.) For their part, Defendants contend the royalty payments are tied to Cricut's use of a certain brand—not patents—and, therefore, the obligation to pay royalties has not been extinguished by expiration of the patents. (See Opp'n 1, Doc. No. 98.)

the underlying dispute in this action.[18] Defendants contend the email from Mr. Ringler relates to those settlement discussions, not preparation of tax returns.[19] Specifically, Defendants assert the redacted portion describes advice Mr. Ringler provided to Defendants' counsel regarding potential tax implications of the proposed buyout—advice Mr. Ringler provided at counsel's request.[20] Defendants argue Mr. Ringler's communications with Ms. Tanner (the client) and her counsel on this issue are privileged because Mr. Ringler qualifies as either a legal professional's representative or a client's representative under Utah law.[21]

Based on in camera review, it is apparent the redacted portion of the email concerns advice provided by Mr. Ringler to Defendants' counsel regarding Cricut's proposed buyout—consistent with Defendants' characterization. Further, Mr. Ringler qualifies as a legal professional's representative under the circumstances presented. The advisory committee notes to Rule 504 clarify that "a 'representative' of the lawyer need not be directly paid by the lawyer" so long as the representative is "engaged to assist the lawyer in providing legal services."[22] Here, Mr. Ringler was engaged to provide advice to Defendants' counsel regarding the tax implications of the proposed buyout. And the redacted communication was made for the purpose of "facilitating the rendition of legal services"[23]—in other words, to assist counsel in providing legal advice to Defendants on the potential settlement of the parties' dispute. Thus,

---

[18] (*See* Opp'n 2, Doc. No. 98.)

[19] (*See id.* at 2–3.)

[20] (*See id.*)

[21] (*See id.* at 6–7.)

[22] Utah R. Evid. 504, 2011 advisory committee's note.

[23] Utah R. Evid. 504(b)(1).

the communications between Mr. Ringler and Defendants' counsel on this topic, as well as the portion of Mr. Ringler's December 3, 2020 email to Ms. Tanner (the client) describing those communications, are privileged under Utah law.[24]

For these reasons, RINGLER2875 is properly redacted, and Cricut's motion is denied as to this document.

### B. RINGLER2914

This document contains emails between Mr. Ringler and Ms. Mellem, EFE's bookkeeper, from 2020 and 2022.[25] The first four emails from December 9, 2020 are unredacted, and they discuss amending EFE's tax returns to treat Cricut royalties as capital gains.[26] The other emails are an October 3, 2022 email from Ms. Mellem to Mr. Ringler, and Mr. Ringler's October 4, 2022 response, which contain the disputed redactions.[27] Ms. Mellem's October 3 email begins: "[Ms. Tanner's] attorney is having her [redacted]."[28] It continues: "But[] I have a question that you may need to bring up to her."[29] The remainder of the paragraph is redacted. Ms. Mellem

---

[24] Cricut also asserts privilege has been waived for attorney-client communications shared with Mr. Ringler because he is a third party outside the attorney-client relationship. (*See* Mot. 4–7, Doc. No. 92.) But where Mr. Ringler qualifies as a legal professional's representative under the circumstances presented, his communications with Defendants' counsel and Ms. Tanner (the client) are themselves privileged under Utah law. Thus, waiver does not apply.

[25] (*See* Ex. B to Opp'n, Redacted Emails between B. Ringler and T. Mellem (Dec. 9, 2020 through Oct. 4, 2022), Doc. No. 98-2.) The version cited here and in the remainder of this order is the version Defendants filed with their opposition, which contains fewer redactions than the one originally produced by Mr. Ringler.

[26] (*Id.*, Doc. No. 98-2 at 2–4.)

[27] (*Id.* at 2.)

[28] (*Id.*)

[29] (*Id.*)

then states: "This is way over my head but want to make sure [Ms. Tanner] is aware of anything that may affect her case."[30] Mr. Ringler's October 4 response states, in relevant part: "I already told attorneys [redacted]."[31]

Cricut contends these emails are not privileged because Mr. Ringler and Ms. Mellem are neither attorneys nor employees of Defendants.[32] Cricut notes Mr. Ringler is an independent tax accountant and Ms. Mellem is an independent bookkeeping accountant (at a different firm).[33] Cricut also notes the emails were sent shortly after a meet-and-confer in which Cricut's counsel argued to Defendants' counsel that Defendants' tax returns were relevant due to the treatment of Cricut's royalties as capital gains.[34]

Defendants assert the first redaction in Ms. Mellem's October 3 email is privileged because it describes actions Ms. Tanner's attorney advised her to take, and they argue Ms. Mellem was acting as a client representative in assisting Ms. Tanner in carrying out this direction.[35] Defendants argue that even if the second redaction would not be privileged "standing alone," it is privileged because it drew out Mr. Ringler's disclosure of privileged

---

[30] (*Id.*)

[31] (*Id.*)

[32] (Mot. 3–7, Doc. No. 92.)

[33] (*See id.* at 3–4.)

[34] (*See id.* at 4); *see also supra* note 17 (discussing Cricut's argument regarding the relevance of capital gains treatment of the royalties in Defendants' tax filings).

[35] (*See* Opp'n 7, Doc. No. 98.)

information in response.[36]  Defendants contend the redacted portion of Mr. Ringler's October 4 response is privileged because it describes an answer he provided to Defendants' counsel.[37]

In camera review of the first redaction in the October 3 email confirms this portion of the email is privileged.  Consistent with Defendants' characterization, this portion describes instructions from Defendants' counsel to Ms. Tanner (the client) related to this lawsuit, and actions taken by Ms. Mellem to assist Ms. Tanner in carrying out these instructions.  In other words, it is apparent Ms. Mellem was authorized to "act on advice rendered pursuant to legal services for or on behalf of the client" and, therefore, qualifies as a client representative under Utah law.[38]  Thus, the first redaction describes communications between an attorney, client, and client's representative which are privileged under Utah law.[39]  Further, Ms. Mellem did not waive the privilege by disclosing the information to Mr. Ringler because privilege may only be waived by the client (Ms. Tanner), as the privilege-holder.[40]  Therefore, privilege applies to the first redaction in the October 3, 2022 email.

The redacted portion of Mr. Ringler's October 4 response is also privileged.  Based on in camera review, this portion describes information Mr. Ringler provided to Defendants' counsel

---

[36] (*Id.* at 7–8.)

[37] (*See id.*)

[38] Utah R. Evid. 504(a)(7)(B).

[39] *See* Utah R. Evid. 504(b).

[40] *See* Utah R. Evid. 510(a) (providing waiver occurs when a person who holds the privilege voluntarily discloses or consents to the disclosure of any significant part of the matter or communication); *Moler v. CW Mgmt. Corp.*, 2008 UT 46, ¶ 17, 190 P.3d 1250, 1254 ("[I]n order to waive the privilege as to any given communication, . . . the holder of the privilege must consent to the disclosure."); *Krahenbuhl v. Cottle Firm*, 2018 UT App. 138, ¶ 8, 427 P.3d 1216, 1219 (explaining Utah courts "have long held that [attorney-client privilege] can be waived by a client" (citation omitted)).

in connection with counsel's provision of legal services in this case. The communication between Mr. Ringler and Defendants' counsel was for the purpose of "facilitating the rendition of legal services to the client,"[41] and it is apparent Mr. Ringler was acting as either a legal professional's representative or a client's representative with respect to this communication.[42] Mr. Ringler could not waive the privilege by disclosing the communication to Ms. Mellem because he was not the privilege-holder. Therefore, the October 4 email is properly redacted based on privilege.

However, Defendants have not demonstrated the second redacted portion of Ms. Mellem's October 3 email is privileged. The mere fact that Ms. Mellem's inquiry elicited a response containing privileged information is insufficient to demonstrate the inquiry itself is privileged. And Defendants offer no other basis to conclude privilege applies. This portion of the email does not appear to reference legal advice or attorney-client communications, and it is not otherwise apparent how it would qualify as privileged under Utah law. Accordingly, this portion of the email must be produced without redaction.

---

[41] Utah R. Evid. 504(b)(1).

[42] Specifically, it is apparent Mr. Ringler was either engaged by Defendants' counsel to assist regarding the legal matter discussed (in which case he qualifies as a legal professional's representative), or that he was authorized by Defendants to disclose confidential information to Defendants' counsel concerning the legal matter (in which case he qualifies as a client's representative). *See* Utah R. Evid. 504(a)(6), (a)(7)(D).

CONCLUSION

Cricut's motion to compel[43] is granted in part and denied in part. Defendants are ordered to produce a version of the October 3, 2022 email from Tamara Mellem to Brian Ringler with the second redaction removed, within fourteen days.[44]

DATED this 13th day of November, 2023.

BY THE COURT:

*Daphne A. Oberg*
Daphne A. Oberg
United States Magistrate Judge

---

[43] (Doc. No. 92.)

[44] Although the subpoena was directed to Mr. Ringler, where Defendants have already produced a version of the emails with fewer redactions, the court orders Defendants (not Mr. Ringler) to produce the new redacted version.