IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CRICUT, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>ENOUGH FOR EVERYONE, INC., a Nevada corporation, and DESIRÉE TANNER, an individual,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br><br>Case No. 2:21-CV-00601-TS-DAO<br><br>District Judge Ted Stewart |

This matter is before the Court on the parties' cross motions for partial summary judgment. Plaintiff Cricut, Inc. seeks summary judgment on (1) a portion of Plaintiff's declaratory judgment cause of action; and (2) Defendants' counterclaims for breach of contract, breach of the implied covenant of good faith and fair dealing, and abuse of process.[1] Defendant Enough for Everyone seeks summary judgment on (1) Plaintiff's unjust enrichment, money had and received, and overpayment/recoupment causes of action; and (2) Defendants' breach of contract counterclaim.[2] For the reasons discussed below, the Court will grant Plaintiff's Motion and deny Defendant's Motion.

I. BACKGROUND

This case involves unjust enrichment and other claims relating to a royalty agreement originally between Plaintiff Cricut, Inc. ("Cricut") (formerly known as "Provo Craft") and

---

[1] Docket No. 184, at 1.

[2] Docket No. 182, at 1.

Defendant Desiree Tanner ("Tanner"), and later revised to be between Cricut and Defendant

Enough for Everyone ("EFE") (collectively, "Defendants").

In 2005, Cricut and Tanner entered into an agreement (the "2005 Agreement") wherein

Cricut would pay Tanner royalties on the revenue earned from specified products in exchange for

Tanner's intellectual property rights.[3] In 2007, Cricut, Tanner, and EFE entered into a new

agreement (the "2007 Agreement") that "supersede[d] and replace[d] the 2005 [] Agreement."[4]

Tanner is the founder and sole shareholder, officer, and employee of EFE. Cricut alleges that a

key reason for amending the 2005 Agreement was that Tanner had formed EFE to collect her

patent royalties.[5]

Cricut stopped making payments to EFE in 2021 and brought this action against Tanner

and EFE on October 13, 2021, seeking declaratory judgment that Tanner and EFE are not

entitled to royalty payments and asserting claims for unjust enrichment, money had and received,

and overpayment.[6] Defendants assert counterclaims for breach of contract, breach of the

covenant of good faith and fair dealing, accounting, and abuse of process.

Cricut filed its Motion for Partial Summary Judgment on September 21, 2023, arguing

that it is entitled to summary judgment because the royalties were intended for payment on

products covered by now-expired patents.[7] Cricut asks the Court to enter declaratory judgment as

follows: "(1) under the *Brulotte* Rule, Cricut owes no royalty payments under the 2007

Agreement on any revenues earned after May 29, 2021[,] when the last of the Design Patents on

---

[3] *See* Docket No. 184-1.

[4] Docket No. 183-1, at 1.

[5] Docket No. 184, at 2.

[6] *See* Docket No. 2.

[7] Docket No. 184, at 1–3.

the Design Inventions expired; (2) any and all agreement provisions to the contrary are

unenforceable; (3) Cricut's non-payment on October 12, 2021, was not a breach of the 2007

Agreement; and (4) Cricut does not need to make any future royalty payments to Defendants."[8]

Further, Cricut requests summary judgment on Defendants' counterclaims for breach of contract,

breach of the implied covenant, and abuse of process.[9] On October 19, 2023, EFE filed its

Response.[10] Cricut filed its Reply on November 2, 2023.[11]

EFE filed its Motion for Partial Summary Judgment on September 21, 2023, arguing the

royalties are due for non-patent rights, and Cricut breached the 2007 Agreement by failing to

make payments due under Section 3.3 beginning in October 2021.[12] EFE requests summary

judgment on Cricut's unjust enrichment, money had and received, and overpayment/recoupment

claims, as well as EFE's claim for breach of contract against Cricut.[13] On October 19, 2023,

Cricut filed its Response.[14] EFE filed its Reply on November 2, 2023.[15]

Resolution of the parties' Motions and the claims at issue revolve around whether the

royalty agreements at issue award royalties, at least in part, for products covered by the now-

expired design patents in which Tanner was a named inventor.

---

[8] *Id.* at 36.

[9] *Id.*

[10] Docket No. 191.

[11] Docket No. 200.

[12] Docket No. 182, at 1–2.

[13] *Id.* at 1.

[14] Docket No. 192.

[15] Docket No. 199.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[16] In considering whether a genuine dispute of material fact exists, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[17] The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[18]

## III. DISCUSSION

_Brulotte_ Public Policy and Application

The purpose of patent law is to promote and incentivize invention by allowing an inventor to have a monopoly on a manufactured product or process for a certain amount of time.[19] "A patent empowers the owner to exact royalties as high as he can negotiate with the leverage of that monopoly."[20] Consequently, the Supreme Court "has carefully guarded" a patent's expiration date, declining to enforce laws and contracts "that restrict free public access to formerly patented . . . inventions."[21] "[A]ny attempted reservation or continuation in the

---

[16] Fed. R. Civ. P. 56(a).

[17] _See Anderson v. Liberty Lobby, Inc._, 477 U.S. 242, 249 (1986); _Clifton v. Craig_, 924 F.2d 182, 183 (10th Cir. 1991).

[18] _See Matsushita Elec. Indus. Co. v. Zenith Radio Corp._, 475 U.S. 574, 587 (1986); _Wright v. Sw. Bell Tel. Co._, 925 F.2d 1288, 1292 (10th Cir. 1991).

[19] _See Sears, Roebuck & Co. v. Stiffel Co._, 376 U.S. 225, 230–31 (1964); _Scott Paper Co. v. Marcalus Mfg. Co._, 326 U.S. 249, 255–56 (1945).

[20] _Brulotte v. Thys Co._, 379 U.S. 29, 33 (1964).

[21] _Kimble v. Marvel Ent., LLC_, 576 U.S. 446, 451–52 (2015).

patentee . . . after the patent expires, whatever the legal device employed, runs counter to the

policy and purpose of the patent laws."[22]

In *Brulotte*, the Supreme Court held that "a patentee's use of a royalty agreement that

projects beyond the expiration date of the patent is unlawful per se."[23] The *Brulotte* Court

emphasized the point that patent owners cannot use their monopoly "leverage to project those

royalty payments beyond the life of the patent"[24] because "[t]he exaction of royalties for use of a

machine after the patent has expired is an assertion of monopoly power in the post-expiration

period when . . . the patent has entered the public domain."[25]

In *Kimble v. Marvel Entertainment, LLC*, Justice Kagan explained, "[t]he [*Brulotte*]

decision is simplicity itself to apply. A court need only ask whether a licensing agreement

provides royalties for post-expiration use of a patent. If not, no problem; if so, no dice."[26]

Courts "have applied the *Brulotte* rule to preclude the payment of royalties beyond the

expiration date of patents under so-called 'hybrid' agreements encompassing inseparable patent

and non-patent rights."[27] In *Pitney Bowes, Inc. v. Mestre*, the Eleventh Circuit addressed the

applicability of *Brulotte* to hybrid agreements.[28] The plaintiff entered several agreements with

the patent holder of certain paper handling machines "to pay royalties at the same rate and on the

---

[22] *Scott Paper Co. v. Marcalus Mfg. Co.*, 326 U.S. 249, 256 (1945).

[23] *Brulotte*, 379 U.S. at 32.

[24] *Id.* at 33.

[25] *Id.*

[26] *Kimble*, 576 U.S. at 459.

[27] *Kimble v. Marvel Enters. Inc.*, 727 F.3d 856, 862 (9th Cir. 2013); *see also Boggild v. Kenner Prods.*, 776 F.2d 1315, 1319–20 n. 5 (6th Cir. 1985) (applying *Brulotte* to a hybrid agreement); *Pitney Bowes, Inc. v. Mestre*, 701 F.2d 1365, 1372 (11th Cir. 1983) (holding that *Brulotte* was applicable to hybrid agreements concerning patent and trade secret rights).

[28] 701 F.2d at 1370–73.

same basis after the patents expired that it paid while the patent was in effect."[29] The court found

that the agreement at issue on appeal "licensed both patent rights and trade secrets and thus was a

'hybrid' agreement."[30] Despite the plaintiff's argument that *Brulotte* was not applicable because

"the royalty payments in that case were solely for patent rights[,]"[31] the court held that *Brulotte*

was applicable to hybrid agreements.[32] The argument that *Brulotte* is inapplicable to hybrid

agreements "ignores the facts of *Brulotte*" because the licenses there were for "use" as well as

patent rights, and "the Court cut off both the patent and non-patent royalties."[33]

The Supreme Court  has clarified that "post-expiration royalties are allowable so long as

[they are] tied to a non-patent right."[34] But there must be a way to "distinguish between pre-

expiration and post-expiration royalties."[35] While the Court in *Kimble* held that the agreement at

issue was barred by *Brulotte*, the Court also provided an example of a permissible hybrid

agreement covering both patent and trade secret rights that set a 5% royalty during the patent

period and a 4% rate thereafter.[36]

2007 Agreement

Cricut argues that it should be granted summary judgment because the parties' 2007

Agreement, at least in part, provided royalties in exchange for Defendants' patent rights.

Therefore, they argue the *Brulotte* rule applies, and its obligation to pay the royalties expired

---

[29] *Id.* at 1373.

[30] *Id.* at 1370.

[31] *Id.* at 1371.

[32] *Id.*

[33] *Id.* at 1371–72.

[34] *Kimble*, 576 U.S. at 454.

[35] *Meehan v. PPG Indus., Inc.*, 802 F.2d 881, 886 (7th Cir. 1986).

[36] *Kimble*, 576 U.S. at 454.

when the seven design patents expired.[37] Cricut points to Section 3.1 of the 2007 Agreement,

which specifies the products for which EFE will receive royalties.[38] Section 3.3 then identifies

the products covered by the agreement, which includes both products covered by the design

patents at issue (Cricut electronic cutting machines and Circuit cutting cartridges) and products

that are not (Cuttlebug machines, Cuttlebug die cast dies, and Cuttlebug plastic embossing

folders).[39] Cricut also notes Section 5.1 of the 2007 Agreement, in which Tanner assigns her

intellectual property rights to Provo Craft in exchange for payment of royalties.[40] Section 5.1

provides that the assignment of the intellectual property rights was "without the necessity of any

further consideration or action on the part of Provo Craft or [EFE] other than payment by Provo

Craft of the Royalties and Consulting Fees as required by this Agreement."[41] "In other words,"

Cricut argues, "the Section 3.3 Royalties were the consideration for the assignment of

Intellectual Property Rights, which included, at least in part, patents."[42]

EFE argues that the royalties provided for in the 2007 Agreement are tied to a non-patent

right: that is, royalties were meant to be paid based on the branding of the products rather than in

exchange for the transfer of patent rights to Cricut. EFE gives the example of royalty payments

made based upon the sale of five cutting machines that are not covered by any of the design

patents on which Tanner was named as a co-inventor.[43] According to EFE, the royalties were

---

[37] Docket No. 184, at 22–23.

[38] Docket No. 183-1 ¶ 3.1.

[39] *Id.* ¶ 3.3.

[40] *Id.* ¶ 5.1.

[41] *Id.*

[42] Docket No. 184, at 24.

[43] Docket No. 182, at 11.

provided based on Tanner's involvement in the development of certain products,[44] and "this case

does not involve payments for the use of *any* patent, whether expired or not."[45] As such, EFE

argues, the exception to the *Brulotte* rule applies: "post-expiration royalties are allowable so long

as tied to a non-patent right—even when closely related to a patent."[46]

EFE compares this case to *Zimmer Biomet Holdings, Inc. v. Insall*,[47] wherein the court

held that the *Brulotte* rule did not apply to an agreement that had been amended to "tie[] payment

to [plaintiff's] decision to market certain components as part of the [brand]."[48] In support of this

point, EFE argues that the 2007 Agreement  does not "provide[] royalties for post-expiration use

of a patent"[49] because "the 2007 Agreement does not prevent Cricut 'from using [the Design

Patents] or tie royalties to those patents, but rather requires and ties payment to [Cricut's]

decision to market certain [machines and cartridges] as part of the [CRICUT] family."[50]

Therefore, EFE concludes, the 2007 Agreement must be for royalty payments based on

"branding."

There is no evidence before the Court that either EFE or Tanner had a role in the

branding of Cricut machines. Because neither EFE nor Tanner have shown they contributed

anything of value to Cricut's branding beyond the contributions to the design patents, it does not

follow that EFE is entitled to royalties based on Cricut's use of its own branding. Moreover,

---

[44] Docket No. 183-1 ¶ 3.1.

[45] Docket No. 182, at 16.

[46] *Kimble*, 576 U.S. at 454.

[47] No. 22 CV 2575, 2023 WL 2895749 (N.D. Ill. Apr. 11, 2023).

[48] *Id.* at *6.

[49] *Kimble*, 576 U.S. at 459.

[50] Docket No. 199, at 18.

there is no evidence presented here that the parties entered the 2007 agreement to "decouple[] the royalty from [the design] patents," as there was in *Zimmer*.[51]

EFE's arguments also ignore the parties' prior dealings. Under the 2005 Agreement, Tanner agreed to engage in consulting services, which included developing products, and agreed to transfer her patent rights to Cricut in exchange for royalty payments on certain agreed-upon products.[52] In exchange, Cricut agreed to pay Tanner both a consulting fee and a royalty for the sale of certain products, only some of which were covered by the design patents where Tanner was a named inventor.[53] Although the 2007 Agreement says that it supersedes and replaces the 2005 Agreement, the two must be read in conjunction.[54] The primary purpose of the 2007 Agreement was to allow for the royalty payments initially set out in the 2005 Agreement to be paid to EFE, rather than Tanner.[55]

Therefore, the 2007 Agreement is best classified as a hybrid agreement that covers both patented and non-patented rights. The 2007 Agreement provided that the royalties paid in exchange for Tanner's patent rights be paid to EFE rather than Tanner on products covered by the design patents at issue, such as the Cricut-branded electronic cutting machines and Cricut-branded cutting cartridges, as well as products that were not covered by the design patents, like

---

[51] *Zimmer*, 2023 WL 2895749, at *6.

[52] Docket No. 183-2 ¶¶ 3.1–3.4, 6.1.

[53] *Id.* ¶ 3.2, Schedule B.

[54] *SCO Grp., Inc. v. Novell, Inc.*, 578 F.3d 1201, 1211 (10th Cir. 2009) ("Where 'two contracts are made at different times, [but where] the latter is not intended to entirely supersede the first, but only modif[y] it in certain particulars[,] [t]he two are to be construed as parts of one contract, the later superseding the earlier one wherever it is inconsistent therewith.'") (quoting *Hawes v. Lux*, 294 P. 1080, 1081 (Cal. Dist. Ct. App. 1931)).

[55] Docket No. 183-1 ¶ 5.1.

the Cuttlebug-branded machines, Cuttlebug-branded die cast dies, and Cuttlebug-branded plastic embossing folders.[56]

Hybrid agreements like the 2007 Agreement are permissible so long as there is some way to distinguish between the patented and non-patented rights.[57] In *Kimble*, the Supreme Court gave examples of hybrid agreements that could operate around the constraints of *Brulotte*. "A licensee could agree, for example, to pay the licensor a sum equal to 10% of sales during the 20-year patent term, but to amortize that amount over 40 years."[58] Alternatively, "a  license involving both a patent and a trade secret can set a 5% royalty during the patent period  (as compensation for the two combined) and a 4% royalty afterward (as payment for the trade secret alone)."[59] However, because "[the Supreme] Court has carefully guarded [the patent] cut-off date,"[60] a hybrid agreement without a similar distinction between pre- and post-expiration royalties may still be subject to the *Brulotte* rule.

Here, there is nothing to distinguish the royalty rates received by EFE after the design patents expire. The 2007 Agreement makes clear that the royalty payments portion of that agreement remains in effect perpetually, and the rates remain the same.[61] As such, the *Brulotte* rule is applicable, and Cricut was not required to pay Defendants a royalty after the last design patent expired.

---

[56] *Id.* ¶ 3.1; Docket No. 184, at 23.

[57] *Kimble*, 576 U.S. at 454.

[58] *Id.*

[59] *Id.*

[60] *Id.* at 451.

[61] Docket No. 183-1 ¶ 7.1.

The Court finds that Cricut is entitled to summary judgment on its request for declaratory relief because the *Brulotte* rule is applicable, and the post-expiration royalty payments are unlawful per se. Cricut is also entitled to summary judgment on Defendants' breach of contract, breach of the implied covenant of good faith and fair dealing, and abuse of process counterclaims. Because the royalty agreement became invalid after the expiration of the last patent, Cricut did not breach the contract by discontinuing payments pursuant to the invalidated royalty agreement after the last patent expired. Similarly, Cricut did not breach its implied covenant of good faith and fair dealing in its obligations to EFE because its discontinuation of the royalty payments was based on the invalidation of the royalty agreement once the last patent expired.

Additionally, Cricut "paid all amounts due under the 2007 Agreement[,] including the payment due with respect to the calendar quarter ending June 30, 2021."[62] Defendants' abuse of process counterclaim fails because Cricut was within its rights to discontinue the royalty payments and initiate this action to seek repayment of payments made after the invalidation of the agreement when the last design patent on which royalty payments were based expired on May 29, 2021.[63]

## IV. CONCLUSION

It is therefore

ORDERED that Plaintiff's Motion for Partial Summary Judgment (Docket No. 184) is GRANTED. It is further

---

[62] Docket No. 54 ¶ 93.

[63] *Id.* ¶ 44.

11

ORDERED that Defendant's Motion for Partial Summary Judgment (Docket No. 182) is

DENIED. It is further

ORDERED that the parties participate in a settlement conference with a magistrate

judge, and the Court will refer this matter to a magistrate judge to conduct the conference in a

separate order.

DATED June 5, 2024.

BY THE COURT:

_____

TED STEWART
United States District Judge