IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| CRICUT, INC. a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>ENOUGH FOR EVERYONE, INC., a Nevada corporation, and DESIREE TANNER, an individual,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANTS' MOTION TO EXCLUDE OPINIONS 1 AND 4 SET FORTH IN MATT H. CONNORS' EXPERT REPORT AND MOTION TO EXCLUDE CHARLES L. MAURO'S EXPERT REPORT AND MOST OF HIS DECLARATION<br><br>Case No. 2:21-cv-00601-TS-DAO<br><br>Judge Ted Stewart<br>Magistrate Judge Daphne A. Oberg |

This matter is before the Court on Defendants' Motion to Exclude Opinions 1 and 4 Set Forth in Matt H. Connors' Expert Report[1] and Motion to Exclude Charles L. Mauro's Expert Report and Most of His Declaration.[2] For the reasons discussed below, the Court will deny the Connors Motion and grant in part and deny in part the Mauro Motion.

I. BACKGROUND

This case involves unjust enrichment and other claims relating to royalty agreements between Plaintiff Cricut, Inc. ("Cricut") (formerly known as "Provo Craft") and Defendants Desiree Tanner ("Tanner") and Enough for Everyone ("EFE").

In 2005, Cricut and Tanner entered into an agreement wherein Cricut would pay Tanner royalties on the revenue earned from specified products in exchange for Tanner's intellectual

---

[1] Docket No. 217; Docket No. 219 (SEALED).

[2] Docket No. 221.

property rights.[3] Thereafter, in 2007, Cricut, Tanner, and EFE entered into a new agreement (the "2007 Agreement") that "supersede[d] and replace[d] the 2005 [] Agreement."[4] Cricut stopped making payments to EFE in 2021 and brought this action against Tanner and EFE in October 2021, seeking declaratory judgment that Tanner and EFE are not entitled to royalty payments and asserting claims for unjust enrichment, money had and received, and overpayment.

Defendants seek to exclude portions of Mr. Matt H. Connors' expert opinion and Mr. Charles L. Mauro's expert opinion and most of his declaration. The motions were fully briefed by late 2023. In June 2024, the Court granted summary judgment in favor of Plaintiff, concluding in part that the *Brulotte* rule is applicable and Cricut was not required to pay Defendants a royalty after the last design patent expired.[5] Additionally, the Court denied Defendants' Motion to Correct Inventorship in May 2024.[6] The Court will address the motions, in light of these rulings, in turn below.

## II. LEGAL STANDARD

Federal Rule of Evidence 702 allows an expert to testify if the proponent has demonstrated by a preponderance of the evidence that:

> **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> **(b)** the testimony is based on sufficient facts or data;
> **(c)** the testimony is the product of reliable principles and methods; and
> **(d)** the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.[7]

---

[3] Docket No. 185-1.

[4] Docket No. 183-1, at 1.

[5] Docket No 261, at 10.

[6] Docket No. 258.

[7] Fed. R. Evid. 702.

Although the standard under Rule 702 is "liberal . . . regarding expert qualifications,"[8] "[t]he proponent of expert testimony bears the burden of showing that the testimony is admissible."[9]

Rule 702 "imposes upon the trial judge an important 'gate-keeping' function with regard to the admissibility of expert opinions."[10] This involves a two-step analysis.[11] The district court "must first determine whether the expert is qualified 'by knowledge, skill, experience, training, or education' to render an opinion."[12] "Preliminary questions concerning the qualification of a person to be a witness . . . should be established by a preponderance of proof."[13] Second, "the court must determine whether the expert's opinion is reliable by assessing the underlying reasoning and methodology, as set forth in *Daubert*."[14]

"Under Rule 702, a district court must satisfy itself that the proposed expert testimony is both reliable and relevant, in that it will assist the trier of fact, before permitting a jury to assess

---

[8] *Fowers Fruit Ranch, LLC v. Bio Tech Nutrients, LLC*, No. 2:11-CV-105-TC, 2015 WL 2201715, at *1 (D. Utah May 11, 2015) (quoting *United States v. Gomez,* 67 F.3d 1515, 1526 (10th Cir. 1995)).

[9] *Id.* (quoting *Conroy v. Vilsack*, 707 F.3d 1163, 1168 (10th Cir. 2013)) (alteration in original).

[10] *Mathis v. Huff & Puff Trucking, Inc.*, 787 F.3d 1297, 1307 (10th Cir. 2015) (quoting *Ralston v. Smith & Nephew Richards Inc.*, 275 F.3d 965, 969 (10th Cir. 2001)); *see generally Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. 579 (1993).

[11] *See United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc).

[12] *Id.* (quoting Fed. R. Evid. 702).

[13] *Daubert*, 509 U.S. at 592 n.10.

[14] *Nacchio,* 555 F.3d at 1241 (citing *United States v. Rodriguez–Felix,* 450 F. 3d 1117, 1123 (10th Cir. 2006)).

such testimony."[15] However, "[a]t the Rule 702 gatekeeping stage, district courts must avoid weighing the credibility or persuasiveness of the competing experts' ultimate conclusions."[16]

### III. DISCUSSION

A. Matt H. Connors

Defendants argue that opinions 1 and 4 in Mr. Connors' report should be excluded. Defendants do not contest Mr. Connors' qualifications to testify as an expert generally; therefore, the Court need only "determine whether the expert's opinion is reliable by assessing the underlying reasoning and methodology, as set forth in *Daubert*."[17]

1. Opinion 1

Defendants assert that opinion 1 is simply a recalculation of a simple calculation, does not require specialized knowledge, and should be excluded. To be admissible, "the testimony must 'be based upon sufficient facts or data' as well as 'the product of reliable principles and methods' and the expert must have 'applied the principles and methods reliably to the facts of the case.'"[18] The burden to show the testimony is admissible falls on Plaintiff as the proponent of the expert testimony.[19]

Opinion 1 states that "Cricut paid [EFE] royalties for sales after the last design patent expired on May 29, 2021, and through June 30, 2021, in the amount of at least $345,737."[20] Mr. Connors states that he calculated these royalties based on data he analyzed from Plaintiff's

---

[15] *Rodriguez–Felix,* 450 F. 3d at 1122–23 (citing Fed. R. Evid. 702).

[16] *Heer v. Costco Wholesale Corp.*, 589 F. App'x. 854, 862 (10th Cir. 2014) (citation omitted).

[17] *Nacchio*, 555 F.3d at 1241.

[18] *Id.* (quoting Fed. R. Evid. 702).

[19] *See Conroy v. Vilsack*, 707 F.3d 1163, 1168 (10th Cir. 2013).

[20] Docket No. 219-1 (SEALED), at 6.

electronic sales and accounting databased ("SAP"), as well as Plaintiff's general ledger transactional data, trial balances, and financial statements.[21] Defendants argue that because there is a "simpler" way to calculate this information—simply adding up the amount of royalties Plaintiff paid to EFE sold during May 29, 2021 to June 30, 2021—the Court should exclude opinion 1.

Defendants first assert, conclusively, that Mr. Connors' recalculation will mislead the jury and should be excluded under Fed. R. Evid. 403, but do not provide further explanation. In response, Plaintiff asserts that it asked Mr. Connors to conduct an independent calculation to confirm the simpler calculation.[22] This is not an issue of admissibility, but weight. Certainly, Defendants can cross examine Mr. Connors regarding the recalculation and argue in favor of the simpler calculation, however based on the arguments and information before the Court, the probative value of opinion 1 is not substantially outweighed by its potential to mislead or confuse the jury.

Defendants also assert that the recalculation is less reliable than what was actually paid. Mr. Connors' testimony is that the recalculation has a low error rate.[23] During the deposition, Defendants pressed him about the accuracy of the recalculations asking if "it's just as likely that the comparison calculations are as accurate as the recalculations,"[24] to which Mr. Connors responded, "I guess it could be viewed that way."[25] However, later in the reply, Defendants

---

[21] *Id.* at 7.

[22] Docket No. 235, at 9.

[23] Docket No. 219 (SEALED), at 10 (citing Docket No. 219-1 (SEALED), at 156:13–157:9).

[24] *Id.* (citing Docket No. 219-1 (SEALED), at 156:13–157:9).

[25] *Id.*

summarily argue that the recalculation is less reliable. As above, this argument goes to weight, not admissibility. Defendants can cross examine Connors about the reliability of the two calculations at trial. However, based on Plaintiff's explanation of Connors' methodology, the Court concludes that it is sufficiently reliable to allow for his testimony. Accordingly, the Court will not exclude opinion 1.

    2. Opinion 4

Defendants assert that opinion 4 is speculative, is not properly applied to the facts of the case, and relies on a new theory that Plaintiff did not plead in the Complaint.

Underlying opinion 4 are Plaintiff's contractual and noncontractual rebate programs operated with its retailers. While the contractual programs are funded by Plaintiff via explicit terms, noncontractual entitlements ("NCEs") are often not formally documented but are accounted for as marketing costs.[26] Opinion 4 states that "Cricut paid [EFE] royalties before subtracting noncontractual entitlements, in the amount of $518,691."[27]

Mr. Connors states that Plaintiff did not previously take these entitlements into account in calculating royalties and Plaintiff asked him to calculate the impact these entitlements would have on royalties paid to EFE.[28] Connors outlines the following steps to calculate the impact of NCEs on royalty-bearing products:

> 1. Calculated entitlements as percentage of total Cricut revenue for royalty stock SKUs [stock keeping units], using the sales order data minus advertising and rebates include in that data.
> 2. Calculated net sales revenue on covered products as the royalty base . . . [which] allowed me to calculate the payment for NCEs including and excluding digital content and subscription sales.

---

[26] Docket No. 219-1 (SEALED), at 12.

[27] *Id.*

[28] *Id.* at 13.

3. Applied the pro-rata reduction for additional promotional costs, referred to as NCEs to arrive at the overstated amount on which royalties were paid.
4. Calculated the effective weighted average royalty paid to EFE.
5. Multiplied the weighted average royalty rate by the overstated revenue amount to arrive at the overpayment by year.[29]

Defendants assert that the calculation and opinion is speculative and not tied to the facts of the case as there is no evidence that the royalties paid to EFE involved NCEs. Plaintiff counters that NCEs are not awarded or tracked on a product-by-product basis but instead by vendor across all product lines,[30] and, as such it is impossible to perform such a specific analysis.

Defendants argue that while "[t]rained experts commonly extrapolate from existing data[,] . . . nothing requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert."[31]

Plaintiff cites to *Aspen Highlands Skiing Corp. v. Aspen Skiing Co.*[32] for support. There, the defendant argued that the plaintiff's expert grounded his opinion on two false factual assumptions and therefore, the opinion was inadmissible.[33] The court concluded that "[a]lthough [the] assumptions may have been open to question, they were not so unsupported that the trial court abused its discretion in permitting admission of the testimony and exhibits."[34] Plaintiff's also cite to *Jensen v. West Jordan City*.[35] There the court reiterated that "an expert is allowed to

---

[29] *Id.*

[30] Docket No. 235, at 14.

[31] *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 782 (10th Cir. 1999) (quoting *Gen. Elec v. Joiner*, 522 U.S. 136, 146 (1997)).

[32] 738 F.2d 1509 (10th Cir. 1984).

[33] *Id.* at 1523.

[34] *Id.*; *see also BC Tech., Inc. v. Ensil Int'l Corp.*, 464 F. App'x 689, 704 (10th Cir. 2012) ("The [expert's] assumptions were certainly subject to debate but had sufficient evidentiary support to pass the admissibility threshold.").

[35] No. 2:12-CV-736-DAK, 2017 WL 2312881 (D. Utah May 26, 2017) *aff'd* 968 F.3d 1187 (10th Cir. 2020).

rely on assumptions, as long as the assumptions are clear to the jury."[36] Defendants assert that *Jensen* is not applicable because the court was analyzing future earnings, not past data.[37] While the type of analysis may differ, the case law regarding assumptions remains instructive.

Defendants argue that Connors calculated the "NCE damages without the existence of a link between the application of NCEs to the products sold for which EFE received royalties"[38] and therefore the opinion "rests on a foundational fact that does not exist."[39]

However, the Court finds there is at least some support for the assumption that royalty-bearing products were sold subject to an NCE. Connors calculated entitlements as a percentage of total revenue for all SKUs using the sales order data minus advertising and rebates, the base on which EFE royalties were paid historically.[40] Additionally, Plaintiff states that NCEs were given in exchange for vendors giving Cricut things such as additional advertising across all Cricut lines and products.[41] Therefore, the Court declines to exclude opinion 4 on the basis that there is no support for the assumption that at least some royalty products were sold subject to NCEs. Further, "the full burden of exploration of the facts *and assumptions* underlying the testimony of an expert witness [is] squarely on the shoulders of opposing counsel's cross-examination."[42] Defendants will have the opportunity to challenge the NCE calculation and basis during trial.

---

[36] *Id.* at *3.

[37] Docket No. 241 (SEALED), at 9.

[38] *Id.* at 8.

[39] *Id.* at 7.

[40] Docket No. 219-1 (SEALED), at 13.

[41] Docket No. 235, at 12.

[42] *Aspen*, 738 F.2d at 1524 (quoting *Smith v. Ford Motor Co.*, 626 F.2d 784, 793 (10th Cir. 1980)) (alteration in original).

Defendants do not challenge Connors' methodology underlying opinion 4. Based on Plaintiff's explanation of Connors' methodology and review of his expert report, the Court concludes that opinion 4 is sufficiently reliable to allow for his testimony.

Lastly, Defendants argue that opinion 4 should be excluded because Plaintiff disclosed that it would seek NCE reimbursement damages the night before fact discovery closed and NCE damages were not included in the Complaint, failing to satisfy Fed. R. Civ. P. 8 pleading standards. While NCE reimbursement damages do not appear in Plaintiff's complaint or amended complaint, both include claims for unjust enrichment, money had and received, and overpayment/recoupment. Nonetheless, a motion to exclude an expert's opinion is not the proper avenue to raise an argument to exclude evidence under Rule 8 or to exclude an entire category of damages for alleged discovery violations. The Court will not exclude opinion 4 based on these arguments.

B. Charles L. Mauro

Defendants move the Court to exclude Mauro's expert report in its entirety and portions of his declaration. While Defendants contend that "[t]he sheer scope of Mauro's opinion calls into question his qualification to render any of them," they do not seem to contest his qualifications to testify as an expert generally. Therefore, as above, the Court need only "determine whether the expert's opinion is reliable by assessing the underlying reasoning and methodology, as set forth in *Daubert*."[43] The Court will address each argument below.

1. Patent-usage opinion (Opinion 1)

Defendants argue that Mr. Mauro's opinions that certain Cricut cutting machines and cartridges were covered by the Design Patents should be excluded because the probative value of

---

[43] *Nacchio*, 555 F.3d at 1241.

9

the testimony is substantially outweighed by its tendency to prejudice the Defendants, confuse the issues, waste time, and needlessly presenting cumulative evidence, and because Mr. Mauro's methodology is improper.

Opinion 1 states, "Provo Craft used the design patents for cutting machines and cartridges."[44] Mr. Mauro further opined that "each product embodied one or more of the Cutting Machine Design Patents[,]" and "the associated cartridges designed, made, and sold to be used with the [Personal Electronic Cutter, Expression and Create machines] embodied the Cartridge Design Patents."[45]

First, Defendants argue that because their expert, Alan Ball, agrees with Mr. Mauro that certain early cutting machines and cartridges are covered by the design patents, the opinion should be excluded under Rule Fed. R. Evid. 403. Under Rule 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

While it is common for courts to exclude expert opinion per Rule 403 when the same party is offering multiple experts expressing the same opinion,[46] here, Ball and Mauro are offering opinions for opposing parties. Accordingly, the Court does not find that the probative value of opinion 1 is substantially outweighed by unfair prejudice, confusing the issues,

---

[44] Docket No. 221-1 ¶ 22.

[45] *Id.* ¶ 25.

[46] *See e.g.*, *Young v. Injured Patients & Fams. Comp. Fund*, No. 23-cv-235-jdp, 2024 WL 2078215, at *1 (W.D. Wis. May 9, 2024) ("Proceeding with four [plaintiff] experts offering the same opinions will lead to a waste of time and resources."); *Bingham v. Adobe Equip. Holdings, Ltd.*, No. 08-CV-056-D, 2008 WL 11379933, at *4 (D. Wyo. Oct.8, 2008) ("During the trial, presenting expert after expert to state the same opinion risks running afoul of F.R.E. 403[.]").

misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Both parties assert that it is uncontested that the particular cutting machines and cartridges were covered by the Design Patents. If Defendants continue to be concerned with delay, wasting time, or cumulative evidence, the parties could agree to instruct the jury that those particular facts are uncontested instead of offering expert testimony.

Second, Defendants dispute that Mr. Mauro applied the "ordinary observer" test to determine whether a design patent covers a product and, therefore, his methodology underlying opinion 1 is improper. Under the "ordinary observer" test, a design patent covers a product "if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same."[47] Defendants cite to an article authored by Mr. Mauro that proposes a variant of this test and proposes that no individual judge, lawyer, or legal academic can represent a hypothetical ordinary observer, but that someone with a background based in neuroscience, shape perception, and design patent law could.[48] Based on this article, Defendants argue that Mr. Mauro "would tell the jury to accept his opinion because he has specialized knowledge they lack," in an attempt to substitute his judgment for the jury's. Plaintiff asserts that Mauro applies the ordinary observer test, not methodology from the article, in his expert report.[49]

Indeed, in Step 5, Mr. Mauro applies the "ordinary observer" test using the same language from *Gorham* cited above.[50] In their reply, Defendants argue that because Step 5 falls back on the "variance analysis" from Step 4, Mauro is injecting neuroscience into design patent

---

[47] *Gorham Mfg. Co. v. White*, 81 U.S. 511, 522 (1871); *accord Samsung Elec. Co. v. Apple Inc.*, 580 U.S. 53, 56 (2016); *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 670 (Fed. Cir. 2008).

[48] Docket No. 221, at 8–9.

[49] Docket No. 234, at 8.

[50] Docket No. 221-1 ¶ 36.

analysis.[51] The Court does not find this persuasive. Step 4 identifies discrepancies or differences between the product and design patent, which is part of the "ordinary observer" test.[52] Defendants may cross-examine Mr. Mauro about "injecting neuroscience" into his opinion and object to any attempt to "substitute his judgment" for the jury's. The Court declines to exclude opinion 1.

2. Design patents and branding (Opinion 2)

Defendants next assert that Mauro's commentary on design patents and branding should be excluded because the testimony is irrelevant and inadmissible under Fed. R. Evid. 402. Opinion 2 states "The design patents represented a core component of Provo Craft's branding[.]"

Defendants assert that the composition and safeguarding of the Cricut brand are not relevant to any fact of consequence under Fed. R. Evid. 401(b). Plaintiff responds that opinion 2 is relevant to Defendants' arguments that Plaintiff's payment obligations to them under the 2007 Agreement were in part based on branding.[53]

Under Rule 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." The Court granted summary judgment in favor of Plaintiff for declaratory relief under the *Brulotte* rule.[54] The Court concluded that the *Brulotte* rule applied and that "[t]here is no evidence before the Court that either EFE or Tanner had a role in the

---

[51] Docket No. 243, at 4–5.

[52] *See Egyptian Goddess*, 543 F.3d at 681 ("An ordinary observer, comparing the [designs] . . . will attach importance to differences between the claimed design and prior art depending on the overall effect of those differences on the design."); *see also Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1303 (Fed. Cir. 2010).

[53] Docket No. 234, at 9.

[54] Docket No. 261.

branding of Cricut machines."[55] Therefore, opinion 2 is no longer relevant as the Court foreclosed on Defendants' argument. Accordingly, the Court will exclude opinion 2.

### 3. Cartridges and Fit-Form-Function (Opinion 3)

Defendants seek to exclude opinion 3 about the usage of "cartridge" and "fit, form, and function." Opinion 3 states "Cricut's current product offerings do not have the same fit, form, or function as the Cricut-branded cutting cartridges."[56]

Plaintiff asserts that the opinion is relevant if the *Brulotte* rule does not apply, as a remaining issue would be whether royalties were owed on Plaintiff's current products.[57] Because the Court concluded that the *Brulotte* rule applies, opinion 3 no longer relevant to a fact at issue in this case. As such, the Court will exclude opinion 3.

### 4. Declaration opinions

Finally, Defendants argue that opinions 2, 3, and 4 in Mr. Mauro's declaration regarding utility patents should be excluded. This declaration was filed in support of Defendants' Motion to Correct Patent Inventorship, which the Court has since denied.[58] As such, the Court will deny the motion to exclude these opinions as moot. Further, the Court concluded that the claim was barred by patent laches. Therefore, even if the Court would have considered these arguments before ruling on the Motion to Correct Patent Inventorship, it would not have affected the outcome.

---

[55] *Id.* at 8.

[56] Docket No. 221-1 ¶ 24.

[57] Docket No. 234, at 9.

[58] Docket No. 258.

## IV. CONCLUSION

It is therefore

ORDERED that Defendants' Motion to Exclude Opinions 1 and 4 Set Forth in Matt H. Connors' Expert Opinion (Docket No. 217) is DENIED; It is further

ORDERED that Defendants' Motion to Exclude Charles L. Mauro's Expert Report and Most of His Declaration (Docket No. 221) is DENIED IN PART and GRANTED IN PART.

DATED September 26, 2024.

BY THE COURT:

_____
TED STEWART
United States District Judge